UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

JHONNY PEREZ,

        Debtor.

Case No. 19-15082-AJC
Chapter 7

_____/

TAKE-TWO INTERACTIVE SOFTWARE,
INC.,

        Plaintiff,

v.

JHONNY PEREZ,

        Defendant.

Adv. Pro. No.

_____/

## COMPLAINT TO DETERMINE DISCHARGEABILITY
## OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(6)

Take-Two Interactive Software, Inc. ("Take-Two"), by and through its undersigned counsel, hereby files this complaint (the "Complaint") against Jhonny Perez ("Defendant" or "Debtor") and in support thereof, respectfully states as follows:

## NATURE OF ACTION

1.    This is an adversary proceeding pursuant to Federal Rules of Bankruptcy Procedure 4007 and 7008 (the "Bankruptcy Rules") seeking a determination that the judgment (the "Judgment"), in an amount not less than $216,868.95, which was awarded to Take-Two by the District Court for the Southern District of New York (the "District Court") in the copyright infringement action styled *Take-Two Interactive Software, Inc. v. Jhonny Perez*, Case No. 1:18-cv-7658-PKC (the "District Court Action"), is excepted from discharge pursuant to section 523(a)(6) of title 11 of the United States Code (the "Bankruptcy Code").

9227351-1

2.      On August 22, 2018, Take-Two commenced the District Court Action against the Debtor.  Take-Two's complaint in the District Court Action alleged four causes of action: (a) direct copyright infringement (17 U.S.C. § 101 *et seq*.), (b) contributory copyright infringement (17 U.S.C. § 101 *et seq*.), (c) breach of contract, and (d) tortious interference with a contract.  In its complaint (the "District Court Complaint"), Take-Two specifically alleged, among other things, that Debtor's copyright infringement was ***willful and in utter disregard of Take-Two's rights***.  Debtor, however, never answered or otherwise defended against the District Court Action and thus defaulted.

3.      Take-Two subsequently moved for default judgment seeking statutory damages and its reasonable attorney's fees, which the Court granted on February 4, 2019.  The District Court's order granting Take-Two's motion specifically found that Debtor's infringement was willful.

4.      In an apparent attempt to avoid Take-Two's Judgment, Debtor has now filed for bankruptcy under Chapter 7.  As explained further below, Take-Two's Judgment is non-dischargeable as it is a debt for willful and malicious injury caused by the Debtor within the meaning of section 523(a)(6) of the Bankruptcy Code.

## JURISDICTION AND VENUE

5.      On April 19, 2019, the Debtor filed a voluntary petition (the "Petition") for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida, Miami Division (the "Court").

6.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b).  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (I), (O) and section

- 2 -

523 of the Bankruptcy Code because this is a proceeding to determine the dischargeability of a particular debt.

**PARTIES**

8.      Take-Two is a Delaware corporation having its principal place of business in the State of New York.

9.      Take-Two is the developer, publisher, and copyright owner of best-selling video games, including the *Red Dead, Max Payne*, and *Grand Theft Auto* series.

10.     Take-Two is a judgment creditor of the Debtor.

11.     Defendant is the Debtor in the captioned bankruptcy case and resides at 3000 SW 3rd Ave Apt. 905, Miami, FL 33129.  *See* Petition, Case No. 19-15082-AJC, Doc. No. 1.

**FACTUAL BACKGROUND**

**I.      Introduction**

12.     By this Complaint, Take-Two seeks a determination that the Judgment awarded to Take-Two for damages suffered as a result of, among other things, the Debtor's intentional, willful, and malicious infringement of Take-Two's valuable intellectual property rights in and to its world-famous video games is not dischargeable pursuant to section 523(a)(6) of the Bankruptcy Code.  A true and correct copy of the Judgment is attached hereto as **Exhibit A** and is incorporated by reference herein.

13.     The Debtor—acting in concert with two individuals in Europe—created, distributed, and/or maintained a computer program called "Elusive" that alters Take-Two's *Grand Theft Auto* video games (the "Infringing Program").  The Infringing Program is a cheating and "griefing" tool that allows users to perform unauthorized actions in Take-Two's *Grand Theft Auto V* ("GTAV") multiplayer feature *Grand Theft Auto Online* ("GTAO").  These unauthorized

- 3 -

actions can be used to benefit the person who installed the program or to the detriment of others playing in the same multiplayer session.

14.     Upon information and belief, in a deliberate attempt to profit from Take-Two's valuable intellectual property, the Debtor sold the Infringing Program to users who then altered Take-Two's video games.  These alterations were intended to, and did, allow users to cheat while playing Take-Two's games, both to (a) create benefits for themselves within the game that they have not purchased or earned or (b) to alter the games of other players in the same gaming session without authorization.  As a result, the Infringing Program disrupted the user experience that was designed by Take-Two, resulting in further harm to Take-Two and its users.

15.     The Debtor was well aware that the Infringing Program was unauthorized and infringed Take-Two's rights.  As set forth in more detail below, counsel for Take-Two contacted the Debtor and his attorney[1] at least ten (10) times prior to filing the District Court Action in an attempt to resolve the parties' dispute.  The Debtor and his attorney ultimately stopped responding to Take-Two, leading to Take-Two's understanding, upon information and belief, that the Debtor would continue to infringe Take-Two's rights.

16.     In sum, the Debtor intentionally, willfully, and maliciously infringed Take-Two's copyrights and caused Take-Two injury by profiting from the violation of Take-Two's copyrights, End User License Agreement (the "User Agreement"), and Terms of Service Agreement (the "Terms of Service Agreement").  A true and correct copy of the User Agreement is attached hereto as **Exhibit B** and is incorporated by reference herein.  A true and correct copy of the Terms of Service Agreement is attached hereto as **Exhibit C** and is incorporated by reference herein.

---

[1] The Debtor's current attorney did not represent him in the District Court Action.

9227351-1

## II.       Take-Two and Its Award-Winning Video Games

17.       As stated above, Take-Two is the developer, publisher and copyright owner of best-selling video games, including the *Red Dead, Max Payne,* and *Grand Theft Auto* series. Take-Two's games are widely recognized as some of the most popular and innovative games available on the market, and Take-Two has earned numerous awards both in the United States and abroad.  Take-Two has invested vast resources, including time, effort, talent, creativity, and money to produce its video games.  Its games have legions of fans throughout the world, making Take-Two one of the world's most popular video game publishers.

18.       GTAV has been registered with the Copyright Office.  A true and correct copy of the Certificate of Registration issued by the U.S. Copyright Office for GTAV is attached hereto as **Exhibit D** and is incorporated by reference herein.

19.       GTAV is a video game that was the product of Take-Two's skills, resources, and creative energies.  It is of great value to Take-Two.

20.       Take-Two is, and at all times material herein was, the sole owner and proprietor of all right, title, and interest in and to the copyrights in GTAV.  The copyrights in GTAV are presently valid and subsisting and were valid and subsisting at all times affecting the matters complained of herein.

21.       To play Take-Two's video games, including GTAV and GTAO, users must agree to the terms of the User Agreement.  Among the terms set forth in the User Agreement, are that users are (a) "not to . . . prepare derivative works based on, or otherwise modify the Software, in whole or in part," (b) "not to  . . . restrict or inhibit any other user from using and enjoying any online features of the Software," and (c) "not to . . . cheat (including but not limited to utilizing

exploits or glitches) or utilize any unauthorized robot, spider, or other program in connection with any online features of the Software." *See* Exhibit B, at 1.

22.     The permission that Take-Two grants users to play its games is expressly conditioned on these terms.  As a result, if a user breaches these conditions, his use of Take-Two's video game is no longer authorized, including the reproduction of the GTAV software in the user's computer or console.  In other words, continuing to play GTAV after breaching these provisions of the User Agreement not only constitutes a breach of the User Agreement, but also copyright infringement.

### III.    The Debtor's Conduct and the Infringing Program

23.     As stated above, the Debtor—acting in concert with two individuals in Europe—created, distributed, and/or maintained the Infringing Program.  The Infringing Program allows users to perform unauthorized actions, including without limitation, affecting in-game content and abilities of themselves and other players.  In other words, the Debtor's creation and use of the Infringing Program altered and created derivative works based on GTAV, which were used to alter the game for the benefit of the user or to "grief" other players by altering their games without permission.

24.     As a result, the Debtor not only breached Take-Two's User Agreement, he also infringed Take-Two's copyrights in two ways: first by continuing to use GTAV after breaching those conditions and second by creating an unauthorized derivative work based on GTAV.

25.     Upon information and belief, to acquire the Infringing Program's bundled cheating tools and features, users could purchase unauthorized features from the Debtor at different price ranges from $10 to $30 depending on the package. Users could pay the Debtor through PayPal or other forms of payment, including Steam and Amazon gift card keys.

9227351-1

26.    Debtor admitted to Take-Two in correspondence between counsel for Take-Two and the Debtor that he participated in the Infringing Program scheme because he was "issued keys to sell on a weekly basis for which the proceeds were to be kept by [him]."[2]  A true and correct copy of the e-mail correspondence between counsel to Take-Two, the Debtor and as set forth below, the Debtor's attorney, is attached hereto as **Exhibit E** and is incorporated by reference herein. The Debtor further admitted that "[he] moderated the discord when it was online."  *See* Ex. E at 10.

27.    The Debtor knew that he did not have Take-Two's permission to create, distribute, and/or maintain the Infringing Program.  Take-Two contacted the Debtor several times in the months prior to the commencement of the District Court Action, demanding that he discontinue his participation in the Infringing Program and in similar cheating tools and services.  *See* Ex. E.

28.    Upon learning that the Debtor retained a lawyer, on April 6, 2018, counsel for Take-Two contacted the Debtor's attorney, asking "[w]ould Mr. Perez and [he] agree to a phone call with [Take-Two] to discuss Mr. Perez's involvement with the Elusive mod menu?" and further noted that "Mr. Perez's cooperation is a requirement to settle this matter amicably."  *See* Ex. E at 22.

29.    As part of this process, Take-Two requested financial documents from the Debtor that would show how much the Debtor profited from the Infringing Program.  Again, the Debtor was not forthcoming.  As early as May 24, 2018, Take-Two asked the Debtor's lawyer if, "[p]er our conversation yesterday, is Jhonny going to provide his PayPal records and screenshots of the

---

[2]  Upon information and belief, the "keys" were codes that would unlock access to the Infringing Program.

services he used to sell Elusive keys?"  *See* Ex. E at 6.  On August 9, 2018, after his repeated

failure to share this information, counsel for Take-Two again contacted counsel for the Debtor

noting "[w]e still have not received Jhonny Perez's financial documents reflecting the money he

made from selling Elusive keys, which we requested *nearly four months ago* on April 16.  Please

advise your client that if we do not receive his financial documents by Thursday, August 16, we

will be filing the attached complaint in the Southern District of New York on Friday, August

17."  *See* Ex. E at 2.  Counsel for Take-Two subsequently emailed Debtor's counsel on August

17, 2018 extending the deadline to August 20, 2018 and noting that another Court recently found

that Take-Two was "likely to succeed on the merits against a similar mod menu infringer and

[that the Court] enjoined the infringer's conduct."  *See* Ex. E at 3.  Counsel for Take-Two

attached the Court's decision for Debtor's attorney to review.  The Debtor's attorney did not

respond.

      30.     On August 22, 2018, the date the District Court Complaint was filed, Take-Two

again emailed the Debtor's attorney offering that, "[i]f Mr. Perez will produce his financial

documents as we previously requested, we will hold off on service of [the Complaint]."  *See* Ex.

E at 1.  Take-Two again received no response from the Debtor's attorney.

      31.     On September 11, 2018, Take-Two, which had still not served the District Court

Complaint on the Debtor, made a final effort to avoid litigation.  *Id.*  Again, Debtor's counsel did

not respond.

      32.     In all, Take-Two contacted the Debtor and/or his counsel in the District Court

Action at least ten (10) times in an effort to resolve this dispute.

**IV.    The Harm to Take-Two**

33.     As set forth above, Take-Two produces video games for which it receives revenue from video game sales and purchases within the game.

34.     The Debtor's willful infringement robbed Take-Two of these revenues.    The Infringing Program (a) allowed the Debtor to profit commercially without paying Take-Two and (b) devalued and caused substantial harm to the value of GTAV.    Thus, Take-Two has been damaged by the Debtor's conduct.

**V.    The District Court Action & Judgment Against the Debtor for Intentional and Willful Copyright Infringement**

35.     On August 22, 2018, Take-Two commenced the District Court Action against the Debtor.    The District Court Complaint alleged (a) direct copyright infringement (17 U.S.C. § 101 *et seq.*), (b) contributory copyright infringement (17 U.S.C. § 101 *et seq.*), (c) breach of contract, and (d) tortious interference with a contract.    A true and correct copy of the District Court Complaint and its accompanying exhibits is attached hereto as **Exhibit F** and is incorporated by reference herein.

36.     In the District Court Complaint, Take-Two repeatedly alleged that Debtor's infringement was willful.    *See* Ex. F at ¶ 1 ("This action seeks to recover damages that Take-Two has suffered and to prevent the irreparable harm that threatens Take-Two as a result of [Debtor's] *willful infringement* of Take-Two's valuable intellectual property rights. . ."), ¶ 3 ("Take-Two demanded that [Debtor] cease his *willful* and infringing conduct. . ."), ¶ 4 ("In sum, [Debtor] has *knowingly, intentionally, and willfully infringed* Take-Two's copyrights."), ¶ 5 ("[D]ue to [Debtor's] *blatant and willful infringement* and refusal to cooperate with Take-Two, Take-Two has no choice but to file this lawsuit. . ."), ¶ 38 ("[Debtor's] *willful infringement* robs Take-Two

of these revenues."), ¶ 46 ("[Debtor's] infringement of Take-Two's copyrights has been *deliberate, willful, and in utter disregard of Take-Two's rights*."), ¶ 50 ("Take-Two also is entitled to recover statutory damages for [Debtor's] *willful infringement* of its copyrights."), ¶ 59 ("[Debtor's] contributory infringement of Take-Two's copyrights has been *deliberate, willful and in utter disregard of Take-Two's rights*."), ¶ 63 ("Take-Two also is entitled to recover statutory damages for [Debtor's] *willful contributory infringement* of its copyrights."), pgs. 18–19 ("WHEREFORE, Plaintiff Take-Two respectfully requests judgment against [Debtor] as follows: . . . Enter judgment for Take-Two against [Debtor] for statutory damages based upon [Debtor's] *willful acts of infringement* pursuant to the Copyright Act, 17 U.S.C. § 101 *et seq.*").

37.    The Debtor did not answer or otherwise defend against the District Court Action and defaulted, admitting his willful infringement.  On November 21, 2018, the Clerk of Court for the Southern District of New York issued a certificate of default in the District Court Action (the "<u>Certificate of Default</u>").  A true and correct copy of the Certificate of Default is attached hereto as **Exhibit G** and incorporated by reference herein.

38.    On December 4, 2018, Take-Two filed a motion, together with a memorandum of law in support, requesting entry of a default judgment against the Debtor (collectively, the "<u>Motion for Default Judgment</u>").  In the Motion for Default Judgment, Take-Two elected to recover statutory damages for Debtor's willful infringement in the amount of $150,000.00 and also requested reasonable attorney's fees of $69,686.95 incurred in connection with the prosecution of the District Court Action.  A true and correct copy of Take-Two's memorandum of law in support of its Motion for Default Judgment is attached hereto as **Exhibit H** and is incorporated by reference herein.

- 10 -

39.     On February 4, 2019, the District Court issued its Judgment finding the Debtor liable to Take-Two for: (a) "*willfully* and directly infringing Take-Two's copyrights in GTAV"; (b) "*willfully* and contributorily infringing Take-Two's copyrights in GTAV"; (c) breach of Take-Two's User Agreement; and (d) tortious interference with Take-Two's contracts with its other GTAV players.  *See* Ex. A.

40.     The District Court also issued a permanent injunction against the Debtor and all persons, firms, and corporations acting in concert with him, finding that Take-Two has been irreparably harmed by the Debtor's conduct because the Infringing Program (a) "creates new features and elements in *Grand Theft Auto* which can be used to harm legitimate players, causing Take-Two to lose control over its carefully balanced plan for how its video game is designed to be played," (b) "harms Take-Two's reputation for maintaining its gaming environment, discouraging users from future purchases and gameplay," and (c) "because the Infringing Program allows its users to create unlimited virtual currency—which can then be used to purchase in-game items in Take-Two's game—it undermines Take-Two's pricing and sales of legitimate virtual currency."  Ex. A at ¶ 8 and at 3.

41.     Further, based on the "extent of the planning, intent and willfulness" of the Debtor's conduct, the District Court ordered the Debtor to pay Take-Two the sum of $150,000.00 in statutory damages pursuant to 17 U.S.C. § 504(c)(2) and $66,868.95 in attorney's fees pursuant to 17 U.S.C. § 505.  Ex. A at 3.

## VI.    The Bankruptcy Case

42.     The Debtor filed his Petition approximately six weeks after the Judgment was entered.  Together with the filing of the Petition, the Debtor filed his schedules of assets and

liabilities (the "Schedules") and statement of financial affairs.  *See* Schedules, Case No. 19-15082-AJC, Doc. No. 1.

43.     On Schedule E/F, the Debtor scheduled (a) a general unsecured debt of $150,000.00 in favor of Take-Two and (b) a general unsecured debt of $66,868.95 for legal fees in favor of Kirkland & Ellis.  *See* Sch. E/F, Case No. 19-15082-AJC, Doc. No. 1.  Per the Judgment, these debts should have been scheduled as one debt totaling $216,868.95 in favor of Take-Two, as both scheduled debts relate to the District Court Action and Judgment.

44.     On May 22, 2019, the Debtor attended his duly noticed meeting of creditors, which was held pursuant to section 341(a) of the Bankruptcy Code.

45.     The Court has fixed July 22, 2019 as the last day to object to the dischargeability of certain debts.  Thus, this Complaint is timely filed.

46.     To date, the Debtor has not been granted a discharge.

47.     As in the District Court Action, after the Debtor filed his Petition, counsel for Take-Two made repeated attempts to engage the Debtor and his bankruptcy counsel in an effort to resolve this dispute.  They have rebuffed those efforts.

48.     Pursuant to the terms of the User Agreement and the Terms of Service Agreement, Take-Two is entitled to attorney's fees in this Adversary Proceeding.  *See* Exs. B and C.

## **CLAIM FOR RELIEF**

### **NON-DISCHARGEABILITY OF TAKE-TWO'S
JUDGMENT UNDER SECTION 523(a)(6) OF THE BANKRUPTCY CODE**

49.     Take-Two repeats and re-alleges each and every allegation set forth in paragraphs 1 through 48 of this Complaint as if fully set forth herein.

- 12 -

50.     Bankruptcy Code § 523(a)(6) provides, in relevant part, that "A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity."

51.     The Debtor knew at the time of his intentional actions that injury to Take-Two was substantially certain to result.

52.     The Debtor's intentional infringement of a copyright is sufficient to establish that he subjectively desired to harm Take-Two as owner of the copyright.

53.     The Debtor's conduct giving rise to the Judgment was therefore willful.

54.     Moreover, the Debtor's intent and willfulness already was determined in the District Court Action.

55.     The Debtor's conduct was without just cause or excuse and resulted in actual harm to Take-Two.

56.     The Debtor's conduct giving rise to the Judgment was therefore malicious.

57.     Where a debtor has been held liable for intentional infringement of intellectual property without just cause and has actually harmed property belonging to another, the resulting debt falls squarely within the meaning of section 523(a)(6) of the Bankruptcy Code and is non-dischargeable.

58.     All of the debt owed to Take-Two, as evidenced by the Judgment, is non-dischargeable as it is a debt for willful and malicious injury caused by the Debtor within the meaning of section 523(a)(6) of the Bankruptcy Code.

59.     When a debt is non-dischargeable pursuant to section 523(a) of the Bankruptcy Code, the attorney's fees and costs associated with that debt are likewise non-dischargeable.

WHEREFORE, Plaintiff Take-Two respectfully requests that this Court enter an order:

(a) declaring that the Debtor's liability to Take-Two under the Judgment in the District Court Action is excepted from discharge pursuant to section 523(a)(6) of the Bankruptcy Code;

(b) awarding attorney's fees and costs incurred in connection with this Adversary Proceeding; and

(c) granting Take-Two such other and further relief as this Court may deem just and proper.

Dated: July 22, 2019

Respectfully submitted,

BERGER SINGERMAN LLP
*Co-Counsel for Plaintiff*
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340

By:  */s/ Paul Steven Singerman*
Paul Steven Singerman
Florida Bar No. 378860
singerman@bergersingerman.com

and

Dale M. Cendali (*pro hac vice* forthcoming)
dale.cendali@kirkland.com
Joshua L. Simmons (*pro hac vice* forthcoming)
joshua.simmons@kirkland.com
Susan D. Golden (*pro hac vice* forthcoming)
susan.golden@kirkland.com
Megan L. McKeown (*pro hac vice* forthcoming)
megan.mckeown@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

*Co-Counsel for Plaintiff*

- 14 -

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

TAKE-TWO INTERACTIVE SOFTWARE INC.,

                Plaintiff,

v.

JHONNY PEREZ,

                Defendant.

CASE NO. 1:18-cv-07658 (PKC)

ECF Case

PKC

**[PROPOSED] ORDER GRANTING PLAINTIFF TAKE-TWO INTERACTIVE SOFTWARE, INC.'S MOTION FOR DEFAULT JUDGMENT**

THIS CAUSE is before the Court on Plaintiff Take-Two Interactive Software, Inc.'s ("Take-Two") Motion for Default Judgment (the "Motion") against Defendant Jhonny Perez ("Mr. Perez"). Having considered the Motion, the Court hereby finds as follows:

    1.    This Court has subject matter jurisdiction over Take-Two's copyright claims pursuant to 28 U.S.C. §§ 1331 and 1338. This Court also has supplemental jurisdiction over Take-Two's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are substantially related to Take-Two's federal claims.

    2.    This Court has personal jurisdiction over Mr. Perez and venue is proper in this District, because, among other things, Mr. Perez consented to personal jurisdiction and venue in this District via his agreement to the forum selection provision contained in Take-Two's User Agreement.

    3.    Take-Two's Complaint states claims for direct and contributory copyright infringement in violation of 17 U.S.C. § 101 *et seq.*, breach of contract, and tortious interference with contract.

    4.    Mr. Perez has failed to answer or otherwise defend against Take-Two's Complaint in this action.

5.    A Certificate of Default was issued on November 21, 2018.  (Dkt. No. 19).

6.    Mr. Perez is not a minor, incompetent person, or in active military service.

7.    By reason of default, Mr. Perez has admitted the truth of the allegations in Take-Two's Complaint.

8.    Take-Two has been irreparably harmed by Mr. Perez's infringing conduct and will continue to be harmed unless enjoined. ***First***, Mr. Perez's Elusive program (the "Infringing Program") creates new features and elements in *Grand Theft Auto* which can be used to harm legitimate players, causing Take-Two to lose control over its carefully balanced plan for how its video game is designed to be played. ***Second***, the Infringing Program harms Take-Two's reputation for maintaining its gaming environment, discouraging users from future purchases and gameplay. ***Third***, because the Infringing Program allows its users to create unlimited virtual currency—which can then be used to purchase in-game items in Take-Two's game—it undermines Take-Two's pricing and sales of legitimate virtual currency.  These harms are not quantifiable.  Take-Two has no way of knowing how much revenue it has lost and will continue to lose as a result of Mr. Perez's Infringing Program.

9.    The balance of hardships favors Take-Two.  In contrast to the harm that Take-Two will suffer, there is no evidence of any injury to Mr. Perez.  In particular, the inability to continue infringing a copyrighted work is not a legally cognizable harm. *See e.g.*, *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 167, 197 (S.D.N.Y. 2009). Thus, there will be no injury to Mr. Perez caused by entry of a permanent injunction requiring Mr. Perez to cease his infringing conduct.

10.    Entry of a permanent injunction against Mr. Perez is in the public interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED THAT:**

(a)    Under Count I of the Complaint, Mr. Perez is liable to Take-Two for willfully and directly infringing Take-Two's copyrights in GTAV.

(b)    Under Count II of the Complaint, Mr. Perez is liable to Take-Two for willfully and contributorily infringing Take-Two's copyrights in GTAV.

(c)    Under Count III of the Complaint, Mr. Perez is liable to Take-Two for breach of Take-Two's User Agreement.

(d)    Under Count IV of the Complaint, Mr. Perez is liable to Take-Two for tortious interference with Take-Two's contracts with its other GTAV players.

(e)    Mr. Perez is ordered to pay to Take-Two the sum of $150,000.00 in statutory damages, pursuant to 17 U.S.C. § 504(c)(2), and $69,686.95 in attorney's fees, pursuant to 17 U.S.C. § 505 **for which let execution issue forthwith**.

*[handwritten annotation: $66,868.95/ PKC]*

(f)    Mr. Perez and all persons, firms, and corporations acting in concert with him are permanently enjoined and restrained from directly or indirectly infringing Take-Two's copyrights, including, but not limited to, (a) creating derivative works based upon any portion of Take-Two's video games, including *Grand Theft Auto V*; (b) producing or distributing any computer programs that alter Take-Two's games, including without limitation Elusive; and (c) from participating or assisting in any such activities.

(g)    This Order shall take effect immediately.

(h)    The Court shall retain jurisdiction to entertain such further proceedings and to enter such further orders as may be necessary or appropriate to implement and/or enforce the provisions of this Order.

(i)    The Clerk is directed to terminate the Motion and close the case.

*[handwritten left margin: Based upon the extent of planning, intent and willfulness.]*

- 3 -

**DONE AND ORDERED** this 4th day of _February_, 2019.

HON. P. KEVIN CASTEL
United States District Judge

# EXHIBIT B

ROCKSTAR GAMES

HOME   GAMES   VIDEOS   NEWSWIRE   SOCIAL CLUB   DOWNLOADS   WAREHOUSE   SUPPORT

SIGN IN OR JOIN SOCIAL CLUB

ROCKSTAR GAMES          KILLING DREAMS MURDERING HOPE FIGHTING THE RIGHTEOUS BULLYING THE WEAK          EST MCMXCVIII

# ROCKSTAR GAMES END USER LICENSE AGREEMENT

REVISED: JANUARY 22, 2018

## LIMITED SOFTWARE WARRANTY AND LICENSE AGREEMENT

This limited software warranty and license agreement (this "Agreement") may be periodically updated and the current version will be posted at www.rockstargames.com/eula (the "Website"). Your continued use of the Software after a revised Agreement has been posted constitutes your acceptance of its terms.

THE "SOFTWARE" INCLUDES ALL SOFTWARE INCLUDED WITH THIS AGREEMENT, THE ACCOMPANYING MANUAL(S), PACKAGING, AND OTHER WRITTEN FILES, ELECTRONIC OR ON-LINE MATERIALS OR DOCUMENTATION, AND ANY AND ALL COPIES OF SUCH SOFTWARE AND ITS MATERIALS.

THE SOFTWARE IS LICENSED, NOT SOLD. BY OPENING, DOWNLOADING, INSTALLING, COPYING, OR OTHERWISE USING THE SOFTWARE, AND ANY OTHER MATERIALS INCLUDED WITH THE SOFTWARE, YOU AGREE TO BE BOUND BY THE TERMS OF THIS AGREEMENT WITH THE UNITED STATES COMPANY ROCKSTAR GAMES, INC. ("LICENSOR," "WE," "US, OR "OUR"), AS WELL AS THE PRIVACY POLICY LOCATED AT www.rockstargames.com/privacy AND TERMS

## LICENSE

Subject to this Agreement and its terms and conditions, Licensor hereby grants you a nonexclusive, non-transferable, limited, and revocable right and license to use one copy of the Software for your personal, non-commercial use for gameplay on a single Game Platform (e.g. computer, mobile device, or gaming console) as intended by Licensor unless otherwise expressly specified in the Software documentation. Your license rights are subject to your compliance with this Agreement. The term of your license under this Agreement shall commence on the date that you install or otherwise use the Software and ends on the earlier date of either your disposal of the Software or the termination of this Agreement (see below).

The Software is licensed, not sold, to you, and you hereby acknowledge that no title or ownership in the Software is being transferred or assigned and this Agreement should not be construed as a sale of any rights in the Software. Licensor retains all right, title, and interest to the Software, including, but not limited to, all copyrights, trademarks, trade secrets, trade names, proprietary rights, patents, titles, computer codes, audiovisual effects, themes, characters, character names, stories, dialog, settings, artwork, sounds effects, musical works, and moral rights. The Software is protected by U.S. copyright and trademark law and applicable laws and treaties throughout the world. The Software may not be copied, reproduced, altered, modified, or distributed in any manner or medium, in whole or in part, without prior written consent from Licensor. Any persons copying, reproducing, or distributing all or any portion of the Software in any manner or medium, will be willfully violating the copyright laws and may be subject to civil and criminal penalties in the U.S. or their local country. Be advised that U.S. copyright violations are subject to statutory penalties of up to $150,000 per violation. The Software contains certain licensed materials and Licensor's licensors may also protect their rights in the event of any violation of this Agreement. All rights not expressly granted under this Agreement are reserved by Licensor and, as applicable, its licensors.

## LICENSE CONDITIONS

You agree not to, and not to provide guidance or instruction to any other individual or entity on how to:

  a. commercially exploit the Software;
  b. distribute, lease, license, sell, rent, convert into convertible currency, or otherwise transfer or assign the Software, or any copies of the Software, including but not limited to Virtual Goods or Virtual Currency (defined below) without the express prior written consent of Licensor or as expressly set forth in this Agreement;
  c. make a copy of the Software or any part thereof (other than as set forth herein);
  d. make a copy of the Software available on a network for use or download by multiple users;
  e. except as otherwise specifically provided by the Software or this Agreement, use or install the Software (or permit others to do same) on a network, for on-line use, or on more than one computer or gaming unit at the same time;
  f. copy the Software onto a hard drive or other storage device in order to bypass the requirement to run the Software from the included CD-ROM or DVD-ROM (this prohibition does not apply to copies in whole or in part that may be made by the Software itself during installation in order to run more efficiently);
  g. use or copy the Software at a computer gaming center or any other location-based site; provided, that Licensor may offer you a separate license agreement to make the Software available for commercial use;
  h. reverse engineer, decompile, disassemble, display, perform, prepare derivative works based on, or otherwise modify the Software, in whole or in part;
  i. remove or modify any proprietary notices, marks, or labels contained on or within the Software;
  j. restrict or inhibit any other user from using and enjoying any online features of the Software;
  k. cheat (including but not limited to utilizing exploits or glitches) or utilize any unauthorized robot, spider, or other

program in connection with any online features of the Software;

l. violate any terms, policies, licenses, or code of conduct for any online features of the Software; or

m. transport, export, or re-export (directly or indirectly) into any country forbidden to receive the Software by any U.S. export laws or regulations or U.S. economic sanctions or otherwise violate any laws or regulations, or the laws of the country in which the Software was obtained, which may be amended from time to time.

ACCESS TO SPECIAL FEATURES AND/OR SERVICES, INCLUDING DIGITAL COPIES: Software download, redemption of a unique serial code, registration of the Software, membership in a third-party service and/or membership in a Licensor service (including acceptance of related terms and policies) may be required to activate the Software, access digital copies of the Software, or access certain un-lockable, downloadable, online, or other special content, services, and/or functions (collectively, "Special Features"). Access to Special Features is limited to a single User Account (as defined below) per serial code and access to Special Features cannot be transferred, sold, leased, licensed, rented, converted into convertible virtual currency, or re-registered by another user unless otherwise expressly specified. The provisions of this paragraph supersede any other term in this Agreement.

TRANSFER OF PRE-RECORDED COPY LICENSE: You may transfer the entire physical copy of pre-recorded Software and accompanying documentation on a permanent basis to another person as long as you retain no copies (including archival or backup copies) of the Software, accompanying documentation, or any portion or component of the Software or accompanying documentation, and the recipient agrees to the terms of this Agreement. Transfer of the pre-recorded copy license may require you to take specific steps, as set forth in the Software documentation. You may not transfer, sell, lease, license, rent, or convert into convertible virtual currency any Virtual Currency or Virtual Goods except as expressly set forth in this Agreement or with Licensor's prior written consent. Special Features, including content otherwise unavailable without a single-use serial code, are not transferable to another person under any circumstances, and Special Features may cease functioning if the original installation copy of the Software is deleted or the pre-recorded copy is unavailable to the user. The Software is intended for private use only. NOTWITHSTANDING THE FOREGOING, YOU MAY NOT TRANSFER ANY PRE-RELEASE COPIES OF THE SOFTWARE.

TECHNICAL PROTECTIONS: The Software may include measures to control access to the Software, control access to certain features or content, prevent unauthorized copies, or otherwise attempt to prevent anyone from exceeding the limited rights and licenses granted under this Agreement. Such measures may include incorporating license management, product activation, and other security technology in the Software and monitoring usage, including, but not limited to, time, date, access, or other controls, counters, serial numbers, and/or other security devices designed to prevent the unauthorized access, use, and copying of the Software, or any portions or components thereof, including any violations of this Agreement. Licensor reserves the right to monitor use of the Software at any time. You may not interfere with such access control measures or attempt to disable or circumvent such security features, and if you do, the Software may not function properly. If the Software permits access to Special Features, only one copy of the Software may access those Special Features at one time. Additional terms and registration may be required to access online services and to download Software updates and patches. Only Software subject to a valid license can be used to access online services, including downloading updates and patches. Licensor may limit, suspend, or terminate the license granted hereunder and access to the Software, including, but not limited to, any related services and products, on thirty days' notice, or immediately for any reason beyond the Company's reasonable control or if you breach any term of an agreement or policy governing the Software, including this Agreement, Licensor's Privacy Policy and/or Licensor's Terms of Service.

USER CREATED CONTENT: The Software may allow you to create content, including, but not limited to, a gameplay map, scenario, screenshot, car design, character, item, or video of your game play. In exchange for use of the Software, and to the extent that your contributions through use of the Software give rise to any copyright interest, you hereby grant Licensor an exclusive, perpetual, irrevocable, fully transferable, and sub-licensable worldwide right and license to use your contributions in any way and for any purpose in connection with the Software and related goods and services, including, but not limited to, the rights to reproduce, copy, adapt, modify, perform, display, publish, broadcast, transmit, or otherwise communicate to the public by any means whether now known or unknown and distribute your contributions without any further notice or compensation to you of any kind for the whole duration of protection granted to intellectual property rights by applicable laws and international conventions. You hereby waive and agree never to assert any moral rights of paternity, publication, reputation, or attribution with respect to Licensor's and other players' use and enjoyment of such assets in connection with the Software and related goods and services under applicable law. This license grant to Licensor, and terms above regarding any applicable moral rights, will survive any termination of this Agreement.

INTERNET CONNECTION: The Software may require an internet connection to access internet-based features, authenticate the Software, or perform other functions.

USER ACCOUNTS: In order to use the Software or a software feature, or for certain features of the Software to operate properly, you may be required to have and maintain a valid and active user account with an online service, such as a third-party gaming platform or social network account ("Third-Party Account"), or an account with Licensor or a Licensor affiliate, as set forth in the Software documentation. If you do not maintain such accounts, then certain features of the Software may not operate or may cease to function properly, either in whole or in part. The Software may also require you to create a Software-specific user account with Licensor or a Licensor affiliate ("User Account") in order to access the Software and its functionality and features. Your User Account log-in may be associated with a Third-Party Account. You are responsible for all use and the security of your User Accounts and any Third-Party Accounts that you use to access and use the Software.

## VIRTUAL CURRENCY AND VIRTUAL GOODS

If the Software allows you to purchase and/or earn through play a license to use Virtual Currency and Virtual Goods, the following additional terms and conditions apply.

VIRTUAL CURRENCY & VIRTUAL GOODS : The Software may enable users to (i) use fictional virtual currency as a medium of exchange exclusively within the Software ("Virtual Currency" or "VC") and (ii) gain access to (and certain limited rights to use) virtual goods within the Software ("Virtual Goods" or "VG"). Regardless of the terminology used, VC and VG represent a limited license right governed by this Agreement. Subject to the terms of and compliance with this Agreement, Licensor hereby grants you the nonexclusive, non-transferable, non-sublicensable, limited right and license to use VC and VG obtained by you for your personal, non-commercial gameplay exclusively within the Software. Except as otherwise

prohibited by applicable law, VC and VG obtained by you are licensed to you, and you hereby acknowledge that no title or ownership in or to VC and VG is being transferred or assigned hereunder. This Agreement should not be construed as a sale of any rights in VC and VG.

VC and VG do not have an equivalent value in real currency and do not act as a substitute for real currency. You acknowledge and agree that Licensor may revise or take action that impacts the perceived value of or purchase price for any VC and/or VG at any time except as prohibited by applicable law. VC and VG do not incur fees for non-use; provided, however, that the license granted hereunder to VC and VG will terminate in accordance with the terms and conditions of this Agreement and the Software documentation, when Licensor ceases providing the Software, or this Agreement is otherwise terminated. Licensor, in its sole discretion, reserves the right to charge fees for the right to access or use VC or VG and/or may distribute VC or VG with or without charge.

EARNING & PURCHASING VIRTUAL CURRENCY & VIRTUAL GOODS: You may have the ability to purchase VC or to earn VC from Licensor for the completion of certain activities or accomplishments in the Software. For example, Licensor may provide VC or VG upon the completion of an in-game activity, such as attaining a new level, completing a task, or creating user content. Once obtained, VC and/or VG will be credited to your User Account. You may purchase VC and VG only within the Software, or through a platform, participating third-party online store, application store, or other store authorized by Licensor (all referred to herein as "Software Store"). Purchase and use of in-game items or currency through a Software Store are subject to the Software Store's governing documents, including but not limited to, the Terms of Service and User Agreement. This online service has been sublicensed to you by the Software Store. Licensor may offer discounts or promotions on the purchase of VC, and such discounts and promotions may be modified or discontinued by Licensor at any time without notice to you. Upon completing an authorized purchase of VC from an Application Store, the amount of purchased VC will be credited to your User Account. The Licensor shall establish a maximum amount you may spend to purchase VC per transaction and/or per day, which may vary depending on the associated Software. Licensor, in its sole discretion, may impose additional limits on the amount of VC you may purchase or use, how you may use VC, and the maximum balance of VC that may be credited to your User Account. You are solely responsible for all VC purchases made through your User Account regardless of whether or not authorized by you.

BALANCE CALCULATION: You can access and view your available VC and VG in your User Account when logged into your User Account. Licensor reserves the right, in its sole discretion, to make all calculations regarding the available VC and VG in your User Account. Licensor further reserves the right, in its sole discretion, to determine the amount of and manner in which VC is credited and debited from your User Account in connection with your purchase of VC or for other purposes. While Licensor strives to make all such calculations on a consistent and reasonable basis, you hereby acknowledge and agree that Licensor's determination of the available VC and VG in your User Account is final, unless you can provide documentation to Licensor that such calculation was or is intentionally incorrect.

USING VIRTUAL CURRENCY AND VIRTUAL GOODS: All purchased in-game Virtual Currency and/or Virtual Goods may be consumed or lost by players in the course of gameplay according to the game's rules applicable to currency and goods, which may vary depending on the associated Software. VC and VG may only be used within the Software, and Licensor, in its sole discretion, may limit use of VC and/or VG to a single game. The authorized uses and purposes of VC and VG may change at any time. Your available VC and/or VG as shown in your User Account will be reduced each time you use VC and/or VG within the Software. The use of any VC and/or VG constitutes a demand against and withdrawal from your available VC and/or VG in your User Account. You must have sufficient available VC and/or VG in your User Account in order to complete a transaction within the Software. VC and/or VG in your User Account may be reduced without notice upon the occurrence of certain events related to your use of the Software: For example, you may lose VC or VG upon the loss of a game or the death of your character. You are responsible for all uses of VC and/or VG made through your User Account, regardless of whether or not authorized by you. You must notify Licensor immediately upon discovering the unauthorized use of any VC and/or VG made through your User Account by submitting a support request at www.take2games.com/support.

NON-REDEEMABLE: VC and VG may only be redeemed for in-game goods and services. You may not sell, lease, license, or rent VC or VG, convert them into convertible VC. VC and VG may only be redeemed for in-game goods or services and are not redeemable for any sum of money or monetary value or other goods from Licensor or any other person or entity at any time, except as expressly provided herein or otherwise required by applicable law. VC and VG have no cash value, and neither Licensor nor any other person or entity has any obligation to exchange your VC or VG for anything of value, including, but not limited to, real currency.

NO REFUND: All purchases of VC and VG are final and under no circumstances will such purchases be refundable, transferable, or exchangeable. Except as prohibited by applicable law, Licensor has the absolute right to manage, regulate, control, modify, suspend, and/or eliminate such VC and/or VG as it sees fit in its sole discretion, and Licensor shall have no liability to you or anyone else for the exercise of such rights.

NO TRANSFERS: Any transferring, trading, selling, or exchanging of any VC or VG to anyone, other than in game play using the Software as expressly authorized by Licensor ("Unauthorized Transactions"), including, but not limited to, among other users of the Software, is not sanctioned by Licensor and is strictly forbidden. Licensor reserves the right, in its sole discretion, to terminate, suspend, or modify your User Account and your VC and VG and terminate this Agreement if you engage in, assist in, or request any Unauthorized Transactions. All users who participate in such activities do so at their own risk and hereby agree to be responsible and liable to Licensor, its partners, licensors, affiliates, contractors, officers, directors, employees, and agents for all damages, losses and expenses arising directly or indirectly from such actions. You acknowledge that Licensor may request that the applicable Application Store stop, suspend, terminate, discontinue, or reverse any Unauthorized Transaction, regardless of when such Unauthorized Transaction occurred (or has yet to occur) when it suspects or has evidence of fraud, violations of this Agreement, violations of any applicable law or regulation, or any intentional act designed to interfere or that otherwise has the effect of or may have the effect of intervening in any way with the operation of the Software. If we believe or have any reason to suspect that you have engaged in an Unauthorized Transaction, you further agree that Licensor may, in its sole discretion, restrict your access to your available VC and VG in your User Account or terminate or suspend your User Account and your rights to any VC, VG, and other items associated with your User Account.

LOCATION: VC is only available to customers in certain locations. You may not purchase or use VC if you are not in an approved location.

## SOFTWARE STORE TERMS

This Agreement and the provision of the Software through any Software Store (including the purchase of VC or VG) is subject to the additional terms and conditions set forth on or in or required by the applicable Software Store and all such applicable terms and conditions are incorporated herein by this reference. Licensor is not responsible or liable to you for any credit card or bank-related charges or other charges or fees related to your purchase transactions within the Software or through a Software Store. All such transactions are administered by the Software Store, not Licensor. Licensor expressly disclaims any liability for any such transactions, and you agree that your sole remedy regarding all transactions is from or through such Software Store.

This Agreement is solely between you and Licensor, and not with any Software Store. You acknowledge that the Software Store has no obligation to furnish any maintenance or support services to you in connection with the Software. Except for the foregoing, to the maximum extent permitted by applicable law, the Software Store will have no other warranty obligation whatsoever with respect to the Software. Any claim in connection with the Software related to product liability, a failure to conform to applicable legal or regulatory requirements, claims under consumer protection or similar legislation or intellectual property infringement are governed by this Agreement, and the Software Store is not responsible for such claims. You must comply with the Software Store Terms of Service and any other Software Store applicable rules or policies. The license to the Software is a non-transferable license to use the Software only on an applicable device that you own or control. You represent that you are not located in any U.S.-embargoed countries or other geographical areas or on the U.S. Treasury Department's list of Specially Designated Nationals or the U.S. Department of Commerce Denied Person's list or Entity List. The Software Store is a third-party beneficiary to this Agreement and may enforce this Agreement against you.

## INFORMATION COLLECTION & USAGE

By installing and using the Software, you consent to the information collection and usage terms set forth in this section and Licensor's Privacy Policy, including (where applicable) (i) the transfer of any personal information and other information to Licensor, its affiliates, vendors, and business partners, and to certain other third parties, including governmental authorities, in the U.S. and other countries located outside Europe or your home country, including countries that may have lower standards of privacy protection; (ii) the public display of your data, such as identification of your user-created content or displaying your scores, ranking, achievements, and other gameplay data on websites and other platforms; (iii) the sharing of your gameplay data with hardware manufacturers, platform hosts, and Licensor's marketing partners; and (iv) other uses and disclosures of your personal information or other information as specified in the above-referenced Privacy Policy, as amended from time to time. If you do not want your information used or shared in this manner, then you should not use the Software.

For the purposes all data privacy issues, including the collection, use, disclosure, and transfer of your personal information and other information, the Privacy Policy located at www.take2games.com/privacy, as amended from time to time, takes precedence over any other statement in this Agreement.

## WARRANTY

LIMITED WARRANTY: Licensor warrants to you (if you are the initial and original purchaser of the Software but not if you obtain the pre-recorded Software and accompanying documentation as a transfer from the original purchaser) that the original storage medium holding the Software is free from defects in material and workmanship under normal use and service for 90 days from the date of purchase. Licensor warrants to you that the Software is compatible with a personal computer meeting the minimum system requirements listed in the Software documentation or that it has been certified by the gaming unit producer as compatible with the gaming unit for which it has been published. However, due to variations in hardware, software, internet connections, and individual usage, Licensor does not warrant the performance of the Software on your specific computer or gaming unit. Licensor does not warrant against interference with your enjoyment of the Software; that the Software will meet your requirements; that operation of the Software will be uninterrupted or error-free; or that the Software will be compatible with third-party software or hardware or that any errors in the Software will be corrected. No oral or written statement or advice provided by Licensor or any authorized representative shall create a warranty. Because some jurisdictions do not allow the exclusion of or limitations on implied warranties or the limitations on the applicable statutory rights of a consumer, some or all of the above exclusions and limitations may not apply to you.

If for any reason you find a defect in the storage medium or Software during the warranty period, Licensor agrees to replace, free of charge, any Software discovered to be defective within the warranty period as long as the Software is currently being manufactured by Licensor. If the Software is no longer available, Licensor retains the right to substitute a similar piece of Software of equal or greater value. This warranty is limited to the storage medium and the Software as originally provided by Licensor and is not applicable to normal wear and tear. This warranty shall not be applicable and shall be void if the defect has arisen through abuse, mistreatment, or neglect. Any implied warranties prescribed by statute are expressly limited to the 90-day period described above.

Except as set forth above, and provided that if you are a resident of an EU member state Licensor warrants that the Software will be fit for purpose and of satisfactory quality, this warranty is in lieu of all other warranties, whether oral or written, express or implied, including any other warranty of merchantability, fitness for a particular purpose, or non-infringement, and no other representations or warranties of any kind shall be binding on Licensor.

When returning the Software subject to the limited warranty above, please send the original Software only to Licensor address specified below and include: your name and return address; a photocopy of your dated sales receipt; and a brief note describing the defect and the system on which you are running the Software.

## YOUR RESPONSIBILITY TO LICENSOR

To the fullest extent of applicable law, you agree to be responsible and liable to Licensor, its partners, licensors, affiliates, contractors, officers, directors, employees, and agents in respect of all damages, losses, and expenses arising directly or indirectly from your acts and omissions to act in using the Software pursuant to the terms of the Agreement.

TO THE FULLEST EXTENT OF APPLICABLE LAW, LICENSOR SHALL NOT BE LIABLE FOR SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES RESULTING FROM POSSESSION, USE, OR MALFUNCTION OF THE SOFTWARE, INCLUDING, BUT NOT LIMITED TO, DAMAGES TO PROPERTY, LOSS OF GOODWILL, COMPUTER FAILURE OR MALFUNCTION, AND, TO THE EXTENT PERMITTED BY LAW, DAMAGES FOR PERSONAL INJURIES, PROPERTY DAMAGE, OR LOST PROFITS OR PUNITIVE DAMAGES FROM ANY CAUSES OF ACTION ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE SOFTWARE, WHETHER ARISING IN TORT (INCLUDING NEGLIGENCE), CONTRACT, STRICT LIABILITY, OR OTHERWISE, WHETHER OR NOT LICENSOR HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. TO THE FULLEST EXTENT OF APPLICABLE LAW, LICENSOR'S LIABILITY FOR ALL DAMAGES SHALL NOT (EXCEPT AS REQUIRED BY APPLICABLE LAW) EXCEED THE ACTUAL PRICE PAID BY YOU FOR USE OF THE SOFTWARE.

IF YOU ARE A RESIDENT OF AN EU MEMBER STATE, NOTWITHSTANDING ANYTHING TO THE CONTRARY SET OUT ABOVE, LICENSOR IS RESPONSIBLE FOR LOSS OR DAMAGE YOU SUFFER THAT IS A REASONABLY FORESEEABLE RESULT OF LICENSOR'S BREACH OF THIS AGREEMENT OR ITS NEGLIGENCE, BUT IT IS NOT RESPONSIBLE FOR LOSS OR DAMAGE THAT IS NOT FORESEEABLE.

WE DO NOT AND CANNOT CONTROL THE FLOW OF DATA TO OR FROM OUR NETWORK AND OTHER PORTIONS OF THE INTERNET, WIRELESS NETWORKS, OR OTHER THIRD-PARTY NETWORKS. SUCH FLOW DEPENDS IN LARGE PART ON THE PERFORMANCE OF THE INTERNET AND WIRELESS SERVICES PROVIDED OR CONTROLLED BY THIRD PARTIES. AT TIMES, ACTIONS OR INACTIONS OF SUCH THIRD PARTIES MAY IMPAIR OR DISRUPT YOUR CONNECTIONS TO THE INTERNET, WIRELESS SERVICES, OR PORTIONS THEREOF. WE CANNOT GUARANTEE THAT SUCH EVENTS WILL NOT OCCUR. TO THE FULLEST EXTENT OF APPLICABLE LAW, WE DISCLAIM ANY AND ALL LIABILITY RESULTING FROM OR RELATED TO THIRD-PARTY ACTIONS OR INACTIONS THAT IMPAIR OR DISRUPT YOUR CONNECTIONS TO THE INTERNET, WIRELESS SERVICES, OR PORTIONS THEREOF OR THE USE OF THE SOFTWARE AND RELATED SERVICES AND PRODUCTS.

## TERMINATION

This Agreement is effective until terminated by you or by the Licensor. This Agreement automatically terminates when Licensor ceases to operate the Software servers (for games exclusively operated online), if Licensor determines or believes your use of the Software involves or may involve fraud or money laundering or any other illicit activity, or upon your failure to comply with terms and conditions of this Agreement, including, but not limited to, the License Conditions above. You may terminate this Agreement at any time by (i) requesting Licensor to terminate and delete your User Account that is used to access or use the Software using the method set forth in the Terms of Service or (ii) destroying and/or deleting any and all copies of all Software in your possession, custody, or control. Deleting the Software from your Game Platform will not delete the information associated with your User Account, including any VC and VG associated with your User Account. If you reinstall the Software using the same User Account, then you may still have access to your prior User Account information, including any VC and VG associated with your User Account. However except as otherwise prohibited by applicable law, if your User Account is deleted upon termination of this Agreement for any reason, all VC and/or VG associated with your User Account will also be deleted, and you will no longer be available for use the Software or any VC or VG associated with your User Account. If this Agreement terminates due to your violation of this Agreement, Licensor may prohibit you from re-registering or re-accessing the Software. Upon any termination of this Agreement, you must destroy or return the physical copy of Software to Licensor, as well as permanently destroy all copies of the Software, accompanying documentation, associated materials, and all of its component parts in your possession or control, including from any client server, computer, gaming unit, or mobile device on which it has been installed. Upon termination of this Agreement, your rights to use the Software, including any VC or VG associated with your User Account, will terminate immediately, and you must cease all use of the Software. The termination of this Agreement will not affect our rights or your obligations arising under this Agreement.

## U.S. GOVERNMENT RESTRICTED RIGHTS

The Software and documentation have been developed entirely at private expense and are provided as "Commercial Computer Software" or "restricted computer software." Use, duplication, or disclosure by the U.S. Government or a U.S. Government subcontractor is subject to the restrictions set forth in subparagraph (c)(1)(ii) of the Rights in Technical Data and Computer Software clauses in DFARS 252.227-7013 or as set forth in subparagraph (c)(1) and (2) of the Commercial Computer Software Restricted Rights clauses at FAR 52.227-19, as applicable. The Contractor/Manufacturer is Licensor at the location listed below.

## EQUITABLE REMEDIES

You hereby agree that if the terms of this Agreement are not specifically enforced, Licensor will be irreparably damaged, and therefore you agree that Licensor shall be entitled, without bond, other security, or proof of damages, to appropriate equitable remedies with respect any of this Agreement, including temporary and permanent injunctive relief, in addition to any other available remedies.

3/19/2018

## TAXES AND EXPENSES

You shall be responsible and liable to Licensor and any and all of its affiliates, officers, directors, and employees for all taxes, duties, and levies of any kind imposed by any governmental entity with respect to the transactions contemplated under this Agreement, including interest and penalties thereon (exclusive of taxes on Licensor's net income), irrespective of whether included in any invoice sent to you at any time by Licensor. You shall provide copies of any and all exemption certificates to Licensor if you are entitled to any exemption. All expenses and costs incurred by you in connection with your activities hereunder, if any, are your sole responsibility. You are not entitled to reimbursement from Licensor for any expenses, and will hold Licensor harmless therefrom.

## TERMS OF SERVICE

All access to and use of the Software is subject to this Agreement, the applicable Software documentation, Licensor's Terms of Service, and Licensor's Privacy Policy, and all terms and conditions of the Terms of Service are hereby incorporated into this Agreement by this reference. These agreements represent the complete agreement between you and Licensor relating to use of the Software and related services and products and supersede and replace any prior agreements between you and Licensor, whether written or oral. To the extent there is a conflict between this Agreement and the Terms of Service, this Agreement shall control.

## MISCELLANEOUS

If any provision of this Agreement is held to be unenforceable for any reason, such provision shall be reformed only to the extent necessary to make it enforceable and the remaining provisions of this Agreement shall not be affected.

## GOVERNING LAW

This Agreement shall be construed (without regard to conflicts or choice of law principles) under the laws of the State of New York, as such law is applied to agreements between New York residents entered into and to be performed within New York, except as governed by federal law. Unless expressly waived by Licensor in writing for the particular instance or contrary to local law, the sole and exclusive jurisdiction and venue for actions related to the subject matter hereof shall be the state and federal courts located in Licensor's principal corporate place of business (New York County, New York, U.S.A.). You and Licensor consent to the jurisdiction of such courts and agree that process may be served in the manner provided herein for giving of notices or otherwise as allowed by New York state or federal law. You and Licensor agree that the UN Convention on Contracts for the International Sale of Goods (Vienna, 1980) shall not apply to this Agreement or to any dispute or transaction arising out of this Agreement. However, if you are a resident of a European Union member state, you will benefit from any mandatory provisions of consumer protection law in the member state in which you are resident, and you can bring legal proceedings in relation to this Agreement in the courts of the member state in which you are resident.

IF YOU HAVE ANY QUESTIONS CONCERNING THIS AGREEMENT, YOU MAY CONTACT US IN WRITING AT: ROCKSTAR GAMES, INC., 622 BROADWAY, NEW YORK, NY 10012.

## APPLE APP STORE ADDITIONAL LICENSE TERMS

These license terms are in addition to all other terms of the Limited Software Warranty; License Agreement, and Information Use Disclosures. If any Software is provided to you through the Apple Inc. ("Apple") App Store, then the following additional terms and conditions in this paragraph apply. This Agreement is solely between you and Licensor, and not with Apple. You acknowledge that Apple has no obligation to furnish any maintenance or support services to you in connection with the Software. In the event of any failure of the Software to conform to the Limited Warranty in this Agreement, you may notify Apple, and Apple will refund the purchase price for the Software. Except for the foregoing, to the maximum extent permitted by applicable law, Apple will have no other warranty obligation whatsoever with respect to the Software. Any claim in connection with the Software related to product liability, a failure to conform to applicable legal or regulatory requirements, claims under consumer protection or similar legislation or intellectual property infringement are governed by this Agreement, and Apple is not responsible for such claims. You must comply with the App Store Terms of Service, including the Usage Rules. The license to the Software is a non-transferable license to use the Software only on an iPhone or iPod touch that you own or control. You represent that you are not located in any U.S. embargoed countries or on the U.S. Treasury Department's list of Specially Designated Nationals or the U.S. Department of Commerce Denied Person's list or Entity List. Apple is a third party beneficiary to this Agreement and may enforce this Agreement against you.

All other terms and conditions of the EULA apply to your use of the Software.

## BEATERATOR ADDITIONAL LICENSE TERMS

These license terms are in addition to all other terms of the Limited Software Warranty; License Agreement, and Information Use Disclosures.

Owners of this Software may use it to create their own tracks by arranging the Beaterator content and/or adding new content to create their own compositions ("User Tracks"). Rockstar Games grants owners a worldwide and royalty-free license to use, distribute and non-commercially exploit their User Tracks. This license is non-exclusive and all Software

owners are licensed to use the same Beaterator content to create their User Tracks. All User Created Content terms herein shall apply to User Tracks uploaded to any website or on-line service related to the Beaterator Software or shared with other players using in-game features. Additional terms and restrictions may apply to any supplemental music, sounds, loops, or "stems" purchased or downloaded for use with Beaterator.

The sounds and loops connected to the Software may NOT be reformatted, mixed, filtered, re-synthesized, or otherwise edited or altered for use in any kind of sampling product/package or software, regardless of whether such use is commercial or non-commercial. All users of this Software is prohibited from using it for any purpose that: (a) infringes the copyright, trademark, patent, trade secret, right of publicity or any other right of a third party, (b) is or may be libelous, defamatory or slanderous, or (c) any other use that is illegal in nature. All users of this Software hereby waive all claims against Rockstar Games, its parent, subsidiaries and affiliates, or any third-party based upon the Beaterator Content that may be in their User Track.

Except as indicated above, all other terms and conditions of the EULA apply to your use of Beaterator.



# EXHIBIT C

# TERMS OF SERVICE

🇺🇸 🇧🇷 🇨🇿 🇩🇪 🇪🇸 🇫🇷 🇮🇹 🇯🇵 🇰🇷 🇲🇽 🇳🇱 🇵🇱 🇷🇺 🇸🇦 🇹🇼 🇨🇳

REVISED: JULY 27, 2018

## TERMS & CONDITIONS

This document constitutes an agreement (the "Agreement") between you and the United States company Rockstar Games, Inc., its parent Take-Two Interactive Software, Inc., subsidiaries, and affiliates, (the "Company," "we," "us," and "our") that governs the relationship between you and the Company with respect to your use of the Online Services. The Company provides access to the Online Services and any related services subject to your compliance with this Agreement. Thus, it is important that you carefully read and understand this Agreement.

The terms and conditions herein are in addition to and supplement the End User License Agreement at www.take2games.com/eula that governs the use of all software and services distributed by the Company.

Description Of Online Services
Trademark And Copyright Information
Submissions
Code Of Conduct
Limited License By The Company
License To The Company
Making Purchases
Ringtones, Wallpapers, And Other Mobile Device Services & Products
Virtual Currency And Virtual Goods
Warranty Disclaimer
Void Where Prohibited
Your responsibility to the Company
Litigation Issues
Termination
Miscellaneous
Designated Agent Under the Digital Millenium Copyright Act
Repeat Infringer Policy

## DESCRIPTION OF ONLINE SERVICES

Subject to full compliance with this Agreement, the Company may offer to provide certain products, services, and websites accessed through internet-capable hardware platforms including gaming consoles, personal computers, mobile computers, or mobile devices, or in-game applications or software platforms including third-party hosts (collectively the "Online Services"). Online Services shall include, but not be limited to, any service or content the Company provides to you, including any materials displayed or performed. The Company may change, suspend or discontinue the Online Services,including the availability of any feature or content, on thirty days' notice, or immediately for any reason beyond the Company's reasonable control, or if you breach any term of an agreement or policy

governing the Software, including this Agreement, Licensor's Privacy Policy and/or Licensor's Terms of Service. The Company may also impose limits on certain features and services or restrict your access to parts or all of the Online Services without notice.

## TRADEMARK AND COPYRIGHT INFORMATION

All Online Services material, including, but not limited to, text, data, graphics, logos, button icons, images, audio clips, video clips, links, digital downloads, data compilations, and software is owned, controlled by, licensed to, or used with permission by the Company and is protected by copyright, trademark, and other intellectual property rights. The Online Services material is made available solely for your personal, non-commercial use and may not be copied, reproduced, republished, modified, uploaded, posted, transmitted, or distributed in any way, including by email or other electronic means, without the express prior written consent of the Company in each instance. You may download material intentionally made available for downloading through the Online Services for your personal, non-commercial use only, provided that you keep intact any and all copyright and other proprietary notices that may appear on such materials.

## SUBMISSIONS

The Company welcomes input from the gaming community. You hereby grant the Company an exclusive, perpetual, irrevocable, fully transferable, and sub-licensable worldwide right and license to use any submissions you submit to the Company of any nature whatsoever, whether through a posting on a Company website, email to the Company, mail, or any other means and without any obligation to account, credit, or make any payment to you for any use thereof. No purported reservation of rights incorporated in or accompanying any submission shall have any force or effect.

## CODE OF CONDUCT

The following rules, policies, and disclaimers shall govern and/or apply to your use of the Online Services.

You agree, by using the Online Services, that: (1) you will only use the Online Services for lawful purposes, in compliance with applicable laws, for your own personal, non-commercial use; (2) you will not restrict or inhibit any other user from using or enjoying the Online Services (for example, by means of harassment, hacking, interfering, adversely affecting, or defacement); (3) you will not use the Online Services to create, upload, or post any material that is knowingly false and/or defamatory, inaccurate, abusive, vulgar, obscene, profane, hateful, harassing, sexually oriented, threatening, invasive of one's privacy, in violation of any law, or is inconsistent with community standards; (4) you will not post, upload, or create any copyrighted material using the Online Services unless you own the copyright in and to such material; (5) you will not post, upload, or transmit any information or software that modifies or alters the Online Services in any way or that contains a virus, worm, timebomb, cancelbot, trojan horse or other harmful, disruptive, or deleterious component; (6) you will not post, upload, create, or transmit materials in violation of another party's copyright or other intellectual property rights; (7) you will not cheat or utilize any unauthorized robot, spider, or other program in connection with the Online Services; (8) you will not impersonate any other individual or entity in connection with your use of the Online Services, and (9) you will not provide assistance, guidance, or instruction to any other individual or entity regarding any of the above. All determinations will be made by the Company in its sole discretion.

When we provide Online Services involving user-created content ("UGC"), we do not review every piece of UGC, nor do we confirm the accuracy, validity, or originality of the UGC posted. We do not actively monitor the contents of the postings, nor are we responsible for the content of any postings. We do not vouch for, nor do we warrant the validity,

accuracy, completeness, or usefulness of any UGC. The contents of the postings do not represent the views of the Company, its subsidiaries, or any person or property associated with the Company, the Online Services, or any website in the Company's family of websites. If you feel that any posting is objectionable, we encourage you to use associated report functions or contact us by visiting www.take2games.com/support. We will remove objectionable content if we deem removal to be warranted. Please understand that removal or editing of any content is a manual process and might not occur immediately or at all. The Company is not responsible for any content posted, or actions taken, by any other User that impacts you or your use of the Online Services. We reserve the right to remove (or not) any UGC or content for any (or no) reason whatsoever. You remain solely responsible for your UGC, and you will accordingly be responsible and liable to the Company and its agents with respect to any claim based upon the transmission of your UGC. Posting of advertisements, chain letters, pyramid schemes, solicitations, the same note more than once or "spamming," and the like, are inappropriate and forbidden on the Online Services (including bulletin boards and chat rooms).

To the fullest extent allowed by applicable law, your use of the Online Services is at your own risk and the Company is not responsible for any loss, damage, or unsatisfactory performance related to the Online Services.

We reserve the right to reveal your identity (including whatever information we know about you) without notice to you in certain circumstances set forth in our Privacy Policy. Please visit www.take2games.com/privacy for more details.

## LIMITED LICENSE BY THE COMPANY

The Company grants you a limited, non-sublicensable license to access and use the Online Services. Such license is subject to this Agreement and, as applicable, the software EULA located at www.take2games.com/eula, and specifically conditioned upon the following: (i) you may only view, copy and print portions of the Online Services for your own informational, personal and non-commercial use; (ii) you may not modify or otherwise make derivative uses of the Online Services, or any portion thereof; (iii) you may not remove or modify any copyright, trademark, or other proprietary notices that have been placed in the Online Services; (iv) you may not use any data mining, robots or similar data gathering or extraction methods; (v) you may not use the Online Services other than for their intended purpose; (vi) you may not reproduce, prepare derivative works from, distribute, frame, "mirror," or display the Online Services, except as provided herein; and (vii) you must not violate the Code of Conduct set forth above.

Except as expressly permitted above, any use of any portion of the Online Services without the prior written permission of the Company is strictly prohibited and will terminate the license granted herein. Any such unauthorized use may also violate applicable laws, including without limitation copyright and trademark laws and applicable communications regulations and statutes. Unless explicitly stated herein, nothing in this Agreement may be construed as conferring any license to intellectual property rights, whether by estoppel, implication or otherwise. This license is revocable at any time.

You represent and warrant that your use of the Online Services will be consistent with this license, the EULA, and any other applicable agreements or policies, and will not infringe or violate the rights of any other party or breach any contract or legal duty to any other parties, or violate any applicable law. You will be responsible and liable to the Company in respect of any liability that the Company suffers arising out of your use of Online Services not in accordance with this Agreement. To request permission for uses of the Online Services not included in the foregoing license, you may write to the Company at webmaster@take2games.com.

## LICENSE TO THE COMPANY

By creating UGC, posting messages, uploading files, creating files, inputting data, or engaging in any form of communication with or through the Online Services, you are granting the Company a royalty-free, perpetual, non-

exclusive, unrestricted, worldwide license to: (1) use, copy, sublicense, adapt, transmit, publicly perform, or display any such material; and (2) sublicense to third-parties the unrestricted right to exercise any of the foregoing rights granted with respect to the material. The foregoing grants shall include the right to exploit any proprietary rights in such material, including but not limited to rights under copyright, trademark, service mark, or patent laws under any relevant jurisdiction. Please consult the EULA at www.take2games.com/eula for additional license terms related to our software.

## MAKING PURCHASES

If you wish to purchase products or services described in the Online Services, you may be asked to supply certain information including credit card or other payment information. You agree that all information that you provide will be accurate, complete, and current. You agree to pay all charges, including shipping and handling charges, incurred by users of your credit card or other payment mechanism at the prices in effect when such charges are incurred. You will also be responsible for paying any applicable taxes relating to your purchases. Please review the Company's privacy policy at www.take2games.com/privacy before submitting such information.

## RINGTONES, WALLPAPERS, AND OTHER MOBILE DEVICE SERVICES & PRODUCTS

Certain mobile phone handsets and carriers offer services that enable consumers to select and purchase directly through their mobile devices various digital mobile products. The Online Services may also offer the ability to select and purchase various digital mobile products that will be delivered to your mobile device. These digital mobile products offerings and products may enable the consumer to customize their mobile device or mobile device service (for example with ringtones or wallpaper), or allow the consumer to select certain video or audio files that can be viewed or listened to whenever the consumer chooses. All or some of the digital mobile products offerings may not be available on, transmissible to, or compatible with all mobile devices. As a result, consumers may not be able to access, purchase or make use of all the services or offerings. Any attempt to purchase these products or services may result in mobile carrier charges being separately billed to your mobile device account for SMS messaging or other communications. In addition, the consumer may be separately billed by the mobile carrier for the actual product, service or offering selected. In the event the consumer has a call waiting and an incoming call is received while accessing or ordering any mobile product or service, such product, service or other offering may be interrupted or may not completely download. You can unsubscribe from any subscription service by following the instructions in the message or on the website related to the product. Please see http://www.take2games.com/support for support information regarding our products.

## VIRTUAL CURRENCY AND VIRTUAL GOODS

The Online Services, including software, may offer the ability to purchase and/or earn via gameplay a limited license to use virtual currency and/or virtual goods exclusively within applicable software and services provided by the Company. Such license is subject to and specifically conditioned upon your acceptance of, and compliance with, the EULA, this Agreement and any other applicable policies or agreements. All in-game Virtual Currency and/or Virtual Goods may be consumed or lost by players in the course of gameplay according to the game's rules applicable to currency and goods, which may vary. See the EULA at www.take2games.com/eula for more details.

## WARRANTY DISCLAIMER

THE COMPANY MAY PROVIDE LINKS AND POINTERS TO INTERNET WEBSITES MAINTAINED BY THIRD-PARTIES ("THIRD-PARTY SITES") AND MAY, FROM TIME TO TIME, PROVIDE THIRD-PARTY MATERIALS ON ITS WEBSITES. NEITHER THE COMPANY, ITS PARENT OR SUBSIDIARY COMPANIES, NOR THEIR AFFILIATES, ENDORSE, TAKE RESPONSIBILITY FOR, OPERATE OR CONTROL IN ANY RESPECT ANY INFORMATION, PRODUCTS, OR SERVICES ON THESE THIRD-PARTY SITES. THE MATERIALS ON THE THIRD-PARTY SITES ARE PROVIDED "AS IS" AND "AS AVAILABLE" WITH NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NONINFRINGEMENT. Because some jurisdictions do not allow the exclusion of or limitations on implied warranties or the limitations on the applicable statutory rights of a consumer, some or all of the above exclusions and limitations may not apply to you.

## VOID WHERE PROHIBITED

Although Company Online Services are accessible worldwide, not all products or services are available to all persons or in all geographic locations. The Company reserves the right to limit, in its sole discretion, the provision and quantity of any product or service to any person or geographic area it so desires. Any offer for any product or service made is void where prohibited.

## YOUR RESPONSIBILTY TO THE COMPANY

You are responsible and liable to the Company and its affiliated companies, officers, directors, employees, agents, licensors, and suppliers in respect of all losses, expenses, damages, and costs, including reasonable attorneys' fees, resulting from any violation by you of this Agreement. The Company reserves the right to assume the exclusive defense and control of any matter that you are responsible and liable for under this paragraph.

## LITIGATION ISSUES

This Agreement is entered into in the State of New York and shall be governed by, and construed in accordance with, the laws of the State of New York, exclusive of its choice of law rules. You and the Company agree to submit to the exclusive jurisdiction of the state and federal courts sitting in the Borough of Manhattan in the City of New York in the State of New York, and waive any jurisdictional, venue, or inconvenient forum objections to such courts. You and the Company further agree as follows: (i) any claim brought to enforce this Agreement must be commenced within two (2) years of the cause of action accruing; (ii) no recovery may be sought or received for damages other than out-of-pocket expenses, except that the prevailing party will be entitled to costs and attorneys' fees; and (iii) any claim must be brought individually and not consolidated as part of a group or class action complaint. Because some jurisdictions do not allow the exclusion of or limitations on incidental or consequential damages or the limitations on the applicable statutory rights of a consumer, some or all of the above exclusions and limitations may not apply to you. For example, if you are a resident of a European Union member state, you will benefit from any mandatory provisions of consumer protection law in the member state in which you are resident, and you can bring legal proceedings in relation to this Agreement in the courts of the member state in which you are resident. The Company has the right to prosecute civil claims against you for any violation of this Code of Conduct, whether for breach of contract, violation of common law

rights, or violation of any applicable state or federal statute. Any violation by you of this Code of Conduct shall constitute an affirmative defense (whether characterized as arising at law or in equity) against any claim you might assert against the Company in connection with the Online Services.

## TERMINATION

The Company may terminate or suspend any and all Online Services and any registered account immediately, without prior notice or liability on thirty days' notice, or immediately for any reason beyond the Company's reasonable control or if you breach any terms and conditions of an agreement or policy governing the Software, including this Agreement, the Privacy Policy and/or the End User License Agreement. Upon termination of your account, your right to use the Online Services will immediately cease. If you wish to terminate your account, you may simply discontinue using the Online Services. All provisions of this Agreement which by their nature should survive termination shall survive termination, including, without limitation, ownership provisions, warranty disclaimers and limitations of liability.

The Company may terminate any of the Online Services for any reason at all by giving at least thirty days' notice by email or on the website page entitled "Legal Notices" or "Legal Information" (or similar title), or immediately without notice for any reason beyond the Company's reasonable control.

## MISCELLANEOUS

In the event that any of the provisions of this Agreement are held by a court or other tribunal of competent jurisdiction to be unenforceable, such provisions shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect. This Agreement, along with the Privacy Policy located at www.take2games.com/privacy and the EULA, constitutes the entire agreement between you and the Company pertaining to the subject matter hereof, and any and all written or oral agreements heretofore existing between you and the Company with respect to the subject matter of this Agreement are expressly canceled.

No failure or delay by the Company to enforce any rights or powers under this Agreement may be deemed a waiver of those or any other rights or powers of the Company.

The Company may modify the terms of this Agreement at any time in its sole discretion by posting a revised Agreement or, in the case of a material modification, by posting notice of such modification on the website page entitled "Legal Notices" or "Legal Information" (or similar title) before the modification takes effect.

## DESIGNATED AGENT UNDER THE DIGITAL MILLENNIUM COPYRIGHT ACT

The Digital Millennium Copyright Act ("DMCA") provides a mechanism for notifying service providers of claims of unauthorized use of copyrighted materials. Under the DMCA, a claim must be sent to the service provider's designated agent. If you believe in good faith that the Company should be notified of a possible online copyright infringement involving any Online Service, please notify the Company's designated agent:
Service Provider: Take-Two Interactive Software, Inc.
Take-Two Interactive Software, Inc.
Address of Designated Agent:
622 Broadway

New York, New York 10012
Attention: General Counsel

Telephone Number of Designated Agent: 646-536-2842
Facsimile Number of Designated Agent: 646-941-3566

Email Address of Designated Agent: copyright@take2games.com

Please be aware that, in order to be effective, your notice of claim must comply with the detailed requirements set forth in the DMCA. You are encouraged to review them (see 17 U.S.C. Sec. 512(c)(3)) before sending your notice of claim.

To meet the notice requirements under the DMCA, the notification must be a written communication that includes the following: (1) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed; (2) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site; (3) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit us to locate the material; (4) Information reasonably sufficient to permit us to contact the complaining party, such as an address, telephone number and, if available, an electronic mail address at which the complaining party may be contacted; (5) A statement that the complaining party has a good-faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent or the law; and (6) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

## REPEAT INFRINGER POLICY

In accordance with the DMCA and other applicable law, the Company has adopted a policy of terminating, in appropriate circumstances and at Company's sole discretion, registered accounts deemed to be repeat infringers. The Company may also at its sole discretion limit access to the Online Services and/or terminate the account of anyone who infringes any intellectual property rights of others, whether or not there is any repeat infringement.

Back to top

# EXHIBIT D

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**PA 1-950-397**

**Effective Date of Registration:**
June 09, 2015

## Title

**Title of Work:** Grand Theft Auto V (for PC)

## Completion/Publication

**Year of Completion:** 2015
**Date of 1st Publication:** April 14, 2015
**Nation of 1st Publication:** United States

## Author

- **Author:** Take-Two Interactive Software, Inc.
  **Author Created:** Audio-visual elements, artwork, literary text, computer code
  **Work made for hire:** Yes
  **Domiciled in:** United States

## Copyright Claimant

**Copyright Claimant:** Take-Two Interactive Software, Inc.
622 Broadway, New York, NY, 10012, United States

## Limitation of copyright claim

**Material excluded from this claim:** licensed material; previously published material; previously registered material
**Previous registration and year:** PA 1-387-611, 2007
PA 1-612-646, 2008

**New material included in claim:** new and additional audio-visual elements, artwork, literary text; additional and revised computer code

## Rights and Permissions

**Organization Name:** Take-Two Interactive Software, Inc.
**Address:** 622 Broadway
New York, NY 10012 United States

## Certification

**Name:** Kristen McCallion

Page 1 of 2

**Registration #:**  PA0001950397
**Service Request #:**  1-2305544612

Fish & Richardson P.C.
Kristen McCallion
P.O. Box 1022
Minneapolis, MN 55440-1022 United States

# EXHIBIT E

| From: | McKeown, Megan L. |
|---|---|
| Sent: | Tuesday, September 11, 2018 2:44 PM |
| To: | scott@sblawcenter.com; scottbblaw@aol.com |
| Cc: | Roly Alfonso; Cendali, Dale M.; Simmons, Joshua L. |
| Subject: | Take-Two v. Perez |

Dear Scott,

As I explained in my prior emails, when you did not respond to our numerous prior communications, we filed a lawsuit against Mr. Perez, and contacted Mr. Perez directly to find out whether he was still represented by your firm. Mr. Perez has just surfaced saying that you are still representing him and that the documents we requested nearly five months ago on April 16 are now in your possession.

We have not served Mr. Perez with the Complaint, but that deadline is fast approaching. Will you be providing us with Mr. Perez' documents so that we may be able to resolve this dispute? If not, we will have to deal with this issue through the courts.


Regards,

Megan

**Megan McKeown**

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3373
**F** +1 212 446 4900

megan.mckeown@kirkland.com

**From:** Cendali, Dale M.
**Sent:** Wednesday, August 22, 2018 6:28 PM
**To:** scott@sblawcenter.com; scottbblaw@aol.com
**Cc:** roly@sblawcenter.com; McKeown, Megan L. <megan.mckeown@kirkland.com>; Simmons, Joshua L. <joshua.simmons@kirkland.com>
**Subject:** Take-Two v. Perez

Dear Scott,

Please find attached the documents that were filed earlier today in the Southern District of New York regarding Jhonny Perez. If Mr. Perez will produce his financial documents as we previously requested, we will hold off on service of these materials.

As you have not responded to our last four e-mails, we wonder whether you are still representing Mr. Perez. If we do not hear from you by end of business on Friday, August 24, we will assume that you are no longer representing him and will reach out to him directly.

Regards,

Dale

**Dale M. Cendali**

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 446 4846
**F** +1 212 446 4900

dale.cendali@kirkland.com

---

**From:** McKeown, Megan L.
**Sent:** Friday, August 17, 2018 10:39 AM
**To:** 'scott@sblawcenter.com' <scott@sblawcenter.com>; 'scottbblaw@aol.com' <scottbblaw@aol.com>
**Cc:** 'Roly Alfonso' <roly@sblawcenter.com>; Cendali, Dale M. <dale.cendali@kirkland.com>; Simmons, Joshua L. <Joshua.Simmons@kirkland.com>
**Subject:** Jhonny Perez - Information Requested

Dear Scott,

We have not heard back from you regarding my e-mail below. Yesterday a judge held that Take-Two was likely to succeed on the merits against a similar mod menu infringer and enjoined the infringer's conduct. We've attached the decision for your review.

Please be advised that if Mr. Perez does not immediately cooperate by sending us his financial documents, we will file the attached complaint in the Southern District of New York at end of business on **Monday, August 20**.

Regards,

Megan

**Megan McKeown**

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3373
**F** +1 212 446 4900

megan.mckeown@kirkland.com

---

**From:** McKeown, Megan L.
**Sent:** Thursday, August 9, 2018 7:00 PM
**To:** 'scott@sblawcenter.com' <scott@sblawcenter.com>; 'scottbblaw@aol.com' <scottbblaw@aol.com>
**Cc:** 'Roly Alfonso' <roly@sblawcenter.com>; Cendali, Dale M. <dale.cendali@kirkland.com>; Simmons, Joshua L. <Joshua.Simmons@kirkland.com>
**Subject:** Jhonny Perez - Information Requested

Dear Scott,

We still have not received Jhonny Perez's financial documents reflecting the money he made from selling Elusive keys, which we first requested ***nearly four months ago*** on April 16. Please advise your client that if we do not receive his financial documents by Thursday, August 16, we will be filing the attached complaint in the Southern District of New York on Friday, August 17.

Regards,

Megan

**Megan McKeown**

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3373
**F** +1 212 446 4900

megan.mckeown@kirkland.com

**From:** McKeown, Megan L.
**Sent:** Wednesday, July 11, 2018 11:54 AM
**To:** 'scott@sblawcenter.com' <scott@sblawcenter.com>; 'scottbblaw@aol.com' <scottbblaw@aol.com>
**Cc:** Simmons, Joshua L. <Joshua.Simmons@kirkland.com>; 'Roly Alfonso' <roly@sblawcenter.com>
**Subject:** RE: Jhonny Perez - Information Requested

Hi Scott,

We did not hear from Jhonny yesterday. In the interest of moving things along, may we reach out to him directly?

Best,

Megan

**Megan McKeown**

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3373
**F** +1 212 446 4900

megan.mckeown@kirkland.com

**From:** McKeown, Megan L.
**Sent:** Monday, July 9, 2018 6:45 PM
**To:** 'Scott Bennett' <scott@sblawcenter.com>; 'scottbblaw@aol.com' <scottbblaw@aol.com>
**Cc:** Simmons, Joshua L. <Joshua.Simmons@kirkland.com>
**Subject:** RE: Jhonny Perez - Information Requested

Hi Scott,

Would it be easier if we just e-mailed Jhonny copying you and/or called him on the phone directly?

Best,

Megan

**Megan McKeown**

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3373

**F** +1 212 446 4900

megan.mckeown@kirkland.com

**From:** Scott Bennett <scott@sblawcenter.com>
**Sent:** Monday, July 9, 2018 6:18 PM
**To:** McKeown, Megan L. <megan.mckeown@kirkland.com>
**Subject:** RE: Jhonny Perez - Information Requested

Hey Megan:

I apologize for not getting back to you. I contacted Jhonny each time you e-mailed me and thought he had gotten back to you.
I will have him contact you tomorrow.


Best Regards,

**Scott Bennett|** Attorney at Law **|** The Bennett Law Center **| p.** 305.648.2255 **f.** 305.648.2256 **|**
scott@sblawcenter.com **|** thebennettlawcenter.com

**CONFIDENTIALITY NOTICE:** This transmission may be: (1) subject to the Attorney-Client Privilege, (2) an Attorney Work Product, or, (3) Strictly Confidential. If you are not the intended recipient of this message, you may not disclose, print, copy or disseminate this information. If you have received this message in error, please reply and notify the sender (only) and delete this message immediately. Unauthorized interception of this e-mail is a violation of Federal Criminal Law.

**DISCLAIMER:** This E-Mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 and is legally privileged. The information contained in this E-Mail is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you receive this E-Mail in error, please notify the sender immediately at the phone number above and delete the information from your computer. Please do not copy or use it for any purpose nor disclose its contents to any other person.

**From:** McKeown, Megan L. <megan.mckeown@kirkland.com>
**Sent:** Monday, July 9, 2018 11:45 AM
**To:** scottbblaw@aol.com; Scott Bennett <scott@sblawcenter.com>
**Cc:** Roly Alfonso <roly@sblawcenter.com>; Simmons, Joshua L. <joshua.simmons@kirkland.com>
**Subject:** Jhonny Perez - Information Requested

Dear Scott,

You have not responded to my last three e-mails, which I sent on May 24, June 12, and June 25. My last e-mail specifically asked you to confirm whether or not you still represent Mr. Perez, and we requested a response by Thursday, June 28. Because you did not respond, I tried calling you last Monday, July 2 and left a voicemail inquiring whether you are still representing Mr. Perez. I also tried calling you this morning and still could not connect with you. I left another voicemail. If we do not hear back from you by the end of the day today, we will reach out to Mr. Perez directly to determine whether you still represent him in this matter.

Regards,

Megan

**Megan McKeown**

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3373
**F** +1 212 446 4900

megan.mckeown@kirkland.com

---

**From:** McKeown, Megan L.
**Sent:** Monday, June 25, 2018 9:48 AM
**To:** 'scottbblaw@aol.com' <scottbblaw@aol.com>; 'Scott Bennett' <scott@sblawcenter.com>
**Cc:** 'Roly Alfonso' <roly@sblawcenter.com>; Simmons, Joshua L. <Joshua.Simmons@kirkland.com>
**Subject:** Jhonny Perez - Information Requested

Dear Scott,

We have not heard back from you and wonder whether you are still representing Mr. Perez. If we do not receive any response by Thursday, June 28, we will assume you are no longer representing Mr. Perez and will correspond with Mr. Perez directly.

Regards,

Megan

**Megan McKeown**

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3373
**F** +1 212 446 4900

megan.mckeown@kirkland.com

---

**From:** McKeown, Megan L.
**Sent:** Tuesday, June 12, 2018 1:30 PM
**To:** 'scottbblaw@aol.com' <scottbblaw@aol.com>; 'Scott Bennett' <scott@sblawcenter.com>
**Cc:** 'Roly Alfonso' <roly@sblawcenter.com>; Simmons, Joshua L. <Joshua.Simmons@kirkland.com>
**Subject:** Jhonny Perez - Information Requested

Dear Scott,

We asked for Mr. Perez's financial records (i.e. PayPal records and the screenshots of the two services he used to sell Elusive keys) eight weeks ago. We still have not received them. If we do not receive them by Friday, June 15, we will assume that Mr. Perez is not interested in settling the dispute and will proceed accordingly.

Regards,

Megan

**Megan McKeown**

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3373
**F** +1 212 446 4900

megan.mckeown@kirkland.com

---

**From:** McKeown, Megan L.
**Sent:** Thursday, May 24, 2018 11:01 AM
**To:** 'scottbblaw@aol.com' <scottbblaw@aol.com>; 'Scott Bennett' <scott@sblawcenter.com>

**Cc:** 'Roly Alfonso' <roly@sblawcenter.com>; Simmons, Joshua L. <Joshua.Simmons@kirkland.com>
**Subject:** RE: Jhonny Perez - Information Requested

Hi Scott,

Per our conversation yesterday, is Jhonny going to provide his PayPal records and screenshots of the services he used to sell Elusive keys? I did not see anything come through last night.

Regards,

Megan

### Megan McKeown

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3373
**F** +1 212 446 4900

megan.mckeown@kirkland.com

---

**From:** Scott Bennett <scott@sblawcenter.com>
**Sent:** Monday, May 21, 2018 4:54 PM
**To:** McKeown, Megan L. <megan.mckeown@kirkland.com>
**Subject:** RE: Jhonny Perez - Information Requested

Dear Megan:

Jhonny does not have screenshots. He says the company sold 3 tiers of service which he described during the phone call interview . He says everything was on the website which has been offline since February.

Best Regards,

**Scott Bennett|** Attorney at Law **|** The Bennett Law Center **| p.** 305.648.2255 **f.** 305.648.2256 **|**
scott@sblawcenter.com **|** thebennettlawcenter.com

**CONFIDENTIALITY NOTICE:** This transmission may be: (1) subject to the Attorney-Client Privilege, (2) an Attorney Work Product, or, (3) Strictly Confidential. If you are not the intended recipient of this message, you may not disclose, print, copy or disseminate this information. If you have received this message in error, please reply and notify the sender (only) and delete this message immediately. Unauthorized interception of this e-mail is a violation of Federal Criminal Law.

**DISCLAIMER:** This E-Mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 and is legally privileged. The information contained in this E-Mail is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you receive this E-Mail in error, please notify the sender immediately at the phone number above and delete the information from your computer. Please do not copy or use it for any purpose nor disclose its contents to any other person.

---

**From:** McKeown, Megan L. <megan.mckeown@kirkland.com>
**Sent:** Monday, May 21, 2018 10:06 AM
**To:** scottbblaw@aol.com; Scott Bennett <scott@sblawcenter.com>
**Cc:** Roly Alfonso <roly@sblawcenter.com>; Simmons, Joshua L. <joshua.simmons@kirkland.com>
**Subject:** RE: Jhonny Perez - Information Requested

Hi Scott,

On Friday you mentioned that Jhonny would upload the screenshots of the two services that he used to sell Elusive keys by 3 pm, but I have not seen anything come through. Please have Jhonny upload the screenshots immediately.

Regards,

Megan

**Megan McKeown**

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3373
**F** +1 212 446 4900

megan.mckeown@kirkland.com

---

**From:** McKeown, Megan L.
**Sent:** Tuesday, May 15, 2018 4:53 PM
**To:** 'scottbblaw@aol.com' <scottbblaw@aol.com>; 'Scott Bennett' <scott@sblawcenter.com>
**Cc:** 'Roly Alfonso' <roly@sblawcenter.com>; Simmons, Joshua L. <Joshua.Simmons@kirkland.com>
**Subject:** RE: Jhonny Perez - Information Requested

Dear Scott,

I see that Jhonny uploaded the executable file for Elusive but that he did not upload the screenshots of the two services that he mentioned using to sell Elusive keys. Can you please ask him to upload the screenshots?

Regards,

Megan

**Megan McKeown**

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3373
**F** +1 212 446 4900

megan.mckeown@kirkland.com

---

**From:** McKeown, Megan L.
**Sent:** Monday, May 14, 2018 12:09 PM
**To:** 'scottbblaw@aol.com' <scottbblaw@aol.com>; 'Scott Bennett' <scott@sblawcenter.com>
**Cc:** 'Roly Alfonso' <roly@sblawcenter.com>; Simmons, Joshua L. <Joshua.Simmons@kirkland.com>
**Subject:** RE: Jhonny Perez - Information Requested

Dear Scott,

As discussed on the phone, please have Jhonny upload the materials today to the Dropbox link in my e-mail below. I've also attached my separate e-mail with instructions explaining how to use the Dropbox.

Regards,

Megan

**Megan McKeown**

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3373
**F** +1 212 446 4900

megan.mckeown@kirkland.com

---

**From:** McKeown, Megan L.
**Sent:** Tuesday, May 8, 2018 8:36 PM
**To:** 'scottbblaw@aol.com' <scottbblaw@aol.com>; 'Scott Bennett' <scott@sblawcenter.com>
**Cc:** 'Roly Alfonso' <roly@sblawcenter.com>; Simmons, Joshua L. <Joshua.Simmons@kirkland.com>
**Subject:** Jhonny Perez - Information Requested

Dear Scott -- Since there was an error with the dropbox link, we've switched over to a new system using our firm's file transfer. Please have Jhonny upload his materials using this link:
https://transfer.kirkland.com/human.aspx?r=1423683359&Arg12=filelist&Arg06=478524315. I will send instructions and logins to use this system under separate cover.

Please have Jhonny upload the materials by **Friday, May 11**.

Best,

Megan

**Megan McKeown**

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3373
**F** +1 212 446 4900

megan.mckeown@kirkland.com

---

**From:** McKeown, Megan L.
**Sent:** Wednesday, May 2, 2018 6:03 PM
**To:** 'scottbblaw@aol.com' <scottbblaw@aol.com>
**Cc:** Simmons, Joshua L. <Joshua.Simmons@kirkland.com>
**Subject:** RE: Jhonny Perez - Information Requested

Thanks, Scott. I'll work on figuring out why the DropBox link did not work. In the meantime, it looks like Jhonny provided you with "screenshots of the two services" he used to sell Elusive keys, but those were not attached to your e-mail. Please provide me with those screenshots.

Regards,

Megan

**Megan McKeown**

**KIRKLAND & ELLIS LLP**

601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3373
**F** +1 212 446 4900
─────────────────────
megan.mckeown@kirkland.com

**From:** scottbblaw@aol.com <scottbblaw@aol.com>
**Sent:** Wednesday, May 2, 2018 5:53 PM
**To:** McKeown, Megan L. <megan.mckeown@kirkland.com>
**Subject:** Re: Jhonny Perez - Information Requested

Dear Megan:

Jhonny was trying to send the responses directly to you but was unable. He forwarded them to me. Here they are.

I. **Information About Involved Individuals**. Provide information about those involved in creating, maintaining, or moderating Elusive, including their (a) full legal names, (b) e-mail addresses, (c) Skype IDs, (d) Discord handles, and (e) any other user name or aliases associated with each person involved. Provide this information for everyone other than users, including JSalva, Parcool, Leezy, Ron Chris, Temple, Bashy, and you.

Additional to the people above: Bradyy, Jaspr, CaptainLS, Turtle, Laquerhead. I don't know anyone personal info aside from this discord names which were the same as provided before. My id was Lord.

II. **Financial Information**. Provide a copy of your PayPal records reflecting your purchase of Elusive and any payments you received.

I **Didn't receive** funds directly from Elusive, i was issued keys to sell on a weekly basis for which the proceeds were to be kept by me. Attached are screenshots of the two services i used to sell. I joined in its early days so i don't recall paying for the service.

III. **Correspondence & Group Chats**. Correspondence between those involved in creating, maintaining, and moderating Elusive, including screenshots of the user lists and communications made in Discord.

Everyone listed above including me moderated the discord when it was online. I don't have access to this.

IV. **Technical Information**

a) The executable and other files that you used with Elusive.

Dropbox link **isn't** working for me to attach the files used.

b) To the extent that you have them, the entire source code repository for Elusive, including the menu code, the .EXC file, injector code, authentication code, code designed to circumvent or suppress Take-Two's anticheat, the custom tools used to generate the menu, and any binary required to run Elusive code going forward (e.g. authentication servers, etc.). Indicate the source behind each above (e.g. JSalva, Parcool, outside source, etc.). If the source of any code was publicly available, indicate that as well.

I didn't work on the source or the menu.

c) To the extent that you have them, webserver files and database files, including the database of all users.

Only access i had was to look up individuals with their key or exact user name to reset their password or remove their 2FA if they forgot them.

In a message dated 4/25/2018 11:47:12 AM Eastern Standard Time, megan.mckeown@kirkland.com writes:

Hi Scott,

I attempted to reach you by phone a few minutes ago to follow up on the materials we requested from Jhonny Perez in my e-mail below. Monday was the deadline for Jhonny to upload the materials, but so far nothing has been uploaded and we have not heard from you. Please confirm that Jhonny will provide the materials immediately or our client will have to consider its other options.

Regards,

Megan

**Megan McKeown**

_____

**KIRKLAND & ELLIS LLP**

601 Lexington Avenue, New York, NY 10022

**T** +1 212 909 3373

**F** +1 212 446 4900

_____

megan.mckeown@kirkland.com

---

**From:** McKeown, Megan L.
**Sent:** Monday, April 16, 2018 5:14 PM
**To:** 'scottbblaw@aol.com' <scottbblaw@aol.com>; 'Scott Bennett' <scott@sblawcenter.com>
**Cc:** Simmons, Joshua L. <Joshua.Simmons@kirkland.com>
**Subject:** RE: Jhonny Perez - Information Requested

Hi Scott,

Thanks for joining the call with Jhonny today. Please let Jhonny know that we are seeking the following materials and information, which can be uploaded to Dropbox at https://www.dropbox.com/sh/xhlbi90ficicnz7/AAAkWpVe33ORZb45FdenKWPLa?dl=0. These materials are due by **Monday, April 23.**

I. **Information About Involved Individuals**. Provide information about those involved in creating, maintaining, or moderating Elusive, including their (a) full legal names, (b) e-mail addresses, (c) Skype IDs, (d) Discord handles, and (e) any other user name or aliases associated with each person involved. Provide this information for everyone other than users, including JSalva, Parcool, Leezy, Ron Chris, Temple, Abashee, and you.

II. **Financial Information**. Provide a copy of your PayPal records reflecting your purchase of Elusive and any payments you received.

III. **Correspondence & Group Chats**. Correspondence between those involved in creating, maintaining, and moderating Elusive, including screenshots of the user lists and communications made in Discord.

IV. **Technical Information**

a) The executable and other files that you used with Elusive.

b) To the extent that you have them, the entire source code repository for Elusive, including the menu code, the .EXC file, injector code, authentication code, code designed to circumvent or suppress Take-Two's anticheat, the custom tools used to generate the menu, and any binary required to run Elusive code going forward (e.g. authentication servers, etc.). Indicate the source behind each above (e.g. JSalva, Parcool, outside source, etc.). If the source of any code was publicly available, indicate that as well.

c) To the extent that you have them, webserver files and database files, including the database of all users.

**Megan McKeown**

_____

**KIRKLAND & ELLIS LLP**

601 Lexington Avenue, New York, NY 10022

**T** +1 212 909 3373

**F** +1 212 446 4900

_____

megan.mckeown@kirkland.com

**From:** McKeown, Megan L.
**Sent:** Monday, April 16, 2018 11:02 AM
**To:** 'scottbblaw@aol.com' <scottbblaw@aol.com>; 'Scott Bennett' <scott@sblawcenter.com>
**Cc:** Simmons, Joshua L. <Joshua.Simmons@kirkland.com>
**Subject:** RE: Letter from D. Cendali to S. Bennett

Hi Scott,

Just wanted to remind you about this call that is starting now. Jhonny is on the line.

Best,

Megan

**Megan McKeown**

------------------------------------------------

**KIRKLAND & ELLIS LLP**

601 Lexington Avenue, New York, NY 10022

**T** +1 212 909 3373

**F** +1 212 446 4900

------------------------------------------------

megan.mckeown@kirkland.com

**From:** McKeown, Megan L.
**Sent:** Friday, April 13, 2018 4:37 PM
**To:** 'scottbblaw@aol.com' <scottbblaw@aol.com>; 'Scott Bennett' <scott@sblawcenter.com>
**Cc:** Simmons, Joshua L. <Joshua.Simmons@kirkland.com>
**Subject:** RE: Letter from D. Cendali to S. Bennett

Hi Scott,

We confirmed Take-Two's availability for a call at 11 am EST on Monday. The dial in instructions are the same-- dial 866-398-2885 and enter **734 317 4197** as the passcode.

Have a great weekend.

Best,

Megan

**Megan McKeown**

———————————————————

**KIRKLAND & ELLIS LLP**

601 Lexington Avenue, New York, NY 10022

**T** +1 212 909 3373

**F** +1 212 446 4900

———————————————————

megan.mckeown@kirkland.com

**From:** scottbblaw@aol.com <scottbblaw@aol.com>
**Sent:** Friday, April 13, 2018 3:04 PM
**To:** McKeown, Megan L. <megan.mckeown@kirkland.com>
**Subject:** Re: Letter from D. Cendali to S. Bennett

13

Megan:

I just hung up I have been logged on since since 2;24. We will call back at 3:30.

Scott

In a message dated 4/13/2018 2:52:00 PM Eastern Standard Time, megan.mckeown@kirkland.com writes:

Scott -- The call was scheduled for 2:00 pm. Waiting nearly 45 minutes to tell me that you were having issues joining the call is a bit perplexing. Josh and I can speak with Jhonny and you at 3:30 pm today if you are available at that time.

Regards,

Megan

**Megan McKeown**

_____

**KIRKLAND & ELLIS LLP**

601 Lexington Avenue, New York, NY 10022

**T** +1 212 909 3373

**F** +1 212 446 4900

_____

megan.mckeown@kirkland.com

**From:** scottbblaw@aol.com <scottbblaw@aol.com>
**Sent:** Friday, April 13, 2018 2:42 PM
**To:** McKeown, Megan L. <megan.mckeown@kirkland.com>
**Subject:** Re: Letter from D. Cendali to S. Bennett

Megan:

I have been trying to log in with my client but we couldn't conference. I called independently and he is doing the same.

Scott

In a message dated 4/13/2018 2:16:54 PM Eastern Standard Time, megan.mckeown@kirkland.com writes:

Hi Scott,

You did not dial in to our scheduled teleconference and did not send an e-mail letting us know that Mr. Perez and you were not going to attend. To the extent you do not make yourself available by end of day Monday, we are going to start preparing litigation papers against Mr. Perez.

Regards,

Megan

**Megan McKeown**

------------------------------------------------

**KIRKLAND & ELLIS LLP**

601 Lexington Avenue, New York, NY 10022

**T** +1 212 909 3373

**F** +1 212 446 4900

------------------------------------------------

megan.mckeown@kirkland.com

---

**From:** McKeown, Megan L.
**Sent:** Friday, April 13, 2018 2:05 PM
**To:** 'scottbblaw@aol.com' <scottbblaw@aol.com>; 'Scott Bennett' <scott@sblawcenter.com>
**Cc:** Simmons, Joshua L. <Joshua.Simmons@kirkland.com>
**Subject:** RE: Letter from D. Cendali to S. Bennett

Hi Scott,

We are all on the line waiting. Are Jhonny and you joining?

**Megan McKeown**

------------------------------------------------

**KIRKLAND & ELLIS LLP**

601 Lexington Avenue, New York, NY 10022

**T** +1 212 909 3373

**F** +1 212 446 4900

------------------------------------------------

megan.mckeown@kirkland.com

**From:** scottbblaw@aol.com <scottbblaw@aol.com>
**Sent:** Friday, April 13, 2018 10:49 AM
**To:** McKeown, Megan L. <megan.mckeown@kirkland.com>
**Subject:** Re: Letter from D. Cendali to S. Bennett

Wonderful, thank you

In a message dated 4/13/2018 10:06:42 AM Eastern Standard Time,
megan.mckeown@kirkland.com writes:

Hi Scott,

Great. To join the call, dial 866-398-2885. The passcode to join is **734 317 4197**.

We look forward to speaking with the both of you.

Best,

Megan

**Megan McKeown**

**KIRKLAND & ELLIS LLP**

601 Lexington Avenue, New York, NY 10022

**T** +1 212 909 3373

**F** +1 212 446 4900

_____

megan.mckeown@kirkland.com

---

**From:** Scott Bennett <scott@sblawcenter.com>
**Sent:** Friday, April 13, 2018 10:03 AM
**To:** McKeown, Megan L. <megan.mckeown@kirkland.com>
**Subject:** RE: Letter from D. Cendali to S. Bennett

Hey Megan:

Yes, we will be available at 2:00.

Best Regards,

**Scott Bennett|** Attorney at Law **|** The Bennett Law Center **| p.** 305.648.2255 **f.** 305.648.2256 **|**

scott@sblawcenter.com **|** thebennettlawcenter.com

**CONFIDENTIALITY NOTICE**: This transmission may be: (1) subject to the Attorney-Client Privilege, (2) an Attorney Work Product, or, (3) Strictly Confidential. If you are not the intended recipient of this message, you may not disclose, print, copy or disseminate this information. If you have received this message in error, please reply and notify the sender (only) and delete this message immediately. Unauthorized interception of this e-mail is a violation of Federal Criminal Law.

**DISCLAIMER**: This E-Mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 and is legally privileged. The information contained in this E-Mail is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.

If you receive this E-Mail in error, please notify the sender immediately at the phone number above and delete the information from your computer. Please do not copy or use it for any purpose nor disclose its contents to any other person.

**From:** McKeown, Megan L. <megan.mckeown@kirkland.com>
**Sent:** Thursday, April 12, 2018 7:39 PM
**To:** scottbblaw@aol.com; Scott Bennett <scott@sblawcenter.com>
**Cc:** Simmons, Joshua L. <joshua.simmons@kirkland.com>
**Subject:** RE: Letter from D. Cendali to S. Bennett

Hi Scott,

I tried reaching you by phone a moment ago, but it appears I've missed you for the day. Please let me know whether or not Jhonny and you are available to speak tomorrow at 2:00 pm EST.

Regards,

Megan

**Megan McKeown**

_____

**KIRKLAND & ELLIS LLP**

601 Lexington Avenue, New York, NY 10022

**T** +1 212 909 3373

**F** +1 212 446 4900

_____

megan.mckeown@kirkland.com

**From:** McKeown, Megan L.
**Sent:** Wednesday, April 11, 2018 12:17 PM
**To:** 'scottbblaw@aol.com' <scottbblaw@aol.com>; 'scott@sblawcenter.com' <scott@sblawcenter.com>

**Cc:** Simmons, Joshua L. <Joshua.Simmons@kirkland.com>
**Subject:** RE: Letter from D. Cendali to S. Bennett

Hi Scott -- I write to follow up on my e-mail below. Are Jhonny and you available to speak this Friday from 2:00 to 3:00 pm? If not, please provide a few alternative times that the both of you are available.

Best,

Megan

**Megan McKeown**

——————————————————

**KIRKLAND & ELLIS LLP**

601 Lexington Avenue, New York, NY 10022

**T** +1 212 909 3373

**F** +1 212 446 4900

——————————————————

megan.mckeown@kirkland.com

---

**From:** McKeown, Megan L.
**Sent:** Monday, April 9, 2018 11:07 AM
**To:** 'scottbblaw@aol.com' <scottbblaw@aol.com>
**Cc:** Simmons, Joshua L. <Joshua.Simmons@kirkland.com>
**Subject:** RE: Letter from D. Cendali to S. Bennett

Hi Scott,

Are Jhonny and you available to speak from 2:00 to 3:00 pm this Friday, April 13?

Regards,

Megan

**Megan McKeown**

_____

**KIRKLAND & ELLIS LLP**

601 Lexington Avenue, New York, NY 10022

**T** +1 212 909 3373

**F** +1 212 446 4900

_____

[megan.mckeown@kirkland.com](mailto:megan.mckeown@kirkland.com)

**From:** [scottbblaw@aol.com](mailto:scottbblaw@aol.com) <[scottbblaw@aol.com](mailto:scottbblaw@aol.com)>
**Sent:** Friday, April 6, 2018 5:08 PM
**To:** McKeown, Megan L. <[megan.mckeown@kirkland.com](mailto:megan.mckeown@kirkland.com)>
**Subject:** Re: Letter from D. Cendali to S. Bennett

Hey Megan:

It is my understanding that he has already spoken with someone from the law firm but he is more then willing to speak with you again. He tells me that he had no involvement in making the program and the company is in the UK. He was hired by them for customer service and as soon as he was contacted by your firm he quit. Just let me know when you would like to set up the meeting.

Sincerely,

Scott Bennett

In a message dated 4/6/2018 4:38:29 PM Eastern Standard Time, megan.mckeown@kirkland.com writes:

Mr. Bennett,

I write to follow up on our telephone conversation from Wednesday in which you indicated that you would get back to me by the end of the day. Will Mr. Perez and you agree to a phone call with us to discuss Mr. Perez's involvement with the Elusive mod menu? As I mentioned the other day, Mr. Perez's cooperation is a requirement to settle this matter amicably.

Regards,

Megan

**Megan McKeown**

_____

**KIRKLAND & ELLIS LLP**

601 Lexington Avenue, New York, NY 10022

**T** +1 212 909 3373

**F** +1 212 446 4900

_____

megan.mckeown@kirkland.com

**From:** McKeown, Megan L.
**Sent:** Friday, March 30, 2018 11:55 AM
**To:** 'Scottbblaw@aol.com' <Scottbblaw@aol.com>
**Cc:** Simmons, Joshua L. <Joshua.Simmons@kirkland.com>
**Subject:** Re: Letter from D. Cendali to S. Bennett

Mr. Bennett,

You have not responded to our letter regarding Jhonny Perez. We are preparing to file a lawsuit against him in the Southern District of New York. Please confirm you are representing Mr. Perez by Tuesday 4/3/18 or we will understand that he is not your client.

Regards,

Megan

**Megan McKeown**

––––––––––––––––––––––––––––––––––

**KIRKLAND & ELLIS LLP**

601 Lexington Avenue, New York, NY 10022

**T** +1 212 909 3373

**F** +1 212 446 4900

––––––––––––––––––––––––––––––––––

megan.mckeown@kirkland.com

**From:** McKeown, Megan L.
**Sent:** Thursday, March 15, 2018 3:06 PM
**To:** 'Scottbblaw@aol.com' <Scottbblaw@aol.com>
**Cc:** Cendali, Dale M. <dale.cendali@kirkland.com>; Simmons,

Joshua L. <Joshua.Simmons@kirkland.com>
**Subject:** Letter from D. Cendali to S. Bennett

Dear Mr. Bennett,

Please see the attached correspondence regarding Jhonny Perez.

Regards,

Megan

**Megan McKeown**

---

**KIRKLAND & ELLIS LLP**

601 Lexington Avenue, New York, NY 10022

**T** +1 212 909 3373

**F** +1 212 446 4900

---

megan.mckeown@kirkland.com

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this

communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT F

Dale M. Cendali
Joshua L. Simmons
Megan L. McKeown
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
megan.mckeown@kirkland.com

*Attorneys for Plaintiff Take-Two Interactive Software, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TAKE-TWO INTERACTIVE SOFTWARE, INC., | Case No. 1:18-cv-7658 |
| Plaintiff, | ECF Case |
| - against - | |
| JHONNY PEREZ, | |
| Defendant. | |

**COMPLAINT**

Plaintiff Take-Two Interactive Software, Inc. ("Take-Two"), by and through its attorneys, Kirkland & Ellis LLP, for its Complaint, hereby alleges against Defendant Jhonny Perez ("Perez") as follows:

**NATURE OF THE ACTION**

1. This action seeks to recover damages that Take-Two has suffered and to prevent the irreparable harm that threatens Take-Two as a result of Mr. Perez's willful infringement of Take-Two's valuable intellectual property rights in and to its world-famous video games and breach of Take-Two's End User License Agreement ("User Agreement"). Specifically, Mr.

Perez acting in concert with other individuals in Europe created, distributed, and maintained a computer program called "Elusive" that alters Take-Two's *Grand Theft Auto* video games (the "Infringing Program"). The Infringing Program is a cheating and "griefing" tool that allows users to perform unauthorized actions in Take-Two's *Grand Theft Auto V* ("GTAV") multiplayer feature *Grand Theft Auto Online*. These unauthorized actions can be used to benefit the person who installed the program or to the detriment of others playing in the same multiplayer session.

2.      Upon information and belief, in a deliberate attempt to profit from Take-Two's valuable intellectual property, Mr. Perez sells the Infringing Program to users who can then alter Take-Two's video games. These alterations are intended to and do allow users to cheat while playing Take-Two's games, both to (a) create benefits for themselves within the game that they have not purchased or earned, or (b) to alter the games of other players in the same gaming session without authorization. As a result, the Infringing Program disrupts the user experience that was designed by Take-Two resulting in further harm to Take-Two and its users.

3.      Mr. Perez is well aware that the Infringing Program is unauthorized and infringes Take-Two's rights. In fact, Take-Two contacted Mr. Perez prior to bringing this lawsuit in an attempt to settle the parties' dispute without requiring judicial intervention. Take-Two demanded that Mr. Perez cease his willful and infringing conduct and cooperate with Take-Two to consider how and whether settlement would be possible. Mr. Perez has stopped responding to Take-Two, leading to Take-Two's understanding, upon information and belief, that Mr. Perez will continue to infringe Take-Two's rights.

4.      In sum, Mr. Perez has knowingly, intentionally, and willfully infringed Take-Two's copyrights. Mr. Perez has profited by violating Take-Two's rights and User Agreement.

5.      Accordingly, due to Mr. Perez's blatant and willful infringement and refusal to cooperate with Take-Two, Take-Two has no choice but to file this lawsuit seeking injunctive relief and damages that it has suffered as a result of Mr. Perez's direct and contributory copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, as well as for his breach of Take-Two's User Agreement and his tortious interference with Take-Two's contracts with other GTAV players.

## PARTIES

6.      Plaintiff Take-Two Interactive Software, Inc. is a Delaware corporation having its principal place of business in the State of New York and is qualified to do business and is doing business in the State of New York and in this judicial district.

7.      Defendant Jhonny Perez is an individual who, upon information and belief, resides in the State of Florida.

## JURISDICTION AND VENUE

8.      This action arises under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, and New York state law.  This court has subject matter jurisdiction over the dispute for two, independent reasons.  *First*, this Court has federal question subject matter jurisdiction over Take-Two's copyright claim pursuant to 28 U.S.C. §§ 1331 and 1338.  This Court also has supplemental jurisdiction over Take-Two's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are substantially related to Take-Two's federal claims.  *Second*, as Take-Two and Mr. Perez are citizens of different states and the matter in controversy exceeds $75,000 exclusive of interests and costs, this Court also has diversity subject matter jurisdiction under 28 U.S.C. § 1332.

9.       This Court has personal jurisdiction over Mr. Perez and venue is proper in this District pursuant to N.Y. C.P.L.R. § 302(a)(3), as well as 28 U.S.C. §§ 1391 and 1400.  Take-

Two is located and is being harmed in this District. Mr. Perez reasonably should expect—and, upon information and belief, does expect—that his activities would have consequences in New York and this District.

10. Upon information and belief, Mr. Perez has derived substantial revenue from interstate or international commerce from his activities. In particular, Mr. Perez was paid through PayPal by the two individuals in Europe Mr. Perez worked in concert with to create, distribute, and maintain the Infringing Program, as well as paid by purchasers of the Infringing Program who, upon information and belief, reside in states other than the State of Florida and/or reside in foreign nations abroad.

11. Personal jurisdiction and venue also are proper because Mr. Perez was required to affirmatively accept the terms of Take-Two's User Agreement and the Terms & Conditions of Take-Two's Terms of Service ("Terms of Service") multiple times as a pre-requisite to accessing or playing GTAV. Both of those agreements contain a forum selection provision providing New York as the sole and exclusive venue for litigation. Those agreements also provide that the user consents to personal jurisdiction in New York. Thus, pursuant to those agreements, Mr. Perez consented to personal jurisdiction and venue in New York.

12. *First*, Mr. Perez was notified on the back of the GTAV box and/or in the digital purchase flow that "Software license terms [are] in game and at www.rockstargames.com; online account terms [are] at www.rockstargames.com/socialclub. Violation of EULA, Code of Conduct, or other policies may result in restriction or termination of access to game or online account," as shown below.

**INCLUDES GRAND THEFT AUTO ONLINE**

SINGLE USE SERIAL CODE REGISTRATION VIA INTERNET REQUIRED; REGISTRATION IS LIMITED TO ONE ROCKSTAR GAMES SOCIAL CLUB ACCOUNT (13+) PER SERIAL CODE; SERIAL CODE(S) ARE NON-TRANSFERABLE ONCE USED; SOCIAL CLUB ACCOUNTS ARE NON-TRANSFERABLE. Software license terms in game and at rockstargames.com/eula; online account terms at rockstargames.com/socialclub. Violation of EULA, Code of Conduct, or other policies may result in restriction or termination of access to game or online account. †Player data transfer subject to certain limits and requirements, see rockstargames.com/gtaonline/transfer for details. For customer & technical support visit rockstargames.com/support. Non-transferable access to special features such as exclusive/unlockable/downloadable/online content, services, or functions, such as multiplayer services or bonus content, may require single-use serial code, additional fee, and/or online account registration (13+). Access to special features may require internet connection, may not be available to all users, and may, upon 30 days notice, be terminated, modified, or offered under different terms. Unauthorized copying, reverse engineering, transmission, public performance, rental, pay for play, or circumvention of copy protection is strictly prohibited.

13.     ***Second***, Mr. Perez was notified of these policies and required to accept them during the software installation and account sign up process.  As shown below, the first screen that users, including Mr. Perez, see during the installation process puts users on notice that they must accept the User Agreement.



14.     The second screen users, including Mr. Perez, see during the installation process requires them to review and expressly accept the User Agreement.

- 5 -



15.     Take-Two's User Agreement contains a mandatory forum selection clause written in a standard font size and type in clear and unambiguous language.  In particular, the User Agreement includes, among other things, a paragraph that provides that the user agrees that "the sole and exclusive jurisdiction and venue for actions related to the subject matter hereof shall be the state and federal courts located in Licensor's principal corporate place of business (New York County, New York, U.S.A.).  You and licensor consent to the jurisdiction of such courts and agree that process may be served in the manner provided herein for giving of notices or otherwise as allowed by New York state or federal law."  Attached hereto as **Exhibit 1** is a true and correct copy of the User Agreement.

16.     ***Third***, users, including Mr. Perez, must sign up or sign in to the Rockstar Games Social Club before they can play GTAV on personal computer.  During the sign up process, users are informed their use of the game is subject to the User Agreement and Terms of Service, which they can review by clicking links, as shown below:



17.     When the user, including Mr. Perez, clicks "Continue," the user sees the Privacy Policy and must affirmatively click "I Accept" to continue, as shown below:



18.     The user, including Mr. Perez, then sees the Terms of Service policy and must affirmatively click "I Accept" to continue, as shown below:



19.     Take-Two's Terms of Service contains a mandatory forum selection clause written in a standard font size and type in clear and unambiguous language.  The Terms of Service includes, among other things, a paragraph that provides that the user "agree[s] to submit to the exclusive jurisdiction of the state and federal courts sitting in the Borough of Manhattan in the City of New York in the State of New York, and waive any jurisdictional, venue, or inconvenient forum objections to such courts."  Attached hereto as **Exhibit 2** is a true and correct copy of the Terms of Service.

20.     If the user is already registered as a Rockstar Games Social Club user and has signed in to a Social Club account during installation (rather than signing up for one), the user also will be required to accept the most recent policies within the game.  That screen provides links to Take-Two's User Agreement, Privacy Policy, and Terms of Service.  The user must affirmatively click a box confirming that the user has "read and accept[s] the [User Agreement], Privacy Policy, Terms [of Service], and Code of Conduct, including the data transfer provisions"

and must then click "Submit" before proceeding further. A screenshot of how this screen
appears to the user is shown below:



21. In addition to affirmatively accepting the terms of Take-Two's User Agreement
and Terms of Service numerous times before installing and playing GTAV, the user, including
Mr. Perez, also receives notice of these policies each time they start the game. GTAV reminds
the user when GTAV is loading, among other things, that his use is "subject to license in game
manual and at www.rockstargames.com/eula; online account terms at
www.rockstargames.com/socialclub." A screenshot of how this screen appears to the user,
including Mr. Perez, is shown below:



22.     A second game-loading screen reminds the user that "Unauthorized copying . . . or circumvention of copy protection is strictly prohibited."  A screenshot of how the second game-loading screen appears to the user, including Mr. Perez, is shown below:



## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

**I.    Take-Two and Its Award-Winning Video Games**

23.    Take-Two is the developer and publisher of best-selling video games, including the *Red Dead, Max Payne*, and *Grand Theft Auto* series.  Take-Two's games are widely recognized as some of the most popular and innovative games available on the market, and Take-Two has earned numerous awards both in the United States and abroad as a result.

24.    Take-Two has invested vast resources, including time, effort, talent, creativity, and money, to produce its video games.  Its games have large followings of fans throughout the world, making Take-Two one of the world's most popular video game publishers.

25.    Take-Two owns the copyrights for each of its video games, including GTAV.

26.    GTAV has been registered with the Copyright Office.

27.    Attached hereto as **Exhibit 3**, and incorporated herein by reference, is a true and correct copy of the Certificate of Registration issued by the Copyright Office for GTAV.  Exhibit 3 reflects the date upon which Take-Two applied for certificate of registration and, where applicable, the date on which the certificate was issued and the registration number assigned.

28.    GTAV is a video game that was the product of Take-Two's skills, resources, and creative energies.  It is of great value to Take-Two.

29.    Take-Two is, and at all times material herein was, the sole owner and proprietor of all right, title, and interest in and to the copyrights in GTAV.  The copyrights in GTAV are presently valid and subsisting and were valid and subsisting at all times affecting the matters complained of herein.

30.    To play Take-Two's video games, including GTAV, users must agree to the terms of Take-Two's User Agreement.  Among the terms provided in Take-Two's User Agreement, users are (1) "not to . . . prepare derivative works based on, or otherwise modify the Software, in

- 11 -

whole or in part," (2) "not to . . . restrict or inhibit any other user from using and enjoying any online features of the Software," and (3) "not to . . . cheat (including but not limited to utilizing exploits or glitches) or utilize any unauthorized robot, spider, or other program in connection with any online features of the Software," as indicated in Exhibit 1.

31. The permission that Take-Two grants users to play GTAV is expressly conditioned on these terms. As a result, if a user breaches these conditions, his use of Take-Two's GTAV video game is no longer authorized, including the reproduction of the GTAV software in the user's computer or console. In other words, continuing to play GTAV after breaching these provisions of Take-Two's User Agreement not only constitutes a breach of the User Agreement, but also copyright infringement.

## II. Mr. Perez and the Infringing Program

32. Mr. Perez—acting in concert with two individuals in Europe—created, distributed, and/or maintained the Infringing Program, which is a cheating and "griefing" tool for GTAV. The Infringing Program allows users to perform unauthorized actions, including without limitation affecting in-game content and abilities of themselves and other players. In other words, Mr. Perez's creation and use of the Infringing Program alters and creates derivative works based on GTAV, which are used to alter the game for the benefit of the user or to "grief" other players by altering their games without permission.

33. As a result, Mr. Perez breached Take-Two's User Agreement conditions. Moreover, he has infringed Take-Two's copyrights in two ways: first by continuing to use GTAV after breaching those conditions, and second by creating an unauthorized derivative work based on GTAV.

- 12 -

34.     Mr. Perez knows that he did not have Take-Two's permission to create, distribute, and/or maintain such a computer program.  Take-Two contacted Mr. Perez, demanding that he discontinue his participation in the Infringing Program and similar cheating tools and services.

35.     Upon learning that Mr. Perez hired a lawyer, counsel for Take-Two sent a letter to Mr. Perez's lawyer demanding that Mr. Perez cease his actions and cooperate with Take-Two to consider how and whether settlement would be possible.  Because Mr. Perez has stopped responding to Take-Two, Mr. Perez has not complied with Take-Two's demand.

36.     Despite Take-Two's repeated efforts to resolve this dispute without court intervention, because Mr. Perez has stopped responding, upon information and belief, Mr. Perez will continue using Take-Two's content in the manner described above.

**III.    The Harm to Take-Two**

37.     As discussed above, Take-Two produces video games for which it receives revenue from video game sales and the purchases within the game.

38.     Mr. Perez's willful infringement robs Take-Two of these revenues.  The Infringing Program (1) allows Mr. Perez to profit commercially without paying Take-Two anything, and (2) devalues and causes substantial harm to the value of GTAV.  Thus, Take-Two has been damaged by Mr. Perez's conduct in an amount to be determined according to proof, but at a minimum, $500,000.00.

39.     Moreover, upon information and belief, unless enjoined by this Court, Mr. Perez intends to continue to infringe upon Take-Two's copyrights and otherwise to profit from Take-Two's video games.

40.     Accordingly, Take-Two has suffered irreparable damages.  Take-Two has no adequate remedy at law to redress all of the injuries that Mr. Perez has caused and intends to

cause by his conduct. Take-Two will continue to suffer irreparable damage until Mr. Perez's actions alleged above are enjoined by this Court.

## CLAIMS FOR RELIEF

### COUNT I
### Direct Copyright Infringement (17 U.S.C. § 101 *et seq.*)

41.     Take-Two repeats and realleges each and every allegation above as if fully set forth herein.

42.     GTAV is an original, creative work and copyrightable subject matter under the laws of the United States.

43.     Take-Two is the owner of valid copyrights in GTAV, and the Register of Copyrights has issued a valid Certificate of Registration as indicated in Exhibit 3.

44.     Take-Two has complied in all respects with 17 U.S.C. §§ 101, *et seq.*, and has secured the exclusive rights and privileges in and to the copyrights in its video games and content.

45.     By his actions, alleged above, Mr. Perez has infringed and, upon information and belief, will continue to infringe Take-Two's copyrights in and relating to GTAV by, *inter alia*, using the Infringing Program to create derivative works using GTAV without any authorization or other permission from Take-Two, as well as continuing to use GTAV having violated the conditions on such use.

46.     Mr. Perez's infringement of Take-Two's copyrights has been deliberate, willful and in utter disregard of Take-Two's rights.

47.     Upon information and belief, as a direct and proximate result of its wrongful conduct, Mr. Perez has obtained benefits, including, but not limited to, payments from users to which Mr. Perez is not entitled.

48.     As a direct and proximate result of Mr. Perez's wrongful conduct, Take-Two has been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, Mr. Perez will cause further irreparable injury to Take-Two.

49.     Take-Two is entitled to injunctive relief enjoining Mr. Perez, and all persons acting in concert or participation with him, from engaging in any further infringement of Take-Two's copyrighted video games and content.

50.     Take-Two is further entitled to recover from Mr. Perez the damages, including attorney's fees and costs, it has sustained and will sustain, and any gains, profits and advantages obtained by Mr. Perez as a result of his acts of infringement as alleged above. At present, the amount of such damages, gains, profits and advantages cannot be fully ascertained by Take-Two, but is at a minimum $500,000.00 and will be established according to proof at trial. Take-Two also is entitled to recover statutory damages for Mr. Perez's willful infringement of its copyrights.

## <u>COUNT II</u>
### Contributory Copyright Infringement (17 U.S.C. § 101 *et seq.*)

51.     Take-Two repeats and realleges each and every allegation above as if fully set forth herein.

52.     GTAV is an original, creative work and copyrightable subject matter under the laws of the United States.

53.     Take-Two is the owner of valid copyrights in GTAV, and the Register of Copyrights has issued a valid Certificate of Registration as indicated in **Exhibit 3**.

54.     Take-Two has complied in all respects with 17 U.S.C. §§ 101, *et seq.*, and has secured the exclusive rights and privileges in and to the copyrights in its video games and content.

55.     By his actions, alleged above, Mr. Perez has provided copies, or portions thereof, of the Infringing Program to third-parties.

56.     Those third-parties, through their use of the Infringing Program, also infringe Take-Two's copyrights, *inter alia*, using the Infringing Program to create derivative works of GTAV without any authorization or other permission from Take-Two, as well as continuing to use GTAV after violating the conditions on such use.

57.     Mr. Perez had knowledge of the infringement of these third-parties and, in fact, intentionally encouraged and induced such use.  Moreover, Mr. Perez materially contributed to the direct infringement by working in concert with others to create, distribute, and/or maintain the Infringing Program necessary for the infringement to occur.

58.     Mr. Perez also had knowledge of and materially contributed to the infringements of other individuals engaged in creating, distributing, and/or maintaining the Infringing Program.

59.     Mr. Perez's contributory infringement of Take-Two's copyrights has been deliberate, willful and in utter disregard of Take-Two's rights.

60.     Upon information and belief, as a direct and proximate result of his wrongful conduct, Mr. Perez has obtained benefits, including, but not limited to, payments from users to which Mr. Perez is not entitled.

61.     As a direct and proximate result of Mr. Perez's wrongful conduct, Take-Two has been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, Mr. Perez will cause further irreparable injury to Take-Two.

62.     Take-Two is entitled to injunctive relief enjoining Mr. Perez, and all persons acting in concert or participation with him, from contributing to any further infringement of Take-Two's copyrighted video games and content.

63.     Take-Two is further entitled to recover from Mr. Perez the damages, including attorney's fees and costs, it has sustained and will sustain, and any gains, profits and advantages obtained as a result of the acts of contributory infringement as alleged above.  At present, the amount of such damages, gains, profits and advantages cannot be fully ascertained by Take-Two, and will be established according to proof at trial.  Take-Two also is entitled to recover statutory damages for Mr. Perez's willful contributory infringement of its copyrights.

## COUNT III
**Breach of Contract**

64.     Take-Two repeats and realleges each and every allegation above as if fully set forth herein.

65.     Take-Two's User Agreement is a valid and enforceable contract.  Among other things, to play Take-Two's video games, users must affirmatively agree to abide by the User Agreement.

66.     Take-Two has fully performed or tendered all performance required under the User Agreement.

67.     Mr. Perez has breached his obligations under the User Agreement by (1) altering GTAV and creating derivative works based on it; (2) restricting and inhibiting others from using and enjoying GTAV; and/or (3) cheating and using unauthorized programs in connection with GTAV's online features.

68.     Take-Two is entitled to recover compensatory and consequential damages resulting from Mr. Perez's breach of the User Agreement.

## Count IV
**Tortious Interference with Contract**

69.     Take-Two repeats and realleges each and every allegation above as if fully set forth herein.

70.     As discussed above, Take-Two's users must affirmatively assent to Take-Two's User Agreement before playing GTAV.  That agreement contains specific provisions that prohibit, among other things, altering GTAV and cheating.

71.     Take-Two fulfilled all of its obligations pursuant to the User Agreement.

72.     As a GTAV user, Mr. Perez is aware of the User Agreement and its obligations on those that play GTAV.

73.     Despite agreeing to the User Agreement, Mr. Perez has induced, and upon information and belief will continue to induce, other GTAV players to breach their contractual responsibilities by using the Infringing Program for purposes expressly prohibited by the User Agreement.

74.     Mr. Perez's actions in inducing these breaches of contract are intentional, illegal, and have been engaged in for the specific purpose of inducing the GTAV players using the Infringing Program to breach their agreements with Take-Two.

75.     As a proximate result of Mr. Perez's tortious interference with contract, Take-Two has been damaged, and Mr. Perez has been unjustly enriched, in an amount to be determined at trial.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Take-Two respectfully requests judgment against Mr. Perez as follows:

A.     Find that Mr. Perez has infringed Take-Two's copyrights in GTAV directly and contributorily;

B.     Find a substantial likelihood that Mr. Perez will continue to infringe Take-Two's intellectual property unless enjoined from doing so;

C.     Find that Mr. Perez has breached the User Agreement;

D.      Find that Mr. Perez has tortiously interfered with Take-Two's contracts with its other GTAV players;

E.      Issue a preliminary and permanent injunction enjoining Mr. Perez and all persons, firms and corporations acting in concert with him, from directly or indirectly infringing Take-Two's copyrights, including, but not limited to, (a) creating derivative works based upon any portion of Take-Two's video games, including GTAV; (b) producing or distributing any computer programs that alter Take-Two's games, including without limitation the Infringing Program; and (c) from participating or assisting in any such activity;

F.      Order Mr. Perez to render a full and complete accounting to Take-Two for Mr. Perez's profits, gains, advantages or the value of the business opportunities received from the foregoing acts of infringement and breach;

G.      Enter judgment for Take-Two against Mr. Perez for all damages suffered by Take-Two and for any profits or gain by Mr. Perez attributable to infringement of Take-Two's intellectual property, breach of the User Agreement, and tortious interference with contract in amounts to be determined at trial;

H.      Enter judgment for Take-Two against Mr. Perez for statutory damages based upon Mr. Perez's willful acts of infringement pursuant to the Copyright Act, 17 U.S.C. § 101 *et seq.*;

I.      Award Take-Two costs and disbursement of this action, including reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505;

J.      Award Take-Two pre-judgment and post-judgment interest, to the fullest extent available, on the foregoing; and

K.      Grant such other, further and different relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff Take-Two demands a trial by jury on all issues so triable in this action.


Dated:  New York, New York              KIRKLAND & ELLIS LLP
        August 22, 2018


                                            */s/ Dale M. Cendali*
                                        _____
                                        Dale M. Cendali
                                        Joshua L. Simmons
                                        Megan L. McKeown
                                        KIRKLAND & ELLIS LLP
                                        601 Lexington Avenue
                                        New York, New York 10022
                                        Telephone: (212) 446-4800
                                        Facsimile: (212) 446-4900
                                        dale.cendali@kirkland.com
                                        joshua.simmons@kirkland.com
                                        megan.mckeown@kirkland.com

                                        Attorneys for Plaintiff
                                        Take-Two Interactive Software, Inc.

# EXHIBIT 1



# ROCKSTAR GAMES

HOME    GAMES    VIDEOS    NEWSWIRE    SOCIAL CLUB    DOWNLOADS    WAREHOUSE    SUPPORT   🔍

SIGN IN OR
JOIN SOCIAL CLUB

ROCKSTAR GAMES          KILLING DREAMS MURDERING HOPE FIGHTING THE RIGHTEOUS BULLYING THE WEAK         EST MCMXCVIII

# ROCKSTAR GAMES END USER LICENSE AGREEMENT

REVISED: JANUARY 22, 2018

## — LIMITED SOFTWARE WARRANTY AND LICENSE AGREEMENT —

This limited software warranty and license agreement (this "Agreement") may be periodically updated and the current version will be posted at www.rockstargames.com/eula (the "Website"). Your continued use of the Software after a revised Agreement has been posted constitutes your acceptance of its terms.

THE "SOFTWARE" INCLUDES ALL SOFTWARE INCLUDED WITH THIS AGREEMENT, THE ACCOMPANYING MANUAL(S), PACKAGING, AND OTHER WRITTEN FILES, ELECTRONIC OR ON-LINE MATERIALS OR DOCUMENTATION, AND ANY AND ALL COPIES OF SUCH SOFTWARE AND ITS MATERIALS.

THE SOFTWARE IS LICENSED, NOT SOLD. BY OPENING, DOWNLOADING, INSTALLING, COPYING, OR OTHERWISE USING THE SOFTWARE, AND ANY OTHER MATERIALS INCLUDED WITH THE SOFTWARE, YOU AGREE TO BE BOUND BY THE TERMS OF THIS AGREEMENT WITH THE UNITED STATES COMPANY ROCKSTAR GAMES, INC. ("LICENSOR," "WE," "US, OR "OUR"), AS WELL AS THE PRIVACY POLICY LOCATED AT www.rockstargames.com/privacy AND TERMS

## — LICENSE —

Subject to this Agreement and its terms and conditions, Licensor hereby grants you a nonexclusive, non-transferable, limited, and revocable right and license to use one copy of the Software for your personal, non-commercial use for gameplay on a single Game Platform (e.g. computer, mobile device, or gaming console) as intended by Licensor unless otherwise expressly specified in the Software documentation. Your license rights are subject to your compliance with this Agreement. The term of your license under this Agreement shall commence on the date that you install or otherwise use the Software and ends on the earlier date of either your disposal of the Software or the termination of this Agreement (see below).

The Software is licensed, not sold, to you, and you hereby acknowledge that no title or ownership in the Software is being transferred or assigned and this Agreement should not be construed as a sale of any rights in the Software. Licensor retains all right, title, and interest to the Software, including, but not limited to, all copyrights, trademarks, trade secrets, trade names, proprietary rights, patents, titles, computer codes, audiovisual effects, themes, characters, character names, stories, dialog, settings, artwork, sounds effects, musical works, and moral rights. The Software is protected by U.S. copyright and trademark law and applicable laws and treaties throughout the world. The Software may not be copied, reproduced, altered, modified, or distributed in any manner or medium, in whole or in part, without prior written consent from Licensor. Any persons copying, reproducing, or distributing all or any portion of the Software in any manner or medium, will be willfully violating the copyright laws and may be subject to civil and criminal penalties in the U.S. or their local country. Be advised that U.S. copyright violations are subject to statutory penalties of up to $150,000 per violation. The Software contains certain licensed materials and Licensor's licensors may also protect their rights in the event of any violation of this Agreement. All rights not expressly granted under this Agreement are reserved by Licensor and, as applicable, its licensors.

## — LICENSE CONDITIONS —

You agree not to, and not to provide guidance or instruction to any other individual or entity on how to:

    a. commercially exploit the Software;
    b. distribute, lease, license, sell, rent, convert into convertible currency, or otherwise transfer or assign the Software, or any copies of the Software, including but not limited to Virtual Goods or Virtual Currency (defined below) without the express prior written consent of Licensor or as expressly set forth in this Agreement;
    c. make a copy of the Software or any part thereof (other than as set forth herein);
    d. make a copy of the Software available on a network for use or download by multiple users;
    e. except as otherwise specifically provided by the Software or this Agreement, use or install the Software (or permit others to do same) on a network, for on-line use, or on more than one computer or gaming unit at the same time;
    f. copy the Software onto a hard drive or other storage device in order to bypass the requirement to run the Software from the included CD-ROM or DVD-ROM (this prohibition does not apply to copies in whole or in part that may be made by the Software itself during installation in order to run more efficiently);
    g. use or copy the Software at a computer gaming center or any other location-based site; provided, that Licensor may offer you a separate license agreement to make the Software available for commercial use;
    h. reverse engineer, decompile, disassemble, display, perform, prepare derivative works based on, or otherwise modify the Software, in whole or in part;
    i. remove or modify any proprietary notices, marks, or labels contained on or within the Software;
    j. restrict or inhibit any other user from using and enjoying any online features of the Software;
    k. cheat (including but not limited to utilizing exploits or glitches) or utilize any unauthorized robot, spider, or other

program in connection with any online features of the Software;

l. violate any terms, policies, licenses, or code of conduct for any online features of the Software; or

m. transport, export, or re-export (directly or indirectly) into any country forbidden to receive the Software by any U.S. export laws or regulations or U.S. economic sanctions or otherwise violate any laws or regulations, or the laws of the country in which the Software was obtained, which may be amended from time to time.

ACCESS TO SPECIAL FEATURES AND/OR SERVICES, INCLUDING DIGITAL COPIES: Software download, redemption of a unique serial code, registration of the Software, membership in a third-party service and/or membership in a Licensor service (including acceptance of related terms and policies) may be required to activate the Software, access digital copies of the Software, or access certain un-lockable, downloadable, online, or other special content, services, and/or functions (collectively, "Special Features"). Access to Special Features is limited to a single User Account (as defined below) per serial code and access to Special Features cannot be transferred, sold, leased, licensed, rented, converted into convertible virtual currency, or re-registered by another user unless otherwise expressly specified. The provisions of this paragraph supersede any other term in this Agreement.

TRANSFER OF PRE-RECORDED COPY LICENSE: You may transfer the entire physical copy of pre-recorded Software and accompanying documentation on a permanent basis to another person as long as you retain no copies (including archival or backup copies) of the Software, accompanying documentation, or any portion or component of the Software or accompanying documentation, and the recipient agrees to the terms of this Agreement. Transfer of the pre-recorded copy license may require you to take specific steps, as set forth in the Software documentation. You may not transfer, sell, lease, license, rent, or convert into convertible virtual currency any Virtual Currency or Virtual Goods except as expressly set forth in this Agreement or with Licensor's prior written consent. Special Features, including content otherwise unavailable without a single-use serial code, are not transferrable to another person under any circumstances, and Special Features may cease functioning if the original installation copy of the Software is deleted or the pre-recorded copy is unavailable to the user. The Software is intended for private use only. NOTWITHSTANDING THE FOREGOING, YOU MAY NOT TRANSFER ANY PRE-RELEASE COPIES OF THE SOFTWARE.

TECHNICAL PROTECTIONS: The Software may include measures to control access to the Software, control access to certain features or content, prevent unauthorized copies, or otherwise attempt to prevent anyone from exceeding the limited rights and licenses granted under this Agreement. Such measures may include incorporating license management, product activation, and other security technology in the Software and monitoring usage, including, but not limited to, time, date, access, or other controls, counters, serial numbers, and/or other security devices designed to prevent the unauthorized access, use, and copying of the Software, or any portions or components thereof, including any violations of this Agreement. Licensor reserves the right to monitor use of the Software at any time. You may not interfere with such access control measures or attempt to disable or circumvent such security features, and if you do, the Software may not function properly. If the Software permits access to Special Features, only one copy of the Software may access those Special Features at one time. Additional terms and registration may be required to access online services and to download Software updates and patches. Only Software subject to a valid license can be used to access online services, including downloading updates and patches. Licensor may limit, suspend, or terminate the license granted hereunder and access to the Software, including, but not limited to, any related services and products, on thirty days' notice, or immediately for any reason beyond the Company's reasonable control or if you breach any term of an agreement or policy governing the Software, including this Agreement, Licensor's Privacy Policy and/or Licensor's Terms of Service.

USER CREATED CONTENT: The Software may allow you to create content, including, but not limited to, a gameplay map, scenario, screenshot, car design, character, item, or video of your game play. In exchange for use of the Software, and to the extent that your contributions through use of the Software give rise to any copyright interest, you hereby grant Licensor an exclusive, perpetual, irrevocable, fully transferable, and sub-licensable worldwide right and license to use your contributions in any way and for any purpose in connection with the Software and related goods and services, including, but not limited to, the rights to reproduce, copy, adapt, modify, perform, display, publish, broadcast, transmit, or otherwise communicate to the public by any means whether now known or unknown and distribute your contributions without any further notice or compensation to you of any kind for the whole duration of protection granted to intellectual property rights by applicable laws and international conventions. You hereby waive and agree never to assert any moral rights of paternity, publication, reputation, or attribution with respect to Licensor's and other players' use and enjoyment of such assets in connection with the Software and related goods and services under applicable law. This license grant to Licensor, and terms above regarding any applicable moral rights, will survive any termination of this Agreement.

INTERNET CONNECTION: The Software may require an internet connection to access internet-based features, authenticate the Software, or perform other functions.

USER ACCOUNTS: In order to use the Software or a software feature, or for certain features of the Software to operate properly, you may be required to have and maintain a valid and active user account with an online service, such as a third-party gaming platform or social network account ("Third-Party Account"), or an account with Licensor or a Licensor affiliate, as set forth in the Software documentation. If you do not maintain such accounts, then certain features of the Software may not operate or may cease to function properly, either in whole or in part. The Software may also require you to create a Software-specific user account with Licensor or a Licensor affiliate ("User Account") in order to access the Software and its functionality and features. Your User Account log-in may be associated with a Third-Party Account. You are responsible for all use and the security of your User Accounts and any Third-Party Accounts that you use to access and use the Software.

---

## VIRTUAL CURRENCY AND VIRTUAL GOODS

If the Software allows you to purchase and/or earn through play a license to use Virtual Currency and Virtual Goods, the following additional terms and conditions apply.

VIRTUAL CURRENCY & VIRTUAL GOODS : The Software may enable users to (i) use fictional virtual currency as a medium of exchange exclusively within the Software ("Virtual Currency" or "VC") and (ii) gain access to (and certain limited rights to use) virtual goods within the Software ("Virtual Goods" or "VG"). Regardless of the terminology used, VC and VG represent a limited license right governed by this Agreement. Subject to the terms of and compliance with this Agreement, Licensor hereby grants you the nonexclusive, non-transferable, non-sublicensable, limited right and license to use VC and VG obtained by you for your personal, non-commercial gameplay exclusively within the Software. Except as otherwise

prohibited by applicable law, VC and VG obtained by you are licensed to you, and you hereby acknowledge that no title or ownership in or to VC and VG is being transferred or assigned hereunder. This Agreement should not be construed as a sale of any rights in VC and VG.

VC and VG do not have an equivalent value in real currency and do not act as a substitute for real currency. You acknowledge and agree that Licensor may revise or take action that impacts the perceived value of or purchase price for any VC and/or VG at any time except as prohibited by applicable law. VC and VG do not incur fees for non-use; provided, however, that the license granted hereunder to VC and VG will terminate in accordance with the terms and conditions of this Agreement and the Software documentation, when Licensor ceases providing the Software, or this Agreement is otherwise terminated. Licensor, in its sole discretion, reserves the right to charge fees for the right to access or use VC or VG and/or may distribute VC or VG with or without charge.

EARNING & PURCHASING VIRTUAL CURRENCY & VIRTUAL GOODS: You may have the ability to purchase VC or to earn VC from Licensor for the completion of certain activities or accomplishments in the Software. For example, Licensor may provide VC or VG upon the completion of an in-game activity, such as attaining a new level, completing a task, or creating user content. Once obtained, VC and/or VG will be credited to your User Account. You may purchase VC and VG only within the Software, or through a platform, participating third-party online store, application store, or other store authorized by Licensor (all referred to herein as "Software Store"). Purchase and use of in-game items or currency through a Software Store are subject to the Software Store's governing documents, including but not limited to, the Terms of Service and User Agreement. This online service has been sublicensed to you by the Software Store. Licensor may offer discounts or promotions on the purchase of VC, and such discounts and promotions may be modified or discontinued by Licensor at any time without notice to you. Upon completing an authorized purchase of VC from an Application Store, the amount of purchased VC will be credited to your User Account. The Licensor shall establish a maximum amount you may spend to purchase VC per transaction and/or per day, which may vary depending on the associated Software. Licensor, in its sole discretion, may impose additional limits on the amount of VC you may purchase or use, how you may use VC, and the maximum balance of VC that may be credited to your User Account. You are solely responsible for all VC purchases made through your User Account regardless of whether or not authorized by you.

BALANCE CALCULATION: You can access and view your available VC and VG in your User Account when logged into your User Account. Licensor reserves the right, in its sole discretion, to make all calculations regarding the available VC and VG in your User Account. Licensor further reserves the right, in its sole discretion, to determine the amount of and manner in which VC is credited and debited from your User Account in connection with your purchase of VG or for other purposes. While Licensor strives to make all such calculations on a consistent and reasonable basis, you hereby acknowledge and agree that Licensor's determination of the available VC and VG in your User Account is final, unless you can provide documentation to Licensor that such calculation was or is intentionally incorrect.

USING VIRTUAL CURRENCY AND VIRTUAL GOODS: All purchased in-game Virtual Currency and/or Virtual Goods may be consumed or lost by players in the course of gameplay according to the game's rules applicable to currency and goods, which may vary depending on the associated Software. VC and VG may only be used within the Software, and Licensor, in its sole discretion, may limit use of VC and/or VG to a single game. The authorized uses and purposes of VC and VG may change at any time. Your available VC and/or VG as shown in your User Account will be reduced each time you use VC and/or VG within the Software. The use of any VC and/or VG in your User Account constitutes a demand against and withdrawal from your available VC and/or VG in your User Account. You must have sufficient available VC and/or VG in your User Account in order to complete a transaction within the Software. VC and/or VG in your User Account may be reduced without notice upon the occurrence of certain events related to your use of the Software: For example, you may lose VC or VG upon the loss of a game or the death of your character. You are responsible for all uses of VC and/or VG made through your User Account, regardless of whether or not authorized by you. You must notify Licensor immediately upon discovering the unauthorized use of any VC and/or VG made through your User Account by submitting a support request at www.take2games.com/support.

NON-REDEEMABLE: VC and VG may only be redeemed for in-game goods and services. You may not sell, lease, license, or rent VC or VG, convert them into convertible VC. VC and VG may only be redeemed for in-game goods or services and are not redeemable for any sum of money or monetary value or other goods from Licensor or any other person or entity at any time, except as expressly provided herein or otherwise required by applicable law. VC and VG have no cash value, and neither Licensor nor any other person or entity has any obligation to exchange your VC or VG for anything of value, including, but not limited to, real currency.

NO REFUND: All purchases of VC and VG are final and under no circumstances will such purchases be refundable, transferable, or exchangeable. Except as prohibited by applicable law, Licensor has the absolute right to manage, regulate, control, modify, suspend, and/or eliminate such VC and/or VG as it sees fit in its sole discretion, and Licensor shall have no liability to you or anyone else for the exercise of such rights.

NO TRANSFERS: Any transferring, trading, selling, or exchanging of any VC or VG to anyone, other than in game play using the Software as expressly authorized by Licensor ("Unauthorized Transactions"), including, but not limited to, among other users of the Software, is not sanctioned by Licensor and is strictly forbidden. Licensor reserves the right, in its sole discretion, to terminate, suspend, or modify your User Account and your VC and VG and terminate this Agreement if you engage in, assist in, or request any Unauthorized Transactions. All users who participate in such activities do so at their own risk and hereby agree to be responsible and liable to Licensor, its partners, licensors, affiliates, contractors, officers, directors, employees, and agents for all damages, losses and expenses arising directly or indirectly from such actions. You acknowledge that Licensor may request that the applicable Application Store stop, suspend, terminate, discontinue, or reverse any Unauthorized Transaction, regardless of when such Unauthorized Transaction occurred (or has yet to occur) when it suspects or has evidence of fraud, violations of this Agreement, violations of any applicable law or regulation, or any intentional act designed to interfere or that otherwise has the effect of or may have the effect of intervening in any way with the operation of the Software. If we believe or have any reason to suspect that you have engaged in an Unauthorized Transaction, you further agree that Licensor may, in its sole discretion, restrict your access to your available VC and VG in your User Account or terminate or suspend your User Account and your rights to any VC, VG, and other items associated with your User Account.

LOCATION: VC is only available to customers in certain locations. You may not purchase or use VC if you are not in an approved location.

---

## SOFTWARE STORE TERMS

This Agreement and the provision of the Software through any Software Store (including the purchase of VC or VG) is subject to the additional terms and conditions set forth on or in or required by the applicable Software Store and all such applicable terms and conditions are incorporated herein by this reference. Licensor is not responsible or liable to you for any credit card or bank-related charges or other charges or fees related to your purchase transactions within the Software or through a Software Store. All such transactions are administered by the Software Store, not Licensor. Licensor expressly disclaims any liability for any such transactions, and you agree that your sole remedy regarding all transactions is from or through such Software Store.

This Agreement is solely between you and Licensor, and not with any Software Store. You acknowledge that the Software Store has no obligation to furnish any maintenance or support services to you in connection with the Software. Except for the foregoing, to the maximum extent permitted by applicable law, the Software Store will have no other warranty obligation whatsoever with respect to the Software. Any claim in connection with the Software related to product liability, a failure to conform to applicable legal or regulatory requirements, claims under consumer protection or similar legislation or intellectual property infringement are governed by this Agreement, and the Software Store is not responsible for such claims. You must comply with the Software Store Terms of Service and any other Software Store applicable rules or policies. The license to the Software is a non-transferable license to use the Software only on an applicable device that you own or control. You represent that you are not located in any U.S.-embargoed countries or other geographical areas or on the U.S. Treasury Department's list of Specially Designated Nationals or the U.S. Department of Commerce Denied Person's list or Entity List. The Software Store is a third-party beneficiary to this Agreement and may enforce this Agreement against you.

---

## INFORMATION COLLECTION & USAGE

By installing and using the Software, you consent to the information collection and usage terms set forth in this section and Licensor's Privacy Policy, including (where applicable) (i) the transfer of any personal information and other information to Licensor, its affiliates, vendors, and business partners, and to certain other third parties, such as governmental authorities, in the U.S. and other countries located outside Europe or your home country, including countries that may have lower standards of privacy protection; (ii) the public display of your data, such as identification of your user-created content or displaying your scores, ranking, achievements, and other gameplay data on websites and other platforms; (iii) the sharing of your gameplay data with hardware manufacturers, platform hosts, and Licensor's marketing partners; and (iv) other uses and disclosures of your personal information or other information as specified in the above-referenced Privacy Policy, as amended from time to time. If you do not want your information used or shared in this manner, then you should not use the Software.

For the purposes all data privacy issues, including the collection, use, disclosure, and transfer of your personal information and other information, the Privacy Policy located at www.take2games.com/privacy, as amended from time to time, takes precedence over any other statement in this Agreement.

---

## WARRANTY

LIMITED WARRANTY: Licensor warrants to you (if you are the initial and original purchaser of the Software but not if you obtain the pre-recorded Software and accompanying documentation as a transfer from the original purchaser) that the original storage medium holding the Software is free from defects in material and workmanship under normal use and service for 90 days from the date of purchase. Licensor warrants to you that the Software is compatible with a personal computer meeting the minimum system requirements listed in the Software documentation or that it has been certified by the gaming unit producer as compatible with the gaming unit for which it has been published. However, due to variations in hardware, software, internet connections, and individual usage, Licensor does not warrant the performance of the Software on your specific computer or gaming unit. Licensor does not warrant against interference with your enjoyment of the Software; that the Software will meet your requirements; that operation of the Software will be uninterrupted or error-free; or that the Software will be compatible with third-party software or hardware or that any errors in the Software will be corrected. No oral or written statement or advice provided by Licensor or any authorized representative shall create a warranty. Because some jurisdictions do not allow the exclusion of or limitations on implied warranties or the limitations on the applicable statutory rights of a consumer, some or all of the above exclusions and limitations may not apply to you.

If for any reason you find a defect in the storage medium or Software during the warranty period, Licensor agrees to replace, free of charge, any Software discovered to be defective within the warranty period as long as the Software is currently being manufactured by Licensor. If the Software is no longer available, Licensor retains the right to substitute a similar piece of Software of equal or greater value. This warranty is limited to the storage medium and the Software as originally provided by Licensor and is not applicable to normal wear and tear. This warranty shall not be applicable and shall be void if the defect has arisen through abuse, mistreatment, or neglect. Any implied warranties prescribed by statute are expressly limited to the 90-day period described above.

Except as set forth above, and provided that if you are a resident of an EU member state Licensor warrants that the Software will be fit for purpose and of satisfactory quality, this warranty is in lieu of all other warranties, whether oral or written, express or implied, including any other warranty of merchantability, fitness for a particular purpose, or non-infringement, and no other representations or warranties of any kind shall be binding on Licensor.

When returning the Software subject to the limited warranty above, please send the original Software only to Licensor address specified below and include: your name and return address; a photocopy of your dated sales receipt; and a brief note describing the defect and the system on which you are running the Software.

## YOUR RESPONSIBILITY TO LICENSOR

To the fullest extent of applicable law, you agree to be responsible and liable to Licensor, its partners, licensors, affiliates, contractors, officers, directors, employees, and agents in respect of all damages, losses, and expenses arising directly or indirectly from your acts and omissions to act in using the Software pursuant to the terms of the Agreement.

TO THE FULLEST EXTENT OF APPLICABLE LAW, LICENSOR SHALL NOT BE LIABLE FOR SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES RESULTING FROM POSSESSION, USE, OR MALFUNCTION OF THE SOFTWARE, INCLUDING, BUT NOT LIMITED TO, DAMAGES TO PROPERTY, LOSS OF GOODWILL, COMPUTER FAILURE OR MALFUNCTION, AND, TO THE EXTENT PERMITTED BY LAW, DAMAGES FOR PERSONAL INJURIES, PROPERTY DAMAGE, OR LOST PROFITS OR PUNITIVE DAMAGES FROM ANY CAUSES OF ACTION ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE SOFTWARE, WHETHER ARISING IN TORT (INCLUDING NEGLIGENCE), CONTRACT, STRICT LIABILITY, OR OTHERWISE, WHETHER OR NOT LICENSOR HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. TO THE FULLEST EXTENT OF APPLICABLE LAW, LICENSOR'S LIABILITY FOR ALL DAMAGES SHALL NOT (EXCEPT AS REQUIRED BY APPLICABLE LAW) EXCEED THE ACTUAL PRICE PAID BY YOU FOR USE OF THE SOFTWARE.

IF YOU ARE A RESIDENT OF AN EU MEMBER STATE, NOTWITHSTANDING ANYTHING TO THE CONTRARY SET OUT ABOVE, LICENSOR IS RESPONSIBLE FOR LOSS OR DAMAGE YOU SUFFER THAT IS A REASONABLY FORESEEABLE RESULT OF LICENSOR'S BREACH OF THIS AGREEMENT OR ITS NEGLIGENCE, BUT IT IS NOT RESPONSIBLE FOR LOSS OR DAMAGE THAT IS NOT FORESEEABLE.

WE DO NOT AND CANNOT CONTROL THE FLOW OF DATA TO OR FROM OUR NETWORK AND OTHER PORTIONS OF THE INTERNET, WIRELESS NETWORKS, OR OTHER THIRD-PARTY NETWORKS. SUCH FLOW DEPENDS IN LARGE PART ON THE PERFORMANCE OF THE INTERNET AND WIRELESS SERVICES PROVIDED OR CONTROLLED BY THIRD PARTIES. AT TIMES, ACTIONS OR INACTIONS OF SUCH THIRD PARTIES MAY IMPAIR OR DISRUPT YOUR CONNECTIONS TO THE INTERNET, WIRELESS SERVICES, OR PORTIONS THEREOF. WE CANNOT GUARANTEE THAT SUCH EVENTS WILL NOT OCCUR. TO THE FULLEST EXTENT OF APPLICABLE LAW, WE DISCLAIM ANY AND ALL LIABILITY RESULTING FROM OR RELATED TO THIRD-PARTY ACTIONS OR INACTIONS THAT IMPAIR OR DISRUPT YOUR CONNECTIONS TO THE INTERNET, WIRELESS SERVICES, OR PORTIONS THEREOF OR THE USE OF THE SOFTWARE AND RELATED SERVICES AND PRODUCTS.

## TERMINATION

This Agreement is effective until terminated by you or by the Licensor. This Agreement automatically terminates when Licensor ceases to operate the Software servers (for games exclusively operated online), if Licensor determines or believes your use of the Software involves or may involve fraud or money laundering or any other illicit activity, or upon your failure to comply with terms and conditions of this Agreement, including, but not limited to, the License Conditions above. You may terminate this Agreement at any time by (i) requesting Licensor to terminate and delete your User Account that is used to access or use the Software using the method set forth in the Terms of Service or (ii) destroying and/or deleting any and all copies of all Software in your possession, custody, or control. Deleting the Software from your Game Platform will not delete the information associated with your User Account, including any VC and VG associated with your User Account. If you reinstall the Software using the same User Account, then you may still have access to your prior User Account information, including any VC and VG associated with your User Account. However except as otherwise prohibited by applicable law, if your User Account is deleted upon termination of this Agreement for any reason, all VC and/or VG associated with your User Account will also be deleted, and you will no longer be available for use the Software or any VC or VG associated with your User Account. If this Agreement terminates due to your violation of this Agreement, Licensor may prohibit you from re-registering or re-accessing the Software. Upon any termination of this Agreement, you must destroy or return the physical copy of Software to Licensor, as well as permanently destroy all copies of the Software, accompanying documentation, associated materials, and all of its component parts in your possession or control, including from any client server, computer, gaming unit, or mobile device on which it has been installed. Upon termination of this Agreement, your rights to use the Software, including any VC or VG associated with your User Account, will terminate immediately, and you must cease all use of the Software. The termination of this Agreement will not affect our rights or your obligations arising under this Agreement.

## U.S. GOVERNMENT RESTRICTED RIGHTS

The Software and documentation have been developed entirely at private expense and are provided as "Commercial Computer Software" or "restricted computer software." Use, duplication, or disclosure by the U.S. Government or a U.S. Government subcontractor is subject to the restrictions set forth in subparagraph (c)(1)(ii) of the Rights in Technical Data and Computer Software clauses in DFARS 252.227-7013 or as set forth in subparagraph (c)(1) and (2) of the Commercial Computer Software Restricted Rights clauses at FAR 52.227-19, as applicable. The Contractor/Manufacturer is Licensor at the location listed below.

## EQUITABLE REMEDIES

You hereby agree that if the terms of this Agreement are not specifically enforced, Licensor will be irreparably damaged, and therefore you agree that Licensor shall be entitled, without bond, other security, or proof of damages, to appropriate equitable remedies with respect any of this Agreement, including temporary and permanent injunctive relief, in addition to any other available remedies.

## TAXES AND EXPENSES

You shall be responsible and liable to Licensor and any and all of its affiliates, officers, directors, and employees for all taxes, duties, and levies of any kind imposed by any governmental entity with respect to the transactions contemplated under this Agreement, including interest and penalties thereon (exclusive of taxes on Licensor's net income), irrespective of whether included in any invoice sent to you at any time by Licensor. You shall provide copies of any and all exemption certificates to Licensor if you are entitled to any exemption. All expenses and costs incurred by you in connection with your activities hereunder, if any, are your sole responsibility. You are not entitled to reimbursement from Licensor for any expenses, and will hold Licensor harmless therefrom.

## TERMS OF SERVICE

All access to and use of the Software is subject to this Agreement, the applicable Software documentation, Licensor's Terms of Service, and Licensor's Privacy Policy, and all terms and conditions of the Terms of Service are hereby incorporated into this Agreement by this reference. These agreements represent the complete agreement between you and Licensor relating to use of the Software and related services and products and supersede and replace any prior agreements between you and Licensor, whether written or oral. To the extent there is a conflict between this Agreement and the Terms of Service, this Agreement shall control.

## MISCELLANEOUS

If any provision of this Agreement is held to be unenforceable for any reason, such provision shall be reformed only to the extent necessary to make it enforceable and the remaining provisions of this Agreement shall not be affected.

## GOVERNING LAW

This Agreement shall be construed (without regard to conflicts or choice of law principles) under the laws of the State of New York, as such law is applied to agreements between New York residents entered into and to be performed within New York, except as governed by federal law. Unless expressly waived by Licensor in writing for the particular instance or contrary to local law, the sole and exclusive jurisdiction and venue for actions related to the subject matter hereof shall be the state and federal courts located in Licensor's principal corporate place of business (New York County, New York, U.S.A.). You and Licensor consent to the jurisdiction of such courts and agree that process may be served in the manner provided herein for giving of notices or otherwise as allowed by New York state or federal law. You and Licensor agree that the UN Convention on Contracts for the International Sale of Goods (Vienna, 1980) shall not apply to this Agreement or to any dispute or transaction arising out of this Agreement. However, if you are a resident of a European Union member state, you will benefit from any mandatory provisions of consumer protection law in the member state in which you are resident, and you can bring legal proceedings in relation to this Agreement in the courts of the member state in which you are resident.

IF YOU HAVE ANY QUESTIONS CONCERNING THIS AGREEMENT, YOU MAY CONTACT US IN WRITING AT: ROCKSTAR GAMES, INC., 622 BROADWAY, NEW YORK, NY 10012.

## APPLE APP STORE ADDITIONAL LICENSE TERMS

These license terms are in addition to all other terms of the Limited Software Warranty; License Agreement, and Information Use Disclosures. If any Software is provided to you through the Apple Inc. ("Apple") App Store, then the following additional terms and conditions in this paragraph apply. This Agreement is solely between you and Licensor, and not with Apple. You acknowledge that Apple has no obligation to furnish any maintenance or support services to you in connection with the Software. In the event of any failure of the Software to conform to the Limited Warranty in this Agreement, you may notify Apple, and Apple will refund the purchase price for the Software. Except for the foregoing, to the maximum extent permitted by applicable law, Apple will have no other warranty obligation whatsoever with respect to the Software. Any claim in connection with the Software related to product liability, a failure to conform to applicable legal or regulatory requirements, claims under consumer protection or similar legislation or intellectual property infringement are governed by this Agreement, and Apple is not responsible for such claims. You must comply with the App Store Terms of Service, including the Usage Rules. The license to the Software is a non-transferable license to use the Software only on an iPhone or iPod touch that you own or control. You represent that you are not located in any U.S. embargoed countries or on the U.S. Treasury Department's list of Specially Designated Nationals or the U.S. Department of Commerce Denied Person's list or Entity List. Apple is a third party beneficiary to this Agreement and may enforce this Agreement against you.

All other terms and conditions of the EULA apply to your use of the Software.

## BEATERATOR ADDITIONAL LICENSE TERMS

These license terms are in addition to all other terms of the Limited Software Warranty; License Agreement, and Information Use Disclosures.

Owners of this Software may use it to create their own tracks by arranging the Beaterator content and/or adding new content to create their own compositions ("User Tracks"). Rockstar Games grants owners a worldwide and royalty-free license to use, distribute and non-commercially exploit their User Tracks. This license is non-exclusive and all Software

owners are licensed to use the same Beaterator content to create their User Tracks. All User Created Content terms herein shall apply to User Tracks uploaded to any website or on-line service related to the Beaterator Software or shared with other players using in-game features. Additional terms and restrictions may apply to any supplemental music, sounds, loops, or "stems" purchased or downloaded for use with Beaterator.

The sounds and loops connected to the Software may NOT be reformatted, mixed, filtered, re-synthesized, or otherwise edited or altered for use in any kind of sampling product/package or software, regardless of whether such use is commercial or non-commercial. All users of this Software is prohibited from using it for any purpose that: (a) infringes the copyright, trademark, patent, trade secret, right of publicity or any other right of a third party, (b) is or may be libelous, defamatory or slanderous, or (c) any other use that is illegal in nature. All users of this Software hereby waive all claims against Rockstar Games, its parent, subsidiaries and affiliates, or any third-party based upon the Beaterator Content that may be in their User Track.

Except as indicated above, all other terms and conditions of the EULA apply to your use of Beaterator.



SUBSCRIBE    SUPPORT    CAREERS    MOUTHOFF    PRESS    CORPORATE    PRIVACY    LEGAL          ENGLISH

NEW YORK    LONDON    PARIS    BOGOTA

# EXHIBIT 2

# TERMS OF SERVICE

🇺🇸 🇧🇷 🇨🇿 🇩🇪 🇪🇸 🇫🇷 🇮🇹 🇯🇵 🇰🇷 🇲🇽 🇳🇱 🇵🇱 🇷🇺 🇸🇦 🇹🇼 🇨🇳

REVISED: JULY 27, 2018

## TERMS & CONDITIONS

This document constitutes an agreement (the "Agreement") between you and the United States company Rockstar Games, Inc., its parent Take-Two Interactive Software, Inc., subsidiaries, and affiliates, (the "Company," "we," "us," and "our") that governs the relationship between you and the Company with respect to your use of the Online Services. The Company provides access to the Online Services and any related services subject to your compliance with this Agreement. Thus, it is important that you carefully read and understand this Agreement.

The terms and conditions herein are in addition to and supplement the End User License Agreement at www.take2games.com/eula that governs the use of all software and services distributed by the Company.

Description Of Online Services
Trademark And Copyright Information
Submissions
Code Of Conduct
Limited License By The Company
License To The Company
Making Purchases
Ringtones, Wallpapers, And Other Mobile Device Services & Products
Virtual Currency And Virtual Goods
Warranty Disclaimer
Void Where Prohibited
Your responsibility to the Company
Litigation Issues
Termination
Miscellaneous
Designated Agent Under the Digital Millenium Copyright Act
Repeat Infringer Policy

## DESCRIPTION OF ONLINE SERVICES

Subject to full compliance with this Agreement, the Company may offer to provide certain products, services, and websites accessed through internet-capable hardware platforms including gaming consoles, personal computers, mobile computers, or mobile devices, or in-game applications or software platforms including third-party hosts (collectively the "Online Services"). Online Services shall include, but not be limited to, any service or content the Company provides to you, including any materials displayed or performed. The Company may change, suspend or discontinue the Online Services,including the availability of any feature or content, on thirty days' notice, or immediately for any reason beyond the Company's reasonable control, or if you breach any term of an agreement or policy

governing the Software, including this Agreement, Licensor's Privacy Policy and/or Licensor's Terms of Service. The Company may also impose limits on certain features and services or restrict your access to parts or all of the Online Services without notice.

## TRADEMARK AND COPYRIGHT INFORMATION

All Online Services material, including, but not limited to, text, data, graphics, logos, button icons, images, audio clips, video clips, links, digital downloads, data compilations, and software is owned, controlled by, licensed to, or used with permission by the Company and is protected by copyright, trademark, and other intellectual property rights. The Online Services material is made available solely for your personal, non-commercial use and may not be copied, reproduced, republished, modified, uploaded, posted, transmitted, or distributed in any way, including by email or other electronic means, without the express prior written consent of the Company in each instance. You may download material intentionally made available for downloading through the Online Services for your personal, non-commercial use only, provided that you keep intact any and all copyright and other proprietary notices that may appear on such materials.

## SUBMISSIONS

The Company welcomes input from the gaming community. You hereby grant the Company an exclusive, perpetual, irrevocable, fully transferable, and sub-licensable worldwide right and license to use any submissions you submit to the Company of any nature whatsoever, whether through a posting on a Company website, email to the Company, mail, or any other means and without any obligation to account, credit, or make any payment to you for any use thereof. No purported reservation of rights incorporated in or accompanying any submission shall have any force or effect.

## CODE OF CONDUCT

The following rules, policies, and disclaimers shall govern and/or apply to your use of the Online Services.

You agree, by using the Online Services, that: (1) you will only use the Online Services for lawful purposes, in compliance with applicable laws, for your own personal, non-commercial use; (2) you will not restrict or inhibit any other user from using or enjoying the Online Services (for example, by means of harassment, hacking, interfering, adversely affecting, or defacement); (3) you will not use the Online Services to create, upload, or post any material that is knowingly false and/or defamatory, inaccurate, abusive, vulgar, obscene, profane, hateful, harassing, sexually oriented, threatening, invasive of one's privacy, in violation of any law, or is inconsistent with community standards; (4) you will not post, upload, or create any copyrighted material using the Online Services unless you own the copyright in and to such material; (5) you will not post, upload, or transmit any information or software that modifies or alters the Online Services in any way or that contains a virus, worm, timebomb, cancelbot, trojan horse or other harmful, disruptive, or deleterious component; (6) you will not post, upload, create, or transmit materials in violation of another party's copyright or other intellectual property rights; (7) you will not cheat or utilize any unauthorized robot, spider, or other program in connection with the Online Services; (8) you will not impersonate any other individual or entity in connection with your use of the Online Services, and (9) you will not provide assistance, guidance, or instruction to any other individual or entity regarding any of the above. All determinations will be made by the Company in its sole discretion.

When we provide Online Services involving user-created content ("UGC"), we do not review every piece of UGC, nor do we confirm the accuracy, validity, or originality of the UGC posted. We do not actively monitor the contents of the postings, nor are we responsible for the content of any postings. We do not vouch for, nor do we warrant the validity,

accuracy, completeness, or usefulness of any UGC. The contents of the postings do not represent the views of the Company, its subsidiaries, or any person or property associated with the Company, the Online Services, or any website in the Company's family of websites. If you feel that any posting is objectionable, we encourage you to use associated report functions or contact us by visiting www.take2games.com/support. We will remove objectionable content if we deem removal to be warranted. Please understand that removal or editing of any content is a manual process and might not occur immediately or at all. The Company is not responsible for any content posted, or actions taken, by any other User that impacts you or your use of the Online Services. We reserve the right to remove (or not) any UGC or content for any (or no) reason whatsoever. You remain solely responsible for your UGC, and you will accordingly be responsible and liable to the Company and its agents with respect to any claim based upon the transmission of your UGC. Posting of advertisements, chain letters, pyramid schemes, solicitations, the same note more than once or "spamming," and the like, are inappropriate and forbidden on the Online Services (including bulletin boards and chat rooms).

To the fullest extent allowed by applicable law, your use of the Online Services is at your own risk and the Company is not responsible for any loss, damage, or unsatisfactory performance related to the Online Services.

We reserve the right to reveal your identity (including whatever information we know about you) without notice to you in certain circumstances set forth in our Privacy Policy. Please visit www.take2games.com/privacy for more details.

## LIMITED LICENSE BY THE COMPANY

The Company grants you a limited, non-sublicensable license to access and use the Online Services. Such license is subject to this Agreement and, as applicable, the software EULA located at www.take2games.com/eula, and specifically conditioned upon the following: (i) you may only view, copy and print portions of the Online Services for your own informational, personal and non-commercial use; (ii) you may not modify or otherwise make derivative uses of the Online Services, or any portion thereof; (iii) you may not remove or modify any copyright, trademark, or other proprietary notices that have been placed in the Online Services; (iv) you may not use any data mining, robots or similar data gathering or extraction methods; (v) you may not use the Online Services other than for their intended purpose; (vi) you may not reproduce, prepare derivative works from, distribute, frame, "mirror," or display the Online Services, except as provided herein; and (vii) you must not violate the Code of Conduct set forth above.

Except as expressly permitted above, any use of any portion of the Online Services without the prior written permission of the Company is strictly prohibited and will terminate the license granted herein. Any such unauthorized use may also violate applicable laws, including without limitation copyright and trademark laws and applicable communications regulations and statutes. Unless explicitly stated herein, nothing in this Agreement may be construed as conferring any license to intellectual property rights, whether by estoppel, implication or otherwise. This license is revocable at any time.

You represent and warrant that your use of the Online Services will be consistent with this license, the EULA, and any other applicable agreements or policies, and will not infringe or violate the rights of any other party or breach any contract or legal duty to any other parties, or violate any applicable law. You will be responsible and liable to the Company in respect of any liability that the Company suffers arising out of your use of Online Services not in accordance with this Agreement. To request permission for uses of the Online Services not included in the foregoing license, you may write to the Company at webmaster@take2games.com.

## LICENSE TO THE COMPANY

By creating UGC, posting messages, uploading files, creating files, inputting data, or engaging in any form of communication with or through the Online Services, you are granting the Company a royalty-free, perpetual, non-

exclusive, unrestricted, worldwide license to: (1) use, copy, sublicense, adapt, transmit, publicly perform, or display any such material; and (2) sublicense to third-parties the unrestricted right to exercise any of the foregoing rights granted with respect to the material. The foregoing grants shall include the right to exploit any proprietary rights in such material, including but not limited to rights under copyright, trademark, service mark, or patent laws under any relevant jurisdiction. Please consult the EULA at www.take2games.com/eula for additional license terms related to our software.

## MAKING PURCHASES

If you wish to purchase products or services described in the Online Services, you may be asked to supply certain information including credit card or other payment information. You agree that all information that you provide will be accurate, complete, and current. You agree to pay all charges, including shipping and handling charges, incurred by users of your credit card or other payment mechanism at the prices in effect when such charges are incurred. You will also be responsible for paying any applicable taxes relating to your purchases. Please review the Company's privacy policy at www.take2games.com/privacy before submitting such information.

## RINGTONES, WALLPAPERS, AND OTHER MOBILE DEVICE SERVICES & PRODUCTS

Certain mobile phone handsets and carriers offer services that enable consumers to select and purchase directly through their mobile devices various digital mobile products. The Online Services may also offer the ability to select and purchase various digital mobile products that will be delivered to your mobile device. These digital mobile products offerings and products may enable the consumer to customize their mobile device or mobile device service (for example with ringtones or wallpaper), or allow the consumer to select certain video or audio files that can be viewed or listened to whenever the consumer chooses. All or some of the digital mobile products offerings may not be available on, transmissible to, or compatible with all mobile devices. As a result, consumers may not be able to access, purchase or make use of all the services or offerings. Any attempt to purchase these products or services may result in mobile carrier charges being separately billed to your mobile device account for SMS messaging or other communications. In addition, the consumer may be separately billed by the mobile carrier for the actual product, service or offering selected. In the event the consumer has a call waiting and an incoming call is received while accessing or ordering any mobile product or service, such product, service or other offering may be interrupted or may not completely download. You can unsubscribe from any subscription service by following the instructions in the message or on the website related to the product. Please see http://www.take2games.com/support for support information regarding our products.

## VIRTUAL CURRENCY AND VIRTUAL GOODS

The Online Services, including software, may offer the ability to purchase and/or earn via gameplay a limited license to use virtual currency and/or virtual goods exclusively within applicable software and services provided by the Company. Such license is subject to and specifically conditioned upon your acceptance of, and compliance with, the EULA, this Agreement and any other applicable policies or agreements. All in-game Virtual Currency and/or Virtual Goods may be consumed or lost by players in the course of gameplay according to the game's rules applicable to currency and goods, which may vary. See the EULA at www.take2games.com/eula for more details.

# WARRANTY DISCLAIMER

THE COMPANY MAY PROVIDE LINKS AND POINTERS TO INTERNET WEBSITES MAINTAINED BY THIRD-PARTIES ("THIRD-PARTY SITES") AND MAY, FROM TIME TO TIME, PROVIDE THIRD-PARTY MATERIALS ON ITS WEBSITES. NEITHER THE COMPANY, ITS PARENT OR SUBSIDIARY COMPANIES, NOR THEIR AFFILIATES, ENDORSE, TAKE RESPONSIBILITY FOR, OPERATE OR CONTROL IN ANY RESPECT ANY INFORMATION, PRODUCTS, OR SERVICES ON THESE THIRD-PARTY SITES. THE MATERIALS ON THE THIRD-PARTY SITES ARE PROVIDED "AS IS" AND "AS AVAILABLE" WITH NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NONINFRINGEMENT. Because some jurisdictions do not allow the exclusion of or limitations on implied warranties or the limitations on the applicable statutory rights of a consumer, some or all of the above exclusions and limitations may not apply to you.

# VOID WHERE PROHIBITED

Although Company Online Services are accessible worldwide, not all products or services are available to all persons or in all geographic locations. The Company reserves the right to limit, in its sole discretion, the provision and quantity of any product or service to any person or geographic area it so desires. Any offer for any product or service made is void where prohibited.

# YOUR RESPONSIBILTY TO THE COMPANY

You are responsible and liable to the Company and its affiliated companies, officers, directors, employees, agents, licensors, and suppliers in respect of all losses, expenses, damages, and costs, including reasonable attorneys' fees, resulting from any violation by you of this Agreement. The Company reserves the right to assume the exclusive defense and control of any matter that you are responsible and liable for under this paragraph.

# LITIGATION ISSUES

This Agreement is entered into in the State of New York and shall be governed by, and construed in accordance with, the laws of the State of New York, exclusive of its choice of law rules. You and the Company agree to submit to the exclusive jurisdiction of the state and federal courts sitting in the Borough of Manhattan in the City of New York in the State of New York, and waive any jurisdictional, venue, or inconvenient forum objections to such courts. You and the Company further agree as follows: (i) any claim brought to enforce this Agreement must be commenced within two (2) years of the cause of action accruing; (ii) no recovery may be sought or received for damages other than out-of-pocket expenses, except that the prevailing party will be entitled to costs and attorneys' fees; and (iii) any claim must be brought individually and not consolidated as part of a group or class action complaint. Because some jurisdictions do not allow the exclusion of or limitations on incidental or consequential damages or the limitations on the applicable statutory rights of a consumer, some or all of the above exclusions and limitations may not apply to you. For example, if you are a resident of a European Union member state, you will benefit from any mandatory provisions of consumer protection law in the member state in which you are resident, and you can bring legal proceedings in relation to this Agreement in the courts of the member state in which you are resident. The Company has the right to prosecute civil claims against you for any violation of this Code of Conduct, whether for breach of contract, violation of common law

rights, or violation of any applicable state or federal statute. Any violation by you of this Code of Conduct shall constitute an affirmative defense (whether characterized as arising at law or in equity) against any claim you might assert against the Company in connection with the Online Services.

## TERMINATION

The Company may terminate or suspend any and all Online Services and any registered account immediately, without prior notice or liability on thirty days' notice, or immediately for any reason beyond the Company's reasonable control or if you breach any terms and conditions of an agreement or policy governing the Software, including this Agreement, the Privacy Policy and/or the End User License Agreement. Upon termination of your account, your right to use the Online Services will immediately cease. If you wish to terminate your account, you may simply discontinue using the Online Services. All provisions of this Agreement which by their nature should survive termination shall survive termination, including, without limitation, ownership provisions, warranty disclaimers and limitations of liability.

The Company may terminate any of the Online Services for any reason at all by giving at least thirty days' notice by email or on the website page entitled "Legal Notices" or "Legal Information" (or similar title), or immediately without notice for any reason beyond the Company's reasonable control.

## MISCELLANEOUS

In the event that any of the provisions of this Agreement are held by a court or other tribunal of competent jurisdiction to be unenforceable, such provisions shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect. This Agreement, along with the Privacy Policy located at www.take2games.com/privacy and the EULA, constitutes the entire agreement between you and the Company pertaining to the subject matter hereof, and any and all written or oral agreements heretofore existing between you and the Company with respect to the subject matter of this Agreement are expressly canceled.

No failure or delay by the Company to enforce any rights or powers under this Agreement may be deemed a waiver of those or any other rights or powers of the Company.

The Company may modify the terms of this Agreement at any time in its sole discretion by posting a revised Agreement or, in the case of a material modification, by posting notice of such modification on the website page entitled "Legal Notices" or "Legal Information" (or similar title) before the modification takes effect.

## DESIGNATED AGENT UNDER THE DIGITAL MILLENNIUM COPYRIGHT ACT

The Digital Millennium Copyright Act ("DMCA") provides a mechanism for notifying service providers of claims of unauthorized use of copyrighted materials. Under the DMCA, a claim must be sent to the service provider's designated agent. If you believe in good faith that the Company should be notified of a possible online copyright infringement involving any Online Service, please notify the Company's designated agent:
Service Provider: Take-Two Interactive Software, Inc.
Take-Two Interactive Software, Inc.
Address of Designated Agent:
622 Broadway

New York, New York 10012
Attention: General Counsel

Telephone Number of Designated Agent: 646-536-2842
Facsimile Number of Designated Agent: 646-941-3566

Email Address of Designated Agent: copyright@take2games.com

Please be aware that, in order to be effective, your notice of claim must comply with the detailed requirements set forth in the DMCA. You are encouraged to review them (see 17 U.S.C. Sec. 512(c)(3)) before sending your notice of claim.

To meet the notice requirements under the DMCA, the notification must be a written communication that includes the following: (1) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed; (2) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site; (3) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit us to locate the material; (4) Information reasonably sufficient to permit us to contact the complaining party, such as an address, telephone number and, if available, an electronic mail address at which the complaining party may be contacted; (5) A statement that the complaining party has a good-faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent or the law; and (6) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

# REPEAT INFRINGER POLICY

In accordance with the DMCA and other applicable law, the Company has adopted a policy of terminating, in appropriate circumstances and at Company's sole discretion, registered accounts deemed to be repeat infringers. The Company may also at its sole discretion limit access to the Online Services and/or terminate the account of anyone who infringes any intellectual property rights of others, whether or not there is any repeat infringement.

Back to top

# EXHIBIT 3

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-950-397

**Effective Date of Registration:**
June 09, 2015

---

## Title

|  |  |
|---|---|
| **Title of Work:** | Grand Theft Auto V (for PC) |

## Completion/Publication

|  |  |
|---|---|
| **Year of Completion:** | 2015 |
| **Date of 1st Publication:** | April 14, 2015 |
| **Nation of 1st Publication:** | United States |

## Author

|  |  |
|---|---|
| • **Author:** | Take-Two Interactive Software, Inc. |
| **Author Created:** | Audio-visual elements, artwork, literary text, computer code |
| **Work made for hire:** | Yes |
| **Domiciled in:** | United States |

## Copyright Claimant

|  |  |
|---|---|
| **Copyright Claimant:** | Take-Two Interactive Software, Inc. |
|  | 622 Broadway, New York, NY, 10012, United States |

## Limitation of copyright claim

|  |  |
|---|---|
| **Material excluded from this claim:** | licensed material; previously published material; previously registered material |
| **Previous registration and year:** | PA 1-387-611, 2007 |
|  | PA 1-612-646, 2008 |
| **New material included in claim:** | new and additional audio-visual elements, artwork, literary text; additional and revised computer code |

## Rights and Permissions

|  |  |
|---|---|
| **Organization Name:** | Take-Two Interactive Software, Inc. |
| **Address:** | 622 Broadway |
|  | New York, NY 10012 United States |

## Certification

|  |  |
|---|---|
| **Name:** | Kristen McCallion |

Page 1 of 2

**Registration #:**   PA0001950397
**Service Request #:**   1-2305544612

Fish & Richardson P.C.
Kristen McCallion
P.O. Box 1022
Minneapolis, MN 55440-1022 United States

# EXHIBIT G

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _11/21/18_

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TAKE-TWO INTERACTIVE SOFTWARE, INC. | Case No.: 18-cv-07658 (PKC) |
| Plaintiff, | ECF Case |
| v. | |
| JHONNY PEREZ | **CLERK'S**<br>**CERTIFICATE OF DEFAULT** |
| Defendant. | |

I, Ruby J. Krajick, Clerk of the United States District Court for the Southern District of New York, do hereby certify that this action was commenced on August 22, 2018, with the filing of a summons and complaint; a copy of the summons and complaint was served on Defendant Jhonny Perez by personal service on September 18, 2018; and proof of such service thereof was filed on September 26, 2018. Dkt. No. 14. I further certify that the docket entries indicate that the defendant has not filed an answer or otherwise moved with respect to the complaint herein.

The default of the defendant is hereby noted.

Dated: Nov 21, 2018
New York, New York

**RUBY J. KRAJICK**
Clerk of Court

By: _____
Deputy Clerk

# EXHIBIT H

Dale M. Cendali
Joshua L. Simmons
Megan L. McKeown
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
megan.mckeown@kirkland.com

*Attorneys for Plaintiff Take-Two Interactive Software, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TAKE-TWO INTERACTIVE SOFTWARE, INC., <br><br> Plaintiff, <br><br> - against - <br><br> JHONNY PEREZ, <br><br> Defendant. | CASE NO. 18-cv-07658 (PKC) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF TAKE-TWO INTERACTIVE SOFTWARE, INC.'S**
**<u>MOTION FOR DEFAULT JUDGMENT</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 2

    I.     TAKE-TWO ............................................................................................... 2

    II.    DEFENDANT'S INFRINGING PROGRAM ........................................ 3

    III.   DEFENDANT'S DEFAULT ................................................................... 4

ARGUMENT ...................................................................................................................... 5

    I.     THIS COURT HAS JURISDICTION OVER TAKE-TWO'S CLAIMS ............. 5

    II.    DEFAULT JUDGMENT SHOULD BE AWARDED ......................................... 6

          A.     Take-Two's Well-Pleaded Complaint Establishes Defendant's
                Direct and Contributory Copyright Infringement ....................................... 6

          B.     Take-Two's Well-Pleaded Complaint Establishes Defendant's
                Liability for Breach of Contract and Tortious Interference With
                Contract ........................................................................................................ 9

    III.   DEFENDANT SHOULD BE PERMANENTLY ENJOINED ........................... 11

          A.     Success on the Merits .................................................................................. 12

          B.     Take-Two Has Been Irreparably Harmed .................................................. 12

          C.     The Balance of Hardships Favors Take-Two ............................................ 15

          D.     The Public Interest Will be Served by the Issuance of an Injunction ....... 17

    IV.   STATUTORY DAMAGES FOR DEFENDANT'S COPYRIGHT
          INFRINGEMENT SHOULD BE AWARDED ................................................. 18

    V.    TAKE-TWO'S ATTORNEY'S FEES SHOULD BE AWARDED .................... 23

CONCLUSION ................................................................................................................ 25

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Adv. Access v. Content Sys. Licensing Adm'r, LLC v. Tao*,
689 F. App'x 661 (2d Cir. 2017) ....................................................................14, 15

*Am. Bd. of Internal Med. v. Mittman*,
No. 08 Civ. 929, 2010 WL 11520544 (C.D. Cal. Dec. 6, 2010) ...........................23

*Anderson v. YARP Rest., Inc.*,
No. 94 Civ. 7543, 1997 WL 47785 (S.D.N.Y. Feb. 6, 1997) .................................25

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*,
522 F.3d 182 (2d Cir. 2008) ..................................................................................25

*Arista Records LLC v. Usenet.com, Inc.*,
No. 07 Civ 8822, 2010 WL 3629688 (S.D.N.Y. Feb. 2, 2010) ........................21, 22

*Associated Press v. Meltwater U.S. Holdings, Inc.*,
931 F. Supp. 2d 537 (S.D.N.Y. 2013) .....................................................................6

*Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*,
672 F.2d 607 (7th Cir. 1982) .................................................................................16

*Blanchard v. Bergeron*,
489 U.S. 87 (1989) ................................................................................................24

*Blizzard Entm't, Inc. v. Vankuipers*,
No. 10 Civ. 1495, 2011 WL 13225129 (C.D. Cal. July 11, 2011) .........................23

*Brighton Collectibles, LLC v. IPPO Jewelry Corp.*,
No. 16 Civ. 06065, 2017 WL 7833608 (C.D. Cal. Feb. 22, 2017) .........................23

*Broad. Music, Inc. v. The Living Room Steak House, Inc.*,
No. 14 Civ. 6298, 2016 WL 756567 (E.D.N.Y. Feb. 26, 2016) .............................20

*Broad. Music, Inc. v. Pamdh Enterprises, Inc.*,
No. 13 Civ. 2255, 2014 WL 2781846 (S.D.N.Y. June 19, 2014) .....................23, 24

*Broad. Music, Inc. v. Prana Hosp., Inc.*,
158 F. Supp. 3d 184 (S.D.N.Y. 2016) ...............................................................13, 15

*Broad. Music, Inc. v. Wexford INR LLC*,
No. 12 Civ. 1253, 2014 WL 4626454 (N.D.N.Y. Sept. 15, 2014) .....................20, 21

*Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*,
    150 F.3d 132 (2d Cir. 1998)................................................................6, 7

*City of Burlington v. Dague*,
    505 U.S. 557 (1992)...........................................................................24

*City of N.Y. v. Mickalis Pawn Shop, LLC*,
    645 F.3d 114 (2d Cir. 2011)...........................................................2, 5, 6

*DisputeSuite.com, LLC v. Credit Umbrella Inc.*,
    No. 14 Civ. 6340, 2016 WL 6662722 (C.D. Cal. Apr. 25, 2016)...........................23

*Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*,
    307 F.3d 197, 208 (3d Cir. 2002)..............................................................7

*Dweck v. Amadi*,
    No. 10 Civ. 2577, 2011 WL 3809907 (S.D.N.Y. July 26, 2011) .....................19, 21

*Elec. Creations Corp. v. Gigahertz, Inc.*,
    No. 12 Civ. 1423, 2013 WL 3229125 (N.D.N.Y. June 25, 2013) ....................22, 23

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
    844 F.3d 79 (2d Cir. 2016)....................................................................9

*Entral Grp. Int'l, LLC v. Honey Cafe on 5th, Inc.*,
    No. 05 Civ. 2290, 2006 WL 3694584 (E.D.N.Y. Dec. 14, 2006) .........................22

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994)...........................................................................23

*Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*,
    826 F. Supp. 2d 619 (S.D.N.Y. 2011)..............................................*passim*

*Ideavillage Prod. Corp. v. Bling Boutique Store*,
    No. 16 Civ. 9039, 2018 WL 3559085 (S.D.N.Y. July 24, 2018) ...........................13

*Island Software & Comput. v. Microsoft*,
    413 F.3d 257 (2d Cir. 2005)....................................................................6

*John Wiley & Sons, Inc. v. Williams*,
    No. 12 Civ. 0079, 2012 WL 5438917 (S.D.N.Y. Nov. 5, 2012) ...........................19

*Jordan Mozer & Assocs., Ltd. v. Starck*,
    No. 13 Civ. 1181, 2014 WL 1327960 (S.D.N.Y. Apr. 3, 2014)....................*passim*

*Kepner-Tregoe, Inc. v. Vroom*,
    186 F.3d 283 (2d Cir. 1999)...................................................................23

*Kirtsaeng v. John Wiley & Sons, Inc.*,
136 S.Ct. 1979 (1975) ..............................................................................................17

*Kurt S. Alder, Inc. v. World Bazaars, Inc.*,
No. 95 Civ. 5610, 1995 WL 457991 (S.D.N.Y. 1995) ............................................18

*Lions Gate Films Inc. v. Saleh*,
No. 214 Civ. 06033, 2016 WL 6822748 (C.D. Cal. Mar. 24, 2016) ......................23

*MAI Sys. Corp. v. Peak Computer, Inc.*,
991 F.2d 511 (9th Cir. 1993) ....................................................................................8

*McGraw-Hill Glob. Educ. Holdings, LLC v. Khan*,
323 F. Supp. 3d 488 (S.D.N.Y. 2018) ...........................................................9, 12, 13

*MDM Grp. Assocs., Inc. v. L.A. Real Estate*,
No. 10 Civ. 0234, 2010 WL 5239250 (S.D. Ala. Dec. 14, 2010)...........................23

*Micro Star v. Formgen Inc.*,
154 F.3d 1107 (9th Cir. 1998) ..................................................................................7

*Midway Mfg. Co. v. Artic Int'l, Inc.*,
547 F. Supp. 999 (N.D. Ill. 1982) ...........................................................13, 14, 17, 18

*Midway Mfg. Co. v. Artic Int'l, Inc.*,
704 F.2d 1009 (7th Cir. 1983) ..................................................................................7

*MPD Accessories B.V. v. Urban Outfitters*,
No. 12 Civ. 6501, 2014 WL 2440683 (S.D.N.Y. May 30, 2014)......................14, 15

*MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*,
No. 16 Civ. 8103, 2017 WL 1194372 (S.D.N.Y. Mar. 30, 2017) ..........................25

*Muench Photography, Inc. v. McGraw-Hill Cos.*,
No. 12 Civ. 6595, 2013 WL 5372785 (S.D.N.Y. Aug. 15, 2013) ..........................10

*New York v. Green*,
420 F.3d 99 (2d Cir. 2005)........................................................................................5

*Pearson Educ., Inc. v. Nugroho*,
No. 08 Civ. 8034, 2009 WL 3429610 (S.D.N.Y. Oct. 27, 2009) ...........................21

*Regeneron Pharm., Inc. v. Merus N.V.*,
No. 14 Civ. 1650, 2018 WL 3425013 (S.D.N.Y. June 25, 2018)......................24, 25

*Richard Feiner and Co., Inc. v. Passport Int'l Prods., Inc.*,
No. 97 Civ. 9144, 1998 WL 437157 (S.D.N.Y. July 31, 1998) .............................18

*Rovio Entm't Ltd. v. Allstar Vending Ltd.*,
   97 F. Supp. 3d 536 (S.D.N.Y. 2015)...........................................................16

*Salinger v. Colting*,
   607 F.3d 68 (2d Cir. 2010)................................................................12, 15

*Sands v. Hologram USA Networks, Inc.*,
   No. 17 Civ. 09692, slip op. (S.D.N.Y. Oct. 1, 2018)...............................23

*Schmid, Inc. v. Zucker's Gifts, Inc.*,
   766 F. Supp. 118 (S.D.N.Y. 1991).............................................................11

*Scholz Design, Inc. v. Sard Custom Homes, LLC*,
   691 F.3d 182 (2d Cir. 2012).......................................................................6

*SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*,
   642 F. Supp. 2d 167 (S.D.N.Y. 2009)........................................................16

*Take-Two Interactive Software, Inc. v. Zipperer*,
   No. 18 Civ. 2608, 2018 WL 4347796 (S.D.N.Y. Aug. 16, 2018) ................. *passim*

*Tecnimed SRL v. Kidz-Med, Inc.*,
   763 F. Supp. 2d 395 (S.D.N.Y. 2011)........................................................15

*Tu v. TAD Sys. Tech. Inc.*,
   No. 08 Civ. 3822, 2009 WL 2905780 (E.D.N.Y. Sept. 10, 2009)..................21, 22

*U2 Home Entm't, Inc. v. Fu Shun Wang*,
   482 F. Supp. 2d 314 (E.D.N.Y. 2007) ......................................................11

*Ullmannglass v. Oneida, Ltd.*,
   86 A.D.3d 827, 927 N.Y.S.2d 702 (3d Dep't 2011).........................................10, 11

*Vernor v. Autodesk, Inc.*,
   621 F.3d 1102 (9th Cir. 2010) ...............................................................8, 9

*Warner Bros. Entm't v. RDR Books*,
   575 F. Supp. 2d 513 (S.D.N.Y. 2008)........................................................17

*Winter v. Natural Resources Defense Council, Inc.*,
   555 U.S. 7 (2008)..................................................................................16

*WPIX, Inc. v. ivi, Inc.*,
   691 F.3d 275 (2d Cir. 2012)................................................................ *passim*

**Statutes**

17 U.S.C. § 106...................................................................................6, 7

17 U.S.C. § 410(c) ...................................................................................................................6

17 U.S.C. § 502(a) .................................................................................................................11

17 U.S.C. § 504(c) ...........................................................................................................18, 19

17 U.S.C. § 505 ......................................................................................................................23

28 U.S.C. 1331 ........................................................................................................................5

28 U.S.C. § 1338 .....................................................................................................................5

28 U.S.C. § 1367(a) .................................................................................................................5

**Rules**

Fed. R. Civ. P. 55 ....................................................................................................................5

Local Rule 55.2(b) ...................................................................................................................5

Plaintiff Take-Two Interactive Software, Inc. ("Take-Two") respectfully submits this memorandum of law in support of its motion for default judgment against Defendant Jhonny Perez ("Defendant").

## **INTRODUCTION**

In a transparent attempt to profit at Take-Two's expense, Defendant developed and sold a software program for cheating in and manipulating Take-Two's *Grand Theft Auto V* video game ("GTAV") and its multiplayer feature *Grand Theft Auto Online* ("GTAO") to the detriment of Take-Two and those that fairly play its games. In essence, Defendant is free riding on Take-Two's intellectual property to sell a commercial product that interferes with the carefully orchestrated and balanced gameplay that Take-Two created for its players. Take-Two thus brought this lawsuit to vindicate its rights and asserted claims of direct and contributory copyright infringement, breach of contract, and tortious interference with contract. Defendant has not appeared in this case, thereby defaulting. Take-Two thus brings this motion.

Defendant's software program violates Take-Two's copyrights for two reasons. First, Defendant's program creates an unauthorized altered, derivative version of GTAV that added new features and game elements to the GTAO multiplayer feature. Second, Defendant is liable for copyright infringement for the independent reason that a license from Take-Two is required to play GTAV. Because use of Defendant's program violates the licensing conditions in Take-Two's End User License Agreement ("User Agreement"), playing GTAV after having violated those terms is no longer licensed and, thus, also is an infringement. Defendant is liable directly for his own actions and contributorily for the infringements of his programs' users. In *Take-Two Interactive Software, Inc. v. Zipperer*—an on-point case where Take-Two was suing another defendant under the same theories for creating a similar infringing program—the court issued a preliminary injunction finding that Take-Two established a likelihood of success on the merits

- 1 -

that the defendant "infringed [Take-Two's] copyright in [those] two ways." No. 18 Civ. 2608, 2018 WL 4347796, at *8 (S.D.N.Y. Aug. 16, 2018).

Defendant also is liable for breach of contract as his conduct violates Take-Two's User Agreement's prohibitions on (i) creating derivative works based on Take-Two's games, (ii) disrupting and inhibiting others from using and enjoying GTAV, and (iii) cheating in connection with the online features of the game. Defendant is not only liable for his own breaches but also for tortiously interfering with Take-Two's contracts with its players because he intentionally caused other players' breach of Take-Two's User Agreement when he sold and distributed his program to those players for use in violation of Take-Two's User Agreement. In *Zipperer*, the court denied a motion to dismiss Take-Two's tortious interference with contract claim based on similar facts, finding that the defendant could be liable for "induc[ing] or intentionally procur[ing] other players' breach of the [U]ser [A]greement." *Id.* at *6. Accordingly, Take-Two respectfully requests that a default judgment be entered against Defendant. In addition, Take-Two seeks a permanent injunction, $150,000 in statutory damages, and attorney's fees for Defendant's willful infringement, consistent with typical default judgment remedies in copyright actions.

## FACTUAL BACKGROUND[1]

### I.    TAKE-TWO

Take-Two is the developer and publisher of best-selling video game software, including GTAV and its multiplayer game feature *GTAO*. Compl. (Dkt. No. 1) ¶ 23. GTAV is widely recognized as one of the most popular and innovative games available on the market, and Take-

---

[1]    On a default judgment motion, all factual allegations of the complaint, except those pertaining to the amount of damages, must be accepted as true. *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint.").

Two has earned numerous awards both in the United States and abroad as a result. *Id.* ¶ 23. It is a game that was the product of Take-Two's skills, resources, and creative energies, and is of great value to Take-Two. *Id.* ¶ 28.

GTAO is a free game offering that complements GTAV and is regularly updated with new content via the Internet. Declaration of David Andrews, dated December 4, 2018 ("Andrews Decl.") ¶ 9. GTAO is played in the same virtual world as the main GTAV single player game, but up to 30 players can interact in the same space at the same time. *Id.* ¶ 2. This "free to play" model is supported by sales of virtual currency to the players who use it to purchase in-game items. *Id.* ¶ 9; Compl. ¶ 37.

GTAV and GTAO are protected by Take-Two's copyrights, all of which are solely owned by Take-Two. Compl. ¶¶ 25–27, 29. GTAV and GTAO also are protected by the terms of Take-Two's User Agreement, to which all users of GTAV and GTAO, including Defendant, must affirmatively assent. *Id.* ¶ 11. The User Agreement makes clear that permission to use GTAV and GTAO is conditioned on users agreeing (1) "not to . . . prepare derivative works based on, or otherwise modify the Software, in whole or in part," (2) "not to . . . restrict or inhibit any other user from using and enjoying any online features of the Software," and (3) "not to . . . cheat or utilize any unauthorized robot, spider, or other program in connection with any online features of the Software." Compl. ¶ 30.

## II. DEFENDANT'S INFRINGING PROGRAM

Defendant, acting in concert with individuals in Europe, created, distributed, and/or maintained a program called "Elusive," which is a cheating or "griefing" program for the GTAO multiplayer feature of GTAV (the "Infringing Program"). Compl. ¶ 1. The Infringing Program may be used to enable the player using it to cheat or to "grief" another player by using the program to interfere with the second player's gameplay experience. *Id.* ¶¶ 1–2; Andrews Decl. ¶

- 3 -

4.   The Infringing Program allows users to perform unauthorized actions in the game, Compl. ¶ 1, including without limitation (i) causing players to teleport, (ii) creating game objects such as vehicles and cash bags, (iii) creating game "powers", such as causing the player to be invincible, (iv) the creation of virtual currency, (v) granting access to weapons and ammunition, and (vi) granting reputation points.  Andrews Decl. ¶ 4.   These actions can be used to change the game for the user of the program and other players who do not have the program installed.  Compl. ¶ 1.

To acquire Elusive's bundled cheating tools and features, users could purchase Elusive's unauthorized features at different price ranges from $10 to $30 depending on the package. Andrews ¶ 6.  Users could make this payment through PayPal or through other forms of payment, including Steam and Amazon gift card keys.  Compl. ¶ 10; Andrews Decl. ¶ 3.

## III.   DEFENDANT'S DEFAULT

Take-Two contacted Defendant prior to bringing this lawsuit in an attempt to settle the parties' dispute without requiring judicial intervention.  Compl. ¶ 3.  Take-Two demanded that Defendant cease his willful and infringing conduct and cooperate with Take-Two to determine whether settlement would be possible.  *Id.*  As part of this process, Take-Two requested financial documents from Defendant that would show how much Defendant profited from the Infringing Program.  Declaration of Dale M. Cendali, Esq., dated December 4, 2018 ("Cendali Decl.") ¶ 12. Defendant stopped responding to Take-Two, leading to Take-Two's understanding that Defendant would continue to infringe Take-Two's rights.  Compl. ¶ 3.

Take-Two filed this action on August 22, 2018.  Compl.  Take-Two continued to request Defendant's financial documents from Defendant in an effort to avoid serving the Complaint. Cendali Decl. ¶ 12, Ex. D.  Take-Two requested these documents at least **ten times**.  *Id.*  On September 18, 2018, Defendant was served personally with the Summons, Complaint, and related papers; proof of service was filed on September 26, 2018.  *Id.* ¶ 8, Ex. B.  Defendant

- 4 -

failed to respond to the Complaint. *Id.* ¶ 9. Thus, on November 20, 2018, Take-Two requested a Certificate of Default, resulting in the Clerk's Certificate on November 21. *See* Dkts. 17–19; Cendali Decl. ¶ 10, Ex. C.

## ARGUMENT

Federal Rule of Civil Procedure 55 provides a "two-step process" for obtaining a default judgment. *See City of N.Y.*, 645 F.3d at 128–29. ***First***, under Federal Rule of Civil Procedure 55(a), the clerk must enter a notation of default when a party fails to defend. Here, Take-Two has obtained a Certificate of Default from the Clerk. Cendali Decl. Ex. C. ***Second***, upon obtaining a clerk's notation of default, "a plaintiff must next seek a judgment by default under Rule 55(b)." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).[2] The balance of this brief addresses this latter step.

## I.     THIS COURT HAS JURISDICTION OVER TAKE-TWO'S CLAIMS

This Court has federal question subject matter jurisdiction over Take-Two's copyright claim pursuant to 28 U.S.C. §§ 1331 and 1338. *See Zipperer*, 2018 WL 4347796, at *2.[3]

Personal jurisdiction and venue are proper because Defendant was required to affirmatively accept the terms of Take-Two's User Agreement and the Terms & Conditions of Take-Two's Terms of Service ("Terms of Service") multiple times as a pre-requisite to accessing or playing GTAV, both of which contain a forum selection clause designating New York as the

---

[2]     Federal Rule 55(b)(2), in tandem with Local Rule 55.2(b) and this Court's Individual Rules and Practices for Default Judgments, set forth certain procedural prerequisites that must be met before a default judgment may be entered. These include: (1) a signed Clerk's certificate of default; (2) a copy of the pleadings; (3) proposed form of default judgment; and (4) an affidavit in support of the motion. *See* L.R. 55.2(b); Court's Default Judgment Procedure; Fed. R. Civ. P. 55(b)(2). Here, the record shows that Take-Two has met the procedural requirements because it has submitted a declaration with the required information, a proposed default judgment order, copies of the pleadings, and the Clerk's Certificate of Default.

[3]     This Court also has supplemental jurisdiction over Take-Two's state law claims pursuant to 28 U.S.C. § 1367(a), because those claims are substantially related to Take-Two's federal claims.

sole and exclusive venue for litigation. Compl. ¶¶ 11–22, Exs. 1–2. In *Zipperer*, the defendant challenged Take-Two's forum selection clause in Take-Two's User Agreement, and the court rejected that challenge, finding that the defendant "consented to [the] court's jurisdiction" when defendant accepted Take-Two's User Agreement to play GTAV. *Zipperer*, 2018 WL 4347796, at *3–4. The same reasoning should apply here. Moreover, Defendant, by his default, admits that he consented. *See City of N.Y.*, 645 F.3d at 137.

## II.    DEFAULT JUDGMENT SHOULD BE AWARDED

### A.    Take-Two's Well-Pleaded Complaint Establishes Defendant's Direct and Contributory Copyright Infringement

"A claim of copyright infringement . . . requires proof that (1) the plaintiff had a valid copyright in the work allegedly infringed and (2) the defendant infringed the plaintiff's copyright by violating one of the exclusive rights that 17 U.S.C. § 106 bestows upon the copyright holder." *Island Software & Comput. v. Microsoft*, 413 F.3d 257, 260 (2d Cir. 2005).

As to the first prong, Take-Two owns the copyrights to the creative expression in GTAV. Compl. ¶ 25; *see Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 139 (2d Cir. 1998) (discussing the creative expression in plaintiff's work). Moreover, it owns a U.S. copyright registration for GTAV. Compl. ¶¶ 26–27, Ex. 3. As its registration was issued within five years of GTAV's publication, Compl. Ex. 3, it is "prima facie evidence of both valid ownership of copyright and originality," raising a presumption of validity. *Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537, 549 (S.D.N.Y. 2013); *see also* 17 U.S.C. § 410(c); *Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012). Moreover, GTAV is a creative, original video game. Compl. ¶¶ 28, 42, 52.

As to the second prong, the Infringing Program infringes Take-Two's copyrights in two ways. ***First***, the Infringing Program creates unauthorized derivative versions of GTAV. Take-

Two holds the exclusive right "to prepare derivative works based upon the copyrighted work." 17 U.S.C. § 106(2). Unauthorized computer programs that add new features to a video game or other software like the Infringing Program infringe this right. For example, in *Take-Two Interactive Software, Inc. v. Zipperer*, a case involving a computer program that similarly "created an alternative version of GTAV which is based on Take-Two's GTAV but with added elements that allow its users to use features not available in the original version of GTAV" was held to "likely constitute[] a derivative work which Take-Two has the exclusive right to create." No. 18 Civ. 2608, 2018 WL 4347796, at *8 (S.D.N.Y. Aug. 16, 2018). Similarly, in *Midway Manufacturing Co. v. Artic International, Inc.*, the Seventh Circuit affirmed enjoining a defendant that created a version of the *Galaxian* video game that operated at a higher speed than authorized by the game developer, because doing so created a derivative work and infringed the developer's copyrights. 704 F.2d 1009, 1013 (7th Cir. 1983). And in *Micro Star v. Formgen Inc.*, the Ninth Circuit held that the defendant's video game package of "user-created levels" was a derivative work, because the alterations, when applied to Micro Star's video game, relied on the story and creative elements of the original game. 154 F.3d 1107, 1112 (9th Cir. 1998).[4]

Here, Defendant's Infringing Program infringes Take-Two's derivative work right by adding unauthorized elements to GTAV's multiplayer feature GTAO. Compl. ¶¶ 1–2, 32, 37, 67; Andrews Decl. ¶¶ 4, 7. By adding such additional user elements without Take-Two's authorization, Defendant's Infringing Program clearly infringes Take-Two's copyrights for the reasons discussed above. 17 U.S.C. § 106(2); *see also Castle Rock*, 150 F.3d at 135 (affirming permanent injunction against derivative work).

---

[4]  *See also Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*, 307 F.3d 197, 208 (3d Cir. 2002) (holding that the defendant's alteration of a copy of the plaintiff's software to add additional features created an infringing derivative work).

**Second**, because use of the Infringing Program violates the licensing conditions in Take-Two's User Agreement, playing GTAV after having violated those terms is no longer licensed and, thus, an infringement.  Running a computer program requires a reproduction for purposes of copyright law, because it creates a copy in the random access memory (RAM) of the user's computer.  As a result, a license is required to operate a computer program or video game software.  *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 517 (9th Cir. 1993).  In recognition of this fact, software developers and video game publishers like Take-Two license their legitimate users the right to operate their programs, but they also condition their licenses on certain terms.  *See, e.g., Vernor v. Autodesk, Inc.*, 621 F.3d 1102 (9th Cir. 2010).  When the terms of the license are violated, the use is no longer licensed, resulting in copyright infringement.  *See Zipperer*, 2018 WL 4347796, at *8 (S.D.N.Y. Aug. 16, 2018) (Take-Two's "user agreement authorized [defendant] to run GTAV on his computer provided that he complied with the terms of that agreement which included a prohibition on modifying the program and creating derivative works based on the program.  By creating [the Infringing Program] he likely violated the terms of the user agreement.  His continued use of GTAV, and the copies on his computer each time he ran the program, are thus likely beyond the scope of his license from Take-Two and constitute infringement").[5]

Here, the Complaint alleges that the license to use GTAV is conditioned on adherence to Take-Two's User Agreement.  Compl. ¶¶ 30–31, 33, 45.  Among other things, it prohibits the creation of derivative works and cheating.  *Id.*  Of particular relevance to this case, the User Agreement states that the license is conditioned on the user agreeing (1) "not to . . . prepare

---

[5]    *See also Vernor*, 621 F.3d at 1112 (holding that unlicensed operation of software violates copyright holder's reproduction right).

derivative works based on, or otherwise modify the Software, in whole or in part," (2) "not to . . . restrict or inhibit any other user from using and enjoying any online features of the Software," and (3) "not to . . . cheat . . . or utilize any unauthorized robot, spider, or other program in connection with any online features of the Software." Compl. ¶ 30, Ex. 1. The Infringing Program does all of these prohibited things. Compl. ¶¶ 1–2, 32, 37, 67. As a result, by setting up and allowing others to play the Infringing Program, which is itself unlicensed, Defendant's use constitutes copyright infringement. *See Zipperer*, 2018 WL 4347796, at *8; *Vernor*, 621 F.3d at 1112; *Touro Coll.*, 2017 WL 4082481, at *12 n.15.

* * *

In addition to Defendant's own direct liability, he also is contributorily liable for the same infringement by the Infringing Program's users because Defendant (a) had knowledge that the users he distributed the Infringing Program to were creating derivative works of GTAV and (b) contributed to such use by providing them with the means to engage in infringement (*i.e.*, the Infringing Program). Compl. ¶¶ 51–63; *see EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 99–100 (2d Cir. 2016) (rejecting defendant's challenge to jury finding of contributory infringement and noting that "[a] contributory infringer is 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another'").

Accordingly, Defendant has infringed Take-Two's copyrights in two, distinct ways both directly and contributorily. Take-Two respectfully requests that default judgment be granted on Counts I and II of the Complaint. *See, e.g.*, *McGraw-Hill Glob. Educ. Holdings, LLC v. Khan*, 323 F. Supp. 3d 488, 501 (S.D.N.Y. 2018) (granting motion for default judgment where plaintiff alleged defendant's instructor solutions manual were derivative works).

**B.      Take-Two's Well-Pleaded Complaint Establishes Defendant's Liability for**

**Breach of Contract and Tortious Interference With Contract**

A breach of contract claim is established under New York law where there is "(1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." *See Muench Photography, Inc. v. McGraw-Hill Cos.*, No. 12 Civ. 6595, 2013 WL 5372785, at *3 (S.D.N.Y. Aug. 15, 2013).

Here, the Complaint alleges that "Take-Two's User Agreement is a valid and enforceable contract." Compl. ¶ 65. It further alleges that "Take-Two has fully performed or tendered all performance required under the User Agreement." *Id.* ¶ 66. It alleges that "Defendant has breached his obligations under the User Agreement by (1) altering GTAV and creating derivative works based on it; (2) restricting and inhibiting others from using and enjoying GTAV; and/or (3) cheating and using unauthorized programs in connection with GTAV's online features." *Id.* ¶ 67. And the Complaint alleges Take-Two has been damaged as a result of Defendant's conduct. *Id.* ¶¶ 1–2, 9, 38, 68. These allegations establish Defendant's liability for breach of contract. *See Muench*, 2013 WL 5372785, at *4.

A tortious interference with contract claim also is established in cases like this one where the defendant "induced or intentionally procured other players' breach of the user agreement." *Zipperer*, 2018 WL 4347796, at *6 (Take-Two adequately stated tortious interference with contract claim where Take-Two alleged that "other players breached their user agreement with Take-Two by using the cheat programs that [defendant] made and sold" and that defendant "induced and continues to induce other GTAV players to breach their user agreements with Take-Two by creating and selling the cheat programs to them"); *see also Ullmannglass v. Oneida, Ltd.*, 86 A.D.3d 827, 829, 927 N.Y.S.2d 702, 705 (3d Dep't 2011) (holding that a tortious interference with contract claim is established where a "valid contract existed which a third party knew about, the third party intentionally and properly procured the breach of the

- 10 -

contract and the breach resulted in damage to the plaintiff").

Here, "Mr. Perez has induced . . . other GTAV players to breach their contractual responsibilities by using the Infringing Program for purposes expressly prohibited by the User Agreement." Compl. ¶ 73. Moreover, "Mr. Perez's actions in inducing these breaches of contract are intentional, illegal, and have been engaged in for the specific purpose of inducing the GTAV players using the Infringing Program to breach their agreements with Take-Two." *Id.* ¶ 74. These allegations thus are sufficient to establish Defendant's tortious interference with contract. *Zipperer*, 2018 WL 4347796, at *6; *Ullmannglass*, 86 A.D.3d at 829.

Accordingly, default judgment is proper on Take-Two's breach of contract and tortious interference with contract claims. *See e.g.*, *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619 (S.D.N.Y. 2011); *Schmid, Inc. v. Zucker's Gifts, Inc.*, 766 F. Supp. 118, 123 (S.D.N.Y. 1991).

## III.    DEFENDANT SHOULD BE PERMANENTLY ENJOINED

In addition to entry of default judgment, Take-Two respectfully requests that the Court permanently enjoin Defendant from further infringement in accordance with Take-Two's proposed order submitted herewith. The Copyright Act provides that a federal court has the power to issue "final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). "[P]ermanent injunctions are generally granted where liability has been established and there is a threat of continuing infringement." *U2 Home Entm't, Inc. v. Fu Shun Wang*, 482 F. Supp. 2d 314, 319 (E.D.N.Y. 2007). Where a defendant defaults, courts will infer that the defendant "is willing to continue its infringement." *Hounddog Prods.*, 826 F. Supp. 2d at 633.

To obtain a permanent injunction, Take-Two must "satisfy the traditional four-factor test" by demonstrating (1) "success on the merits," (2) "irreparable injury in the absence of an

- 11 -

injunction," (3) the balance of hardships tips in [its] favor," and (4) the "public interest would not be disserved" by the issuance of an injunction. *McGraw-Hill*, 323 F. Supp. 3d at 500 (quoting *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)). For the reasons explained below, each of these factors weighs in favor of the issuance of a permanent injunction.

### A. Success on the Merits

For the reasons explained above, Take-Two has succeeded on the merits of its copyright infringement, breach of contract, and tortious interference with contract claims. *See supra* 6–11.

### B. Take-Two Has Been Irreparably Harmed

A permanent injunction is available where the plaintiff "will suffer irreparable harm if an injunction is not issued." *McGraw-Hill*, 323 F. Supp. 3d at 499. "Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer." *Hounddog Prods.*, 826 F. Supp. 2d at 632 (citation omitted). The Complaint alleges that Take-Two has been irreparably harmed. Compl. ¶¶ 1, 37–40, 48, 61. In particular, Take-Two is irreparably harmed by Defendant's actions in three separate ways.

***First***, courts find irreparable harm where a plaintiff would lose control over the plan for its copyrighted work. *See, e.g.*, *McGraw-Hill*, 323 F. Supp. 3d at 499–500 (irreparable harm found where plaintiffs would be prevented from "controlling the distribution of their products and recovering associated profits").

Defendant's Infringing Program causes Take-Two to lose control over Take-Two's plan for how GTAV's multiplayer feature GTAO is designed to be played. *McGraw-Hill*, 323 F. Supp. 3d at 499–500. By adding features such as teleporting, the creation of objects, and other unauthorized features, Defendant has altered Take-Two's work for himself in disregard of Take-Two's User Agreement and copyrights, to exploit GTAV for his own economic advantage.

- 12 -

*WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012) (irreparable harm found where defendant's infringing conduct "would dilute plaintiffs' . . . control over their product"). Take-Two expends countless hours to create innovative, popular games. Compl. ¶ 28. If everyone were allowed to alter GTAV for profit, it would cause significant harm to Take-Two, its carefully crafted game model, and incentives to develop new games. Losing control over how GTAV is designed to be played is a quintessential example of a company losing control over its copyrighted works and its statutorily granted right to exploit such works to its own commercial advantage. *See McGraw-Hill*, 323 F. Supp. 3d at 499–500.

**Second**, courts "routinely find the harm suffered by plaintiffs in copyright cases to be 'irreparable' on the theory that . . . diminished reputation can be difficult if not impossible to measure." *Broad. Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 195 (S.D.N.Y. 2016) (granting permanent injunction); *see also Ideavillage Prod. Corp. v. Bling Boutique Store*, No. 16 Civ. 9039, 2018 WL 3559085, at *5 (S.D.N.Y. July 24, 2018) ("irreparable injury to the reputation of [plaintiff's] products" supported permanent injunction).

Here, the unlimited availability of Defendant's Infringing Program will cause untold, irreparable harm to the reputation of Take-Two because Take-Two's business depends on maintaining a positive reputation among video game consumers and ensuring users continue to enjoy playing and purchasing Take-Two video games. Andrews Decl. ¶ 8. Defendant's Infringing Program interferes with the enjoyment of Take-Two's game by consumers who have not installed the Infringing Program. *Id.* And consequently, Take-Two's reputation for maintaining the integrity of its gaming environment will be harmed, discouraging users from future purchases and game play. *See Midway Mfg. Co. v. Artic Int'l, Inc.*, 547 F. Supp. 999, 1014 (N.D. Ill. 1982) (irreparable harm found where defendant's "speed-up kit" altered

- 13 -

plaintiff's game in a way that made it "considerably more difficult, for the unskilled player in particular" and where it was "very possible, if not likely, that that [would] discourage those individuals from playing [plaintiff's] video games"), *aff'd*, 704 F.2d 1009.

Once consumers decide to stop playing GTAV or stop buying Take-Two products, it will be very difficult to un-ring that bell. Consumers who purchased GTAV in the past to play GTAO may never return to the game in the future. Andrews Decl. ¶ 11. And this harm ultimately affects Take-Two's business model, customer relations, and the gaming industry. *Id.* ¶ 10; *Adv. Access v. Content Sys. Licensing Adm'r, LLC v. Tao*, 689 F. App'x 661, 662 (2d Cir. 2017) (irreparable harm found where defendant was "undermin[ing plaintiff's] business model"); *WPIX*, 691 F.3d at 285 (irreparable harm found where defendant's television streaming program would "drastically change the industry, to plaintiffs' detriment"). Thus, an injunction to stop the disruption and alteration of the game experience is essential. *See Midway*, 547 F. Supp. at 1015.

***Finally***, courts find harm irreparable where there would be a "significant undercutting of [plaintiff's] price points." *MPD Accessories B.V. v. Urban Outfitters*, No. 12 Civ. 6501, 2014 WL 2440683, at *10 (S.D.N.Y. May 30, 2014). Here, as part of Take-Two's game, users can choose to enhance their gaming experience through the use of certain items, but users must either earn the currency through gameplay or users must purchase the currency and items from Take-Two. Compl. ¶ 32; Andrews Decl. ¶ 9. With Defendant's Infringing Program, gamers can have unlimited digital currency and other items for the low price of $10, $20, or $30, currency and items which would otherwise need to be earned or purchased from Take-Two. Andrews Decl. ¶¶ 3, 9.

In *Zipperer*, the court found irreparable harm and granted an injunction holding that "cheat programs [that] allow users to get unlimited currency without purchasing it from Take-

Two . . . undermines Take-Two's pricing model." *Zipperer*, 2018 WL 4347796 at *9. Thus, here, the unlimited digital currency and other items made available by Defendant's Infringing Program similarly circumvents Take-Two's normal processes, and undermines Take-Two's business model and the pricing of its currency and in-game items. *See also MPD*, 2014 WL 2440683, at *10; *see also Adv. Access Content Sys. Licensing Adm'r, LLC v. Tao*, 689 F. App'x 661, 662 (2d Cir. 2017) (affirming injunction and finding of irreparable harm where defendant's action would allow users to circumvent encryptions on plaintiff's software thereby "undermin[ing plaintiff's] business model"). Purchases of legitimate currency and other items from Take-Two are important to Take-Two's business, as such purchases support the continued development of high-quality, state of the art video games. Andrews Decl. ¶ 9; *see WPIX*, 691 F.3d at 285 (irreparable harm found where quantity and quality of efforts to create new works would be diminished by defendant's conduct, as would the value of new works).[6]

*       *       *

In sum, Defendant's Infringing Program has caused immediate, untold harm to Take-Two's business and the value of its copyrights, and deprived Take-Two of the control over its copyrighted software. This harm cannot be corrected through mere damages. Accordingly, permanent injunctive relief is proper. *Hounddog Prods.*, 826 F. Supp. 2d at 619.

### C.    The Balance of Hardships Favors Take-Two

In assessing whether the balance of hardships weighs in favor of granting a preliminary

---

[6]    Moreover, monetary damages are insufficient to compensate Take-Two for the harm it has suffered and will suffer if Defendant's infringements continue. The damages that Take-Two will suffer cannot be quantified readily, as damages are notoriously difficult to calculate in copyright infringement cases. *Zipperer*, 2018 WL 4347796 at *9; *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) ("[C]ourts have tended to issue injunctions in this context because 'to prove the loss of sales due to infringement is . . . notoriously difficult.'"). Take-Two would have no way of knowing how much revenue it will lose as a result of Defendant's Infringing Program. Andrews Decl. ¶ 11; *Zipperer*, 2018 WL 4347796 at *9; *Tecnimed SRL v. Kidz-Med, Inc.*, 763 F. Supp. 2d 395, 411 (S.D.N.Y. 2011), *aff'd*, 462 F. App'x 31 (2d Cir. 2012); *BMI*, 158 F. Supp. 3d at 195.

injunction, "courts must balance the competing claims of injury and must consider the effect on each party of granting or withholding the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). For example, where "the absence of an injunction would result in the continued infringement of [a copyright holder's] property interests in the copyright material," it supports granting an injunction. *See WPIX*, 691 F.3d at 287. By contrast, losing the opportunity to infringe the copyright holder's content does not weigh against granting an injunction. *See Rovio Entm't Ltd. v. Allstar Vending Ltd.*, 97 F. Supp. 3d 536, 547 (S.D.N.Y. 2015) (finding balance of hardships tipped in plaintiff's favor where defendant's only harm was losing the chance to copy plaintiff's copyrighted video games).

As noted above, the harm to Take-Two is substantial. *See supra* 12–15; Compl. ¶¶ 1, 37–40, 48, 61; Andrews Decl. ¶¶ 6–11. In contrast to the harm that Take-Two will suffer, Defendant's only "harm" from Take-Two's requested injunctive relief is that he will no longer be able to infringe GTAV and reap the profits from doing so. But the Second Circuit has made clear that a defendant "cannot be legally harmed by the fact that it cannot continue" infringing a plaintiff's copyrighted work, "even if this ultimately puts [the defendant] out of business." *WPIX*, 691 F.3d 287; *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 167, 197 (S.D.N.Y. 2009) ("loss of the ability to engage in unauthorized conduct and the concomitant business opportunities that such activities provide" did not constitute hardship).[7] All that Defendant risks losing is the ability to infringe Take-Two's copyrights, which is not a legally cognizable harm. Accordingly, the balance of the hardships favors entry of Take-Two's

---

[7] *See also Zipperer*, 2018 WL 4347796, at *11 (balance tipped in Take-Two's favor where defendant identified no injury he would suffer if an injunction issued and noting that "[i]n any event, a defendant does not suffer a legal harm by the fact that it cannot continue to infringe on the plaintiff's copyright"); *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 620 (7th Cir. 1982) (finding that balance of hardships did not weigh against entry of preliminary injunction where defendant's "only alleged hardship is the profits it would lose if enjoined" from marketing defendant's infringing video game).

proposed injunction.

### D. The Public Interest Will be Served by the Issuance of an Injunction

In this case, the public will be served by the issuance of injunctive relief for multiple reasons. ***First***, in *Zipperer*, the court found that there is a strong public interest in protecting "legitimate users of GTAV [who] are harmed by programs such as [Defendant's Infringing Program] that permit . . . users to disadvantage players who do not use the cheat programs and give to their users unlimited digital currency with which to purchase added features that GTAV's legitimate users do not have access to or must purchase from Take-Two." 2018 WL 4347796, at *11; *see also generally Midway*, 547 F. Supp. at 1015 (granting injunction against defendant's infringing "speed-up" kits that "alter[ed] the play of [plaintiff's] game"). Gamers will still be able to play GTAV, but they must do so in a manner consistent with Take-Two's User Agreement to avoid disruptive gameplay. *WPIX*, 691 F.3d at 288 (public interest not harmed by granting an injunction where "the public will still be able to access plaintiff's programs through means other than defendant's services").

***Second***, "the public's interest in protecting Take-Two's investment in creating video games is promoted by issuing the requested injunction." *Zipperer*, 2018 WL 4347796, at *11. *Warner Bros. Entm't v. RDR Books*, 575 F. Supp. 2d 513, 553 (S.D.N.Y. 2008) (strong public interest in "prevent[ing] the misappropriation of the skills, creative energies, and resources which are invested in the protected work"). Take-Two invests considerable resources in creating some of the most cutting-edge games in the world, including GTAV. Compl. ¶ 28. The public benefits by ensuring that Take-Two's investment is protected and that Take-Two is able to continue to invest in new, fun games for the public. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S.Ct. 1979, 1982 (1975) (Copyright Act's purpose is to encourage "and reward" innovation).

***Third***, beyond creating additional incentives for production, the public has an additional

interest in ensuring that creators maintain the integrity of their works by "secur[ing] the rights of [their] creative activity." *Kurt S. Alder, Inc. v. World Bazaars, Inc.*, No. 95 Civ. 5610, 1995 WL 457991 at *1 (S.D.N.Y. 1995). The Copyright Act is designed not only to incentivize creation, but also to ensure that creators are able to reap the benefits of their creation without fear of free-riding or misappropriation, while maintaining the creative integrity over their work. *See Midway*, 547 F. Supp. at 1015 (noting that "[t]he Copyright Act evidences a public interest in creativity by demonstrating an intent to provide an economic reward for creative expression").

Defendant's unauthorized Infringing Program deprives Take-Two of both the benefits of its creative works and the ability to control how its game is designed to be played. Andrews Decl. ¶ 7. This is contrary to the policies underlying the Copyright Act and undermines the public interest in promoting these policies. The public interest clearly favors issuance of an injunction.

## IV. STATUTORY DAMAGES FOR DEFENDANT'S COPYRIGHT INFRINGEMENT SHOULD BE AWARDED

Take-Two has elected to recover statutory damages for copyright infringement pursuant to 17 U.S.C. § 504(c). For the reasons explained further below, Take-Two respectfully requests that the Court award the statutory maximum of $150,000. 17 U.S.C. § 504(c)(2).

Statutory damages under the Copyright Act "serves two purposes—compensatory and punitive." *Richard Feiner and Co., Inc. v. Passport Int'l Prods., Inc.*, No. 97 Civ. 9144, 1998 WL 437157, at *2 n.13 (S.D.N.Y. July 31, 1998). "Where a defendant has acted willfully, 'a statutory award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others.'" *See Hounddog Prods.*, 826 F. Supp. 2d at 631.

The Copyright Act permits a maximum award of $150,000.00 in statutory damages for

- 18 -

willful infringement.  17 U.S.C. § 504(c)(2).  As Your Honor has acknowledged, "[t]he Court, in exercising its discretion to determine statutory damages, considers factors including '(1) the infringer's state of mind; (2) the expenses saved, and profits earned by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperating in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." *John Wiley & Sons, Inc. v. Williams*, No. 12 Civ. 0079, 2012 WL 5438917, at *2 (S.D.N.Y. Nov. 5, 2012) (Castel, J.).  In cases "where the infringer fails to appear," however, courts recognize that "[m]any of these factors are . . . impossible to consider."  *Jordan Mozer & Assocs., Ltd. v. Starck*, No. 13 Civ. 1181, 2014 WL 1327960, at *2 (S.D.N.Y. Apr. 3, 2014).  In such circumstances, "[r]ather than rewarding infringers . . . courts 'draw[ ] every reasonable inference on these points against defendants." *Id.* Moreover, where a defendant has defaulted, "the complaint's allegations of willfulness can be taken as true."  *Dweck v. Amadi*, No. 10 Civ. 2577, 2011 WL 3809907, at *4 (S.D.N.Y. July 26, 2011) (collecting cases), *R&R adopted,* No. 10 Civ. 2577, 2011 WL 3809891 (S.D.N.Y. Aug. 29, 2011); *see also Hounddog Prods.*, 826 F. Supp. 2d at 631 ("Courts frequently infer willfulness where a defendant defaults.").  Each of the factors outlined in *John Wiley* favors issuance of maximum damages.

*First*, Take-Two pleaded in its Complaint that Defendant's "infringement of Take-Two's copyrights has been deliberate, willful and in utter disregard of Take-Two's rights."  Compl. ¶¶ 46, 59; *see also id.* ¶¶ 1, 3–5, 38, 50, 63.  Because Defendant has defaulted, Take-Two's allegations of willfulness are accepted as true.  *Dweck*, 2011 WL 3809907, at *4; *Hounddog Prods.*, 826 F. Supp. 2d at 631.

Moreover, with respect to Defendant's state of mind, his cooperation in providing

evidence concerning the value of the infringing material, and his conduct and attitude—*i.e.*
Factors One, Five, and Six—Defendant repeatedly refused Take-Two's requests to produce his
financial documents, documents which would have shown the value of Defendant's Infringing
Program. Cendali Decl. Ex. D. Indeed, Take-Two requested that Defendant provide Take-Two
with those documents on no less than **ten occasions** in an attempt to resolve this dispute without
court intervention. *See generally id.* Yet, Defendant ignored Take-Two's correspondence and
never provided the documents. *Id.* ¶¶ 12–13. Defendant's "disregard demonstrates an attitude of
blatant indifference" that is willful and places "particular emphasis" on "the conduct and attitude
of the parties" prong. *See Broad. Music, Inc. v. The Living Room Steak House, Inc.*, No. 14 Civ.
6298, 2016 WL 756567, at *6 (E.D.N.Y. Feb. 26, 2016) (willfulness established where plaintiff
"was in constant and one-sided communication with the [d]efendants" who "did not respond to
any of [plaintiff's] correspondence"), *R&R adopted sub nom. Broad. Music, Inc. v. Living Room
Steak House, Inc.*, No. 14 Civ. 06298, 2016 WL 1056609 (E.D.N.Y. Mar. 17, 2016); *Broad.
Music, Inc. v. Wexford INR LLC*, No. 12 Civ. 1253, 2014 WL 4626454, at *11 (N.D.N.Y. Sept.
15, 2014) (defendants' "culpable state of mind" and "general strategy of delay and
noncompliance . . . weigh[ed] in favor of awarding Plaintiffs' requested statutory damages").

    ***Second***, with respect to the profits earned by the infringer—*i.e.* Factor Two—because
Defendant failed to appear, Take-Two has been unable to conduct discovery to ascertain
Defendant's sales and profits from his Infringing Program, documents which are in Defendant's
control. And with respect to the revenue lost by the copyright holder—*i.e.* Factor Three—for the
reasons explained above, the harm to Take-Two's business is irreparable and difficult to
quantify.[8] *See supra* 15. Although damages are difficult to calculate, Take-Two has estimated

---

[8]    Moreover, GTAV "is of great value to Take-Two" and it "was the product of Take-Two's skills, resources, and

that it has been harmed "at a minimum, $500,000.00." Compl. ¶¶ 38, 50. Nevertheless, the

absence of such evidence does not impair Take-Two's entitlement to statutory damages. *See*

*Jordan Mozer & Assocs.*, 2014 WL 1327960, at *2 (awarding $150,000 in statutory damages

where defendant failed to appear); *Tu v. TAD Sys. Tech. Inc.*, No. 08 Civ. 3822, 2009 WL

2905780, at *6 (E.D.N.Y. Sept. 10, 2009) (awarding $150,000 in statutory damages even though

"[b]ecause of Defendants' default in this matter, the Court ha[d] almost no evidence to adjudge

[actual damages]"); *Arista Records LLC v. Usenet.com, Inc.*, No. 07 Civ 8822, 2010 WL

3629688, at *5 (S.D.N.Y. Feb. 2, 2010) (awarding statutory damages where plaintiffs

"established direct harm to their business by Defendants' infringing conduct—even if such harm

is not easily quantified"), *R&R adopted,* No. 07 Civ 8822, 2010 WL 3629587 (S.D.N.Y. Sept.

16, 2010).[9]

**Third**, with respect to the deterrent effect on the infringer and third parties—*i.e.* Factor

Four—a maximum award would deter Defendant and other infringers from creating similar

cheating tools that modify and alter GTAV. *BMI.*, 2014 WL 4626454, at *11 ("deterrent effect"

that statutory damages would have on defendants and third parties "weigh[ed] in favor of

awarding Plaintiffs' requested statutory damages"); *Dweck*, 2011 WL 3809907, at *5 (statutory

damages appropriate to "deter similar infringements in the future"). Indeed, Defendant is not

alone in his effort to create, distribute, and maintain a program that alters and modifies Take-

---

creative energies." Compl. ¶ 28.

[9]  *See also Dweck*, 2011 WL 3809907, at *3 (awarding statutory damages where plaintiff was unable to conduct discovery to ascertain defendants' actual financial benefit due to defendants' failure to appear and the harm to plaintiff was "the risk of alienating plaintiff's customer base"); *Pearson Educ., Inc. v. Nugroho*, No. 08 Civ. 8034, 2009 WL 3429610, at *5 (S.D.N.Y. Oct. 27, 2009) ("[T]he copyright owner may elect to recover statutory damages, instead of actual damages and defendant's profits. He may, moreover, make such an election regardless of the adequacy of the evidence offered as to his actual damages and the amount of defendant's profits, and even if he has intentionally declined to offer such evidence, although it was available."), *R&R adopted,* No. 08 Civ. 8034, 2009 WL 4884098 (S.D.N.Y. Dec. 16, 2009).

Two's game, which is then sold to users for profit.  Take-Two already has been forced to bring

several lawsuits in the United States and around the world against other infringers.  *See, e.g.*,

*Zipperer*, 2018 WL 4347796, at *1; *Take-Two Interactive Software, Inc. v. Cameron*, No. 18

Civ. 02981 (S.D.N.Y.).[10]  In one such case, the defendant "secretly started developing and

distributing [a new] program" after Take-Two had informed him that operating his original

program "violated the terms of his user agreement and infringed Take-Two's copyright."

*Zipperer*, 2018 WL 4347796, at *10.  Accordingly, an award of $150,000 in statutory damages

"as a deterrent not only to the current Defendant, but as a general deterrent to others who may

contemplate engaging in [similar] infringing behavior in the future" is appropriate.  *See Elec.

Creations Corp. v. Gigahertz, Inc.*, No. 12 Civ. 1423, 2013 WL 3229125, at *6 (N.D.N.Y. June

25, 2013) (awarding maximum statutory damages); *see also Arista*, 2010 WL 3629688, at *6

(awarding statutory damages where it was "well documented that Defendants [were] not alone in

their pursuit" to infringe plaintiffs' works on the Internet and noting "the need to deter future

infringers" was "great").

   ***Finally***, courts routinely award maximum statutory damages, or at a minimum, an award

at the higher end of the range of permissible damages, including in cases where the defendant

defaults.  *See e.g.*, *Jordan Mozer & Assocs., Ltd.*, 2014 WL 1327960, at *2 ($150,000 in

statutory damages appropriate where defendant defaulted); *Hounddog Prods.*, 826 F. Supp. 2d at

632 (same); *Tu*, 2009 WL 2905780, at *6 (same).[11]

---

[10]   *See also Take-Two Interactive Software, Inc. v. James*, Claim No. IL-2018-000094, High Court, Chancery Division; *Take-Two Interactive Software, Inc. v. Anderson* (Federal Court of Australia, No. NSD1751/2018); *Take-Two Interactive Software, Inc. v. Daldal,* Landgericht Hamburg (District Court Hamburg), 312 O 198/18; *Take-Two Interactive Software, Inc. v. Daldal,* Landgericht Köln (District Court Cologne), 14 O 182/18; *Take-Two Interactive Software, Inc. v. Arnolfo,* No. 24057/2018 (Court of Turin); *Take-Two Interactive Software, Inc. v. Muška*, No. 23Nc 52/2018 (KS Brno); *Take-Two Interactive Software, Inc. v. Paulík*, No. 46Nc 2007/2018 (KS Plzeň); *Take-Two Interactive Software, Inc. v. McCormick*, No: A247/18, Intellectual Property Court, Court of Session.

[11]   *See also Entral Grp. Int'l, LLC v. Honey Cafe on 5th, Inc.*, No. 05 Civ. 2290, 2006 WL 3694584, at *6

Thus, in light of Defendant's willful infringement, Take-Two's "well-established and highly valuable copyright," the need for deterrence, and Defendant's "refus[al] to litigate [his] infringement such that it would be possible to calculate actual damages," Take-Two respectfully requests that the Court award maximum statutory damages of $150,000. *Brighton*, 2017 WL 7833608, at *5; *see also Jordan Mozer & Assocs., Ltd.*, 2014 WL 1327960, at *2; *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288 (2d Cir. 1999) (then-maximum statutory damages "justified" in light of defendant's willfulness and "statutory goal of deterrence").

## V.     TAKE-TWO'S ATTORNEY'S FEES SHOULD BE AWARDED

In addition to statutory damages, Take-Two seeks to recover $69,686.95 in attorney's fees that it accrued through November 30, 2018. The Copyright Act permits an award of reasonable attorney's fees to the prevailing party. 17 U.S.C. § 505. "A court deciding whether to award fees . . . may consider, among other things, 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Broad. Music, Inc. v. Pamdh Enterprises, Inc.*, No. 13 Civ. 2255, 2014 WL 2781846, at *5 (S.D.N.Y. June 19, 2014) (quoting *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 n.19 (1994)). Where the defendant has acted willfully, an award of attorney's fees is "justified" and "in line with the statutory goal of deterrence." *Kepner-Tregoe*, 186 F.3d at 289. A defendant's "default weighs in favor of such an award." *Sands v. Hologram USA Networks, Inc.*, No. 17 Civ. 09692, slip op.

---

(E.D.N.Y. Dec. 14, 2006) (same); *Elec. Creations*, 2013 WL 3229125, at *6 (same); *Brighton Collectibles, LLC v. IPPO Jewelry Corp.*, No. 16 Civ. 06065, 2017 WL 7833608, at *5 (C.D. Cal. Feb. 22, 2017) (same); *Blizzard Entm't, Inc. v. Vankuipers*, No. 10 Civ. 1495, 2011 WL 13225129, at *3 (C.D. Cal. July 11, 2011) (same); *MDM Grp. Assocs., Inc. v. L.A. Real Estate*, No. 10 Civ. 0234, 2010 WL 5239250, at *2 (S.D. Ala. Dec. 14, 2010) (same); *DisputeSuite.com, LLC v. Credit Umbrella Inc.*, No. 14 Civ. 6340, 2016 WL 6662722, at *6 (C.D. Cal. Apr. 25, 2016) (same); *Am. Bd. of Internal Med. v. Mittman*, No. 08 Civ. 929, 2010 WL 11520544, at *3 (C.D. Cal. Dec. 6, 2010) (same), *aff'd*, 543 F. App'x 680 (9th Cir. 2013); *Lions Gate Films Inc. v. Saleh*, No. 214 Civ. 06033, 2016 WL 6822748, at *5 (C.D. Cal. Mar. 24, 2016) (same).

at 4 (S.D.N.Y. Oct. 1, 2018) (Castel, J.); *see also Jordan Mozer*, 2014 WL 1327960, at *3.

Here, Defendant's motivation, unreasonableness, and deterrence all support an award of attorney's fees. **First**, Take-Two "tried diligently to protect [its] interests without resort to litigation," repeatedly advising Defendant that it needed Defendant's records of his profits to resolve the litigation without court intervention. *BMI*, 2014 WL 2781846, at *5 (awarding attorney's fees where defendant ignored plaintiffs' efforts to to enter a licensing agreement); Cendali Decl. Ex. D. Indeed, Take-Two first requested those records in April 2018 and followed up in its request no less than ten times, forcing Take-Two to file this lawsuit when those documents were not provided. *Id.* **Second**, "[d]eterrence supports awarding fees . . . given Defendant['s] disregard for [Take-Two's] copyrights" and that Take-Two's efforts to resolve this dispute "have been ignored." *BMI*, 2014 WL 2781846, at *5. **Third**, Defendant's "objective unreasonableness . . . is evidenced by [his] failure to even appear in this suit." *Id.* An award of attorney's fees is thus appropriate.

When determining "reasonableness" of the requested attorney's fee, courts start with the "lodestar" method, multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See City of Burlington v. Dague*, 505 U.S. 557, 559 (1992); *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989). "To determine what constitutes a 'reasonable' hourly rate, courts are to consider the 'prevailing market rates in the relevant community.'" *Regeneron Pharm., Inc. v. Merus N.V.*, No. 14 Civ. 1650, 2018 WL 3425013, at *3 (S.D.N.Y. June 25, 2018). "In order to calculate the reasonable hours expended, the . . . fee application must be supported by contemporaneous time records, affidavits, and other materials." *Id.*

Here, Take-Two's request for attorney's fees is based on the reasonable time billed and charged at the reasonable hourly rates of Kirkland's attorneys, paralegal, and support staff.

Take-Two has adequately supported its claim for attorney's fees by submitting an attorney declaration, time records, and a statement regarding each attorney's individual billing rate. Cendali Decl. ¶ 17, Ex. E.   Moreover, courts in this District have held that Take-Two's law firm, Kirkland & Ellis LLP, has a "reasonable" partner and associate billing rate.  *See Regeneron*, 2018 WL 3425013, at *6 (granting defendant's motion for attorneys' fees).  Rates that are comparable to Kirkland also have been found reasonable in this District.  *See e.g.*, *MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*, No. 16 Civ. 8103, 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30, 2017) (finding associate billing rates of $569-$753 per hour and partner billing rates of $874-$1,048 were "reasonable" rates for a litigation that was "not particularly complex").  Various billing reports show that Kirkland's billing rates are comparable to its peer law firms for similar services.  Cendali Decl. Exs. G, H.  Moreover, the fact that Take-Two's fees and rates reflected in documentation were actually negotiated and billed to Take-Two also is strong evidence of reasonableness.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) ("The reasonable hourly rate is the rate a paying client would be willing to pay."); *Anderson v. YARP Rest., Inc.*, No. 94 Civ. 7543, 1997 WL 47785, at *2 (S.D.N.Y. Feb. 6, 1997) ("The best evidence of a reasonable fee rate is the amount actually charged by counsel.").  Thus, Take-Two's attorney's fees are reasonable, and it respectfully requests reimbursement in full.

## **CONCLUSION**

For the foregoing reasons, Take-Two respectfully requests that this Court grant Take-Two's motion for default judgement against Defendant Jhonny Perez, permanently enjoin Defendant, and award $150,000 in statutory damages and $69,686.95 in attorney's fees.

- 25 -

Dated:  New York, New York
      December 4, 2018

                               */s/ Dale M. Cendali*

                               Dale M. Cendali
                               Joshua L. Simmons
                               Megan L. McKeown
                               KIRKLAND & ELLIS LLP
                               601 Lexington Avenue
                               New York, New York 10022
                               Telephone: (212) 446-4800
                               Facsimile: (212) 446-4900
                               dale.cendali@kirkland.com
                               joshua.simmons@kirkland.com
                               megan.mckeown@kirkland.com

                               *Attorneys for Plaintiff*
                               *Take-Two Interactive Software, Inc.*